**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RILEY FADNESS, LAURA PETERSON, LAURA MAXWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>US FERTILITY, LLC,<br><br>Defendant. | NO. |

**CLASS ACTION COMPLAINT**

Plaintiffs Riley Fadness, Laura Peterson, and Laura Maxwell, by their undersigned

counsel, for this class action complaint against Defendant US Fertility, LLC (hereinafter

"Defendant" or "USF") and its present, former, and future direct and indirect parents,

subsidiaries, affiliates, agents, and related entities, allege as follows:

**I.  NATURE OF THE ACTION**

1.      Defendant US Fertility, LLC is a national fertility-clinic network headquartered in

Rockville, Maryland. Defendant provides IT platforms, as well as administrative, clinical, and

business services to 55 fertility clinics in 9 states, plus Washington D.C., making it responsible

for the most fertility-related healthcare data in the United States.

2.      On November 25, 2020, Defendant publicly announced it had experienced a

ransomware attack months earlier, resulting in a data breach affecting 27 of its 55 clinic locations

(the "Data Breach"). The Data Breach resulted in "an unauthorized actor" acquiring "files" of

"individuals' protected health information." https://www.usfertility.com/wp-

content/uploads/2021/01/USF-Notice-Security.pdf (last accessed Februrary 4, 2021).

3.      The Data Breach occurred between August 12, 2020, and September 14, 2020.

https://www.hipaajournal.com/us-fertility-reports-ransomware-attack-involving-

datatheft/#:~:text=5%2C439%20individuals%20have%20been%20affected%20by%20the%20br

each (last visited February 2, 2021).

4.      The protected health information compromised in the Data Breach is highly

valuable and protected *personal* and *medical* information including patient names, addresses,

dates of birth, National Provider Identifier ("NPI") numbers, Social Security Numbers, drivers'

license and state ID numbers, passport numbers, medical treatment and diagnosis information,

medical record information, health insurance and claims information, credit and debit card

information, and financial account information (collectively, "Personal Health Information;" or

"PHI").

5.      Plaintiffs learned their PHI was compromised in the Data Breach through a letter

Defendant sent to patients dated (on information and belief) *as late as January 8, 2021*.

6.      Plaintiffs' and the other Class Members' PHI was exposed to unauthorized actors

due to Defendant's negligent conduct, acts, and practices. Cyber criminals obtained the PHI that

Defendant collected and maintained on behalf of its clinics' patients.

7.      Defendant's conduct in allowing the Data Breach to occur was negligent, and

Defendant breached its duty to protect the confidentiality of Plaintiffs' PHI and violated

consumer protection privacy laws, resulting in concrete harm to Plaintiffs and the Class.

8.      As a contractor to providers of health care, Defendant is also subject to the

requirements for preserving the confidentiality of medical information set forth under

California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56, *et seq.*

9.      Defendant failed to comply with its duty under the CMIA when Defendant allowed an unauthorized party to view patients' medical information.

10.     Accordingly, Plaintiffs bring this class action individually and on behalf of all others similarly situated and assert the following causes of action: violations of the CMIA and the California Consumer Records Act, violations of states' consumer protection statues, negligence, negligence *per se*, public disclosure of private facts, and breach of implied contract.

## II.   JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendant as it maintains its principal place of business in this District and is registered to do business in Maryland.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of events giving rise to this case occurred in this District.

## III.     PARTIES

14.     Plaintiff Riley Fadness ("Ms. Fadness") is a citizen of the state of Idaho, residing in Ammon, Idaho. Ms. Fadness was a patient of the Utah Fertility Center in Utah, a clinic for which Defendant provided network IT and other clinic management services.

15.     Plaintiff Laura Peterson ("Ms. Peterson") is a citizen of the state of California, residing in Ferndale, California. Ms. Peterson was a patient of Seattle Reproductive Health, in Washington State, a clinic for which Defendant provided network IT and other clinic management services.

3

16.     Plaintiff Laura Maxwell ("Ms. Maxwell") is a citizen of the state of California, residing in Long Beach, California. Ms. Maxwell was a patient of Reproductive Partners Group in Southern California, a clinic for which Defendant provided network IT and other clinic management services.

17.     Defendant US Fertility, LLC is a Delaware limited liability company with a principal place of business of 9600 Blackwell Road, Suite 500, Rockville, Maryland 20850.

## IV. FACTUAL ALLEGATIONS

### A.     Defendant's Privacy Obligations

18.     Defendant is the "largest network of fertility centers in the U.S." https://www.usfertility.com/about-us-fertility/ (last accessed February 4, 2021).

19.     Defendant provides administrative and operational support for more than 80 physicians in 55 locations. https://www.usfertility.com/physicians/ (last accessed February 4, 2021).

20.     In this capacity, Defendant provides secure data management for the fertility clinics in its network. This means ensuring that clinic records, which include patients' private and confidential PHI, is secure and not disclosed to unauthorized persons.

21.     Defendant had a duty to implement and maintain adequate security measures to safeguard the PHI in its possession, custody, and control.

22.     Plaintiffs had a reasonable expectation that Defendant would safeguard their PHI as clinics in Defendant's networks affirmatively represented to its patients that, in providing PHI to the clinic, the patients' PHI would be kept confidential and used only in accordance with publicly-available privacy policies.

**B.    The Data Breach**

23.    On November 25, 2020, Defendant issued a press release on its website stating that, on September 14, 2020, "USF experienced an IT security event . . . that involved the inaccessibility of certain computer systems on our network as a result of a malware infection." https://www.usfertility.com/wp-content/uploads/2021/01/USF-Notice-Security.pdf (last accessed February 4, 2021).

24.    As a result of the malware attack, files containing information on certain patients "were accessed without authorization." *Id*.

25.    Defendant possesses PHI of patients in the USF clinic network, including PHI of Plaintiffs and members of the Classes.

26.    Defendant's public disclosure regarding the Data Breach stated Defendant determined that an "unauthorized actor" accessed patients' PHI between August 12, 2020, and September 14, 2020.

27.    As a result of the Data Breach, Plaintiffs' and Class members' PHI was viewed by the unauthorized actor.

28.    On November 25, 2020, Defendant reported the Data Breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights. Defendant reported that the breach affected 5,439 individuals. *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf. (last accessed February 2, 2021).

29.    In reporting the Data Breach to the Secretary of the U.S. Department of Health and Human Services Office for Civil Rights, Defendant effectively admitted the medical information involved in the Data Breach was unsecured protected health information as defined by 45 C.F.R. § 164.402. *See* 45 C.F.R. § 164.408.

30.     Unsecured protected health information is "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the Secretary." 45 C.F.R. § 164.402.

31.     On January 8, 2021, Defendant reported the Data Breach to the California State Attorney General. *See* https://oag.ca.gov/privacy/databreach/list (last accessed February 4, 2021)

32.     Defendant additionally submitted a sample breach notification letter entitled "Notice of Data Incident" in which it outlined the information set forth in its press release and offered 12 months of complimentary credit monitoring and identity restoration services through TransUnion. *See* https://oag.ca.gov/system/files/US%20Fertility%2C%20LLC%20-%20Notice.pdf. (last accessed February 4, 2021).

33.     In the sample letter, Defendant admits an unauthorized party "acquired a limited number of files during the period of unauthorized access," including the aforementioned PHI. *Id.*

**C.     The Data Breach Was Foreseeable and Preventable**

34.     Defendant had the resources to protect and preserve the confidentiality of Plaintiffs' and Class members' PHI in its possession but neglected to adequately implement data security measures.

35.     The risk of hackers exploiting vulnerabilities in Defendant's computer and data security systems to try to steal Plaintiffs' and Class members' medical information was foreseeable and/or known to Defendant.

36.     Data breaches in the healthcare industry have been widely reported and are generally known. *See* https://www.healthcareitnews.com/news/fbi-hhs-warn-increased-and-imminent-cyber-threat-hospitals (last accessed February 4, 2021).

37.     Healthcare industry experts and law enforcement have publicly warned those in the industry that they must take measures to ensure the safety, encryption, and security of PHI.

38.     Defendant was or should have been aware of its obligations under applicable law and regulations to protect PHI in its possession, custody, and control.

39.     Despite the foreseeability of the Data Breach, Defendant failed to adequately secure patients' PHI, causing harm to Plaintiffs and members of the Classes.

**D.     Plaintiffs' Experiences**

40.     Plaintiffs, like each member of the proposed Classes, were patients at one of Defendant's network clinics.

41.     Since 2018, Ms. Fadness has been a patient at the Utah Fertility Center and, in that capacity, provided her PHI to Defendant.

42.     Ms. Fadness first learned Defendant had compromised her PHI when she received a breach notification letter from Defendant informing her of the Data Breach and that her PHI was impacted.

43.     Ms. Fadness is not aware of any security event or data breach, prior to the Data Breach, that compromised her PHI.

44.     After learning of the Data Breach, Ms. Fadness received a collection notice regarding two outstanding debt obligations and a lien on her home. Ms. Fadness did not recognize these unpaid obligations or the lien and believes both are related to the fact that her PHI was comprised in the Data Breach.

45.     Ms. Fadness incurred time, energy, and aggravation, as well as damage to her credit and out of pocket expenses as a result of the Data Breach.

46.     Ms. Peterson has been a patient at Seattle Reproductive Medicine since 2018 and, in that capacity, provided her PHI to Defendant.

47.     Like Ms. Fadness, Ms. Peterson first learned of the Data Breach and that her PHI had been compromised when Defendant sent her a breach notification letter.

7

48.     Ms. Peterson is not aware of any security event or data breach, prior to the Data Breach, that compromised her PHI.

49.     Ms. Peterson incurred time, energy, and aggravation as a result of the Data Breach.

50.     Ms. Maxwell was a patient at Reproductive Partners Medical Group in Southern California beginning in 2005 and, in that capacity, provided her PHI to Defendant.

51.     Ms. Maxwell received a breach notification letter dated January 8, 2021, from Defendant that informed her of the Data Breach and that her PHI had been compromised.

52.     Ms. Maxwell is not aware of any security event or data breach, prior to the Data Breach, that compromised her PHI.

53.     Ms. Maxwell incurred time, energy, and aggravation as a result of the Data Breach.

54.     Plaintiffs, like each member of the proposed Classes, expected Defendant to maintain the privacy of their PHI, including medical information, as a condition of providing it to Defendant's network clinics.

55.     Apart from offering complimentary credit and identity theft monitoring, Defendant has done nothing to mitigate the harms the Data Breach caused.

56.     As a direct and proximate result of the Data Breach, Plaintiffs and Class members have been placed at an imminent, immediate, substantial, and continuing increased risk of harm from fraud and identity theft. Plaintiffs and Class members must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions and healthcare providers, closing or modifying financial accounts, and closely

reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

57.     In a recent survey conducted by the Medical Identity Fraud Alliance (MIFA), a healthcare industry trade group, 52 percent of identity theft victims said their information was used to obtain government benefits like Medicare or Medicaid. And 59 percent had their identity used to obtain healthcare, while 56 percent said a scammer parlayed their data into prescription drugs or medical equipment. *See Fifth Annual Study on Medical Identity Theft*, MED. IDENTITY FRAUD ALLIANCE, (Feb. 2015), *available at* http://www.medidfraud.org/wp-content/uploads/2015/02/2014_Medical_ID Theft_Study1.pdf (last visited February 2, 2021).

58.     This type of injury and harm, including actual fraud, is directly traceable to the Data Breach. This harm is not just possible, not just certainly impending, it has happened and is *ongoing*, and all Class members are in imminent and immediate danger of being further subjected to this injury.

59.     The ramifications of Defendant's failure to keep its patients' PHI secure are long lasting and severe. Once PHI is stolen, fraudulent use of that information and damage to victims may continue for years.

60.     The fraudulent activity resulting from the Data Breach may not come to light for years.

61.     Plaintiffs and Class members have suffered, continue to suffer, and/or will suffer, actual harms for which they are entitled to compensation, including:

      a.     Trespass, damage to, and theft of their personal medical information;

      b.     Improper disclosure of their medical information;

c.     The imminent and impending injury from potential fraud and identity theft posed by having their medical information in the hands of criminal hackers;

d.     The imminent and impending risk of having their medical information used against them by spam callers to defraud them;

e.     Loss of privacy suffered as a result of the Data Breach;

f.     Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

g.     Ascertainable losses in the form of deprivation of the value of Plaintiffs' and Class members' personally identifiable information within their medical information;

h.     Damage to their credit due to fraudulent use of their medical information; and

i.     Increased cost of borrowing, insurance, deposits, and other items which are adversely affected by a reduced credit score.

62.     Defendant itself acknowledged the harm the Data Breach caused by offering Plaintiffs and Class members credit report and identity theft monitoring services.

63.     However, twelve months of identity theft monitoring does not protect Plaintiffs and Class members from a lifetime of theft risk and does nothing to reimburse Plaintiffs and Class members for the injuries they have already suffered.

## V.  CLASS ACTION ALLEGATIONS

64.     Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and four Classes defined as follows:

> **National Class**: All persons in the United States whose PHI was compromised as a result of the Data Breach.

> **California Sub-Class**: All persons who received clinic services in California and whose PHI was compromised as a result of the Data

Breach, and all California residents whose PHI was compromised as a result of the Data Breach.

**Idaho Sub-Class**: All Idaho residents whose PHI was compromised as a result of the Data Breach.

**Washington Sub-Class:** All persons who received clinic services in Washington and whose PHI was compromised as a result of the Data Breach, and all Washington residents whose PHI was compromised as a result of the Data Breach.

65.     The following people are excluded from the Classes: (1) any judge or magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, affiliated entities, and any entity in which the Defendant or its parent has a controlling interest, and their current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of such excluded persons.

66.     <u>Numerosity</u>. The members of the proposed Classes consist of approximately 5,439 individuals. Accordingly, individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court.

67.     <u>Commonality</u>.  Questions of law and fact common to Plaintiffs and the Classes include:

a.      Whether Defendant violated the laws asserted herein, including without limitation the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.,* and the Consumer Privacy Act, Cal. Civ. Code § 1798.100, *et seq.*;

b.      Whether Defendant had a duty to use reasonable care to safeguard Plaintiffs' and the Class members' PHI, including medical information;

c.      Whether Defendant breached its express and implied promises to safeguard Plaintiffs' and Class members' PHI, including medical information;

d.      Whether Defendant knew or should have known about the inadequacies of its data security polices and system and the dangers associated with storing sensitive medical information;

e.      Whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiffs' and Class members' PHI, including medical information, from unauthorized release and disclosure;

f.      Whether Defendant's conduct was deceptive, unfair, unconscionable, or constituted unfair competition;

g.      Whether Defendant's conduct was likely to deceive a reasonable consumer;

h.      Whether Defendant is liable for negligence or gross negligence;

i.      Whether Plaintiffs and members of the Classes are entitled to nominal damages, actual damages;

j.      Whether Defendant's conduct in regard to the Data Breach violated applicable state laws;

k.      Whether Plaintiffs and members of the Classes were injured as a proximate cause or result of the Data Breach;

l.      Whether Defendant's practices and representations related to the Data Breach breached implied obligations and warranties;

m.      Whether Defendant has been unjustly enriched as a result of the conduct complained of herein; and

n.      Whether Plaintiffs and members of the Classes are entitled to damages, restitutionary, injunctive, declaratory, or other relief.

68.     <u>Typicality</u>.  Plaintiffs are members of the Classes.  Plaintiffs' claims are typical of the claims of each Class member in that Plaintiffs and Class members sustained damages arising out of the Data Breach, wrongful conduct, and unlawful practices, and Plaintiffs and Class members sustained similar injuries and damages as a result of Defendant's uniform illegal conduct.

69.     <u>Adequacy</u>.  Plaintiffs are adequate class representatives because Plaintiffs' interests do not conflict with the interests of the Classes they seek to represent. Plaintiffs' claims are common to all members of the Classes, and Plaintiffs have a strong interest in vindicating the rights of absent Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and they intend to vigorously prosecute this action.

70.     <u>Ascertainability</u>.  Class members can easily be identified by the objective criteria set forth in the Class definitions.

71.     <u>Predominance</u>.  The common issues of law and fact identified above predominate over any other questions affecting only individual members of the Classes.  Class issues fully predominate over any individual issue.

72.     <u>Superiority</u>.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy because: (a) the joinder of all individual Class members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources; (b) the individual claims of the Class members may be relatively modest compared

13

with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive to justify individual actions; (c) when Defendant's liability has been adjudicated, all Class members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases.

73.    This class action is properly brought and should be maintained as a class action because questions of law or fact common to Class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

74.    This class action is also properly brought and should be maintained as a class action because Plaintiffs seek declaratory and/or injunctive relief on behalf of Class members on grounds generally applicable to the Classes.  Certification is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive class (i.e., Defendant has failed to reasonably protect Plaintiffs' and Class members' PHI). Thus, any final injunctive relief or declaratory relief would benefit the whole class.

## COUNT ONE
### Negligence
### (By Plaintiffs and on Behalf of the National Class)

75.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.    Plaintiffs and the National Class entrusted their PHI to Defendant. Defendant owed Plaintiffs and National Class members a duty to exercise reasonable care in handling and using the PHI in their care and custody, including implementing industry-standard security

procedures sufficient to reasonable protect the information from the Data Breach, theft, and unauthorized use that came to pass, and to promptly detect attempts at unauthorized access.

77.     Defendant owed a duty of care to Plaintiffs and National Class members because it was foreseeable that Defendant's failure to adequately safeguard their PHI in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that PHI—just like the Data Breach that ultimately came to pass.

78.     The risk that unauthorized persons would attempt to gain access to the PHI and misuse it was foreseeable. As the holder of vast amounts of patient personal and medical information, Defendant knew or should have known that it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the information.

79.     Defendant breached its duty by failing to exercise reasonable care in securing the PHI of Plaintiffs and National Class members, which failure in turn actually and proximately caused the Data Breach and Plaintiffs' and National Class members' injuries.

80.     In addition, Defendant owed Plaintiffs and National Class members a duty to notify them within a reasonable time of any breach to the security of their PHI and to notify Plaintiffs and National Class members individually of the scope, nature, and occurrence of the Data Breach. This duty is required and necessary in order for Plaintiffs and National Class members to take appropriate measures to protect their PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the harm caused by the Data Breach. Defendant breached this duty by failing to notify Plaintiffs and National Class members of the existence of the Breach until more than four months after it was detected.

81.     Defendant's breach of its common-law duties to exercise reasonable care and its failure to timely notify Plaintiffs and National Class members of the Data Breach actually and

proximately caused Plaintiffs and National Class members injury-in-fact and damages, including without limitation the theft of their PHI by criminals, improper disclosure of their PHI, lost benefit of their bargain, lost value of their PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted and was caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

**COUNT TWO**
**Negligence *Per Se***
**(By Plaintiffs and on Behalf of the National Class)**

82.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiffs bring this claim individually and on behalf of National Class members.

84.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide reasonable and adequate computer systems and data security practices to safeguard Plaintiffs' and National Class members' PHI. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect patients' PHI.

85.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect patients' PHI and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of patient information it collected and stored, and the foreseeable consequences of a data breach, including, specifically, the immense damage patients would suffer in the event of a breach.

86.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and National Class members.

87.     Defendant had a duty to Plaintiffs and National Class members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and National Class members' PHI.

88.     Defendant breached its duty to Plaintiffs and National Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and National Class members' PHI.

89.     Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence per se. As a result, Plaintiffs and National Class members are entitled to a rebuttable presumption that Defendant was negligent.

90.     As a direct and proximate result of Defendant's negligence per se, Plaintiffs and National Class members have suffered harm, including loss of time and money spent resolving fraudulent charges; loss of time and money spent obtaining protections against future identity theft; financial losses related to the treatment Plaintiffs and National Class members paid for that they would not have received had they known of Defendant's careless approach to cyber security; lost control over the value of their PHI; unreimbursed losses relating to fraudulent charges; losses relating to exceeding credit and debit card limits and balances; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen data, entitling them to damages in an amount to be proven at trial.

## COUNT THREE
### Breach of Implied Contract
### (By Plaintiffs and on Behalf of the National Class)

91.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiffs bring this claim individually and on behalf of National Class members.

93.     Defendant entered into binding and enforceable contracts with Plaintiffs and National Class members, which were implied-in-fact and supported by consideration including the payment of services by Plaintiffs and National Class members in exchange for healthcare services. These contracts included terms covering privacy and limiting the use and sharing of Plaintiffs' and National Class members' PHI. Plaintiffs and National Class members bargained for an adequate level of security and reasonable care with respect to the use, storage, and sharing of their PHI.

94.     These contracts incorporated Defendant's Privacy Policy wherein U.S. Fertility promised to protect the privacy of Plaintiffs' and National Class members' personal information in accordance with federal and state privacy laws, as well as their own privacy policies. Specifically, in a written document provided to Plaintiffs and National Class members in connection with their healthcare services, Defendant expressly promised Plaintiffs and National Class members that it would only disclose their PHI under certain circumstances, none of which relate to the Data Breach.

95.     Based on this understanding, Plaintiffs and National Class members accepted Defendant's offer of health services and provided Defendant with their PHI.

96.     Plaintiffs and National Class members would not have provided PHI to Defendant had they known that Defendant would not safeguard their PHI.

18

97.     Plaintiffs and National Class members fully performed their obligations under the implied contracts with Defendant.

98.     Defendant breached the implied contracts by failing to safeguard Plaintiffs' and National Class members' PHI.

99.     The losses and damages sustained (as described above) were the direct and proximate result of Defendant's breach of the implied contract.

### COUNT FOUR
**Unjust Enrichment**
**(By all Plaintiffs on Behalf of the National Class)**

100.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.     This claim is plead in the alternative to the breach of implied contractual duty claim.

102.     Plaintiffs and National Class members conferred a monetary benefit upon Defendant in the form of monies paid for healthcare services to Defendant's network clinics.

103.     Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiffs and National Class members. Defendant benefited from the receipt of Plaintiffs' and National Class members' PHI, as Defendant was compensated for providing data management services to the clinics in its networks regarding such PHI.

104.     As a result of Defendants' conduct, Plaintiffs and National Class members suffered actual damages in an amount equal to the difference in value between their purchases made with reasonable data privacy and security practices and procedures that Plaintiffs and National Class members paid for, and those purchases without unreasonable data privacy and security practices and procedures that they received.

105.     Under the principles of equity and good conscience, Defendant should not be permitted to retain money Plaintiffs and National Class members paid which benefited Defendant, because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures for itself that Plaintiffs and National Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

106.     Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and National Class members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

107.     Defendant breached its fiduciary duties owed to Plaintiffs and National Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1).

## COUNT FIVE
### Declaratory Relief
### (By all Plaintiffs on Behalf of the National Class)

108.     Plaintiffs incorporate by reference all factual allegations as if fully set forth herein.

109.     There is an actual controversy between Defendant and Plaintiffs and National Class members concerning whether Defendant has a duty to implement additional safeguards to protect the PHI and medical information of Plaintiffs and National Class members.

110.     Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is sought."

111.     Accordingly, Plaintiffs and National Class members seek a declaration that Defendant has a duty to implement safeguards to guard against the future exposure of Plaintiffs' and National Class members' PHI.

**COUNT SIX**
**Violations of the CMIA**
**(On Behalf of Plaintiffs Peterson and Maxwell and the California Sub-Class)**

112.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

113.    Plaintiffs Peterson and Maxwell bring this claim individually and on behalf of the California Sub-Class.

114.    Defendant is a contractor to a "provider of health care" as defined in Cal. Civ. Code § 56.05(m).

115.    Defendant created, maintained, preserved, and stored Plaintiffs Peterson and Maxwell's and the California Sub-Class' "medical information," as defined under Cal. Civ. Code § 56.05(j), which was subject to the Data Breach.

116.    Plaintiffs Peterson and Maxwell and California Sub-Class members are "patients" as defined by Cal. Civ. Code § 56.05(k).

117.    As a contractor to providers of health care, Defendant owed a duty to preserve the confidentiality of Plaintiffs Peterson and Maxwells' and members of the California Sub-Class' medical information and to not allow Plaintiffs Peterson and Maxwell's and members of the California Sub-Class' medical information to be released and viewed by unauthorized persons.

118.    Defendant breached its duty owed to Plaintiffs Peterson and Maxwell and members of the California Sub-Class by failing to implement fair, reasonable, or adequate computer systems and data security policies to safeguard Plaintiffs Peterson and Maxwell's and California Sub-Class members' medical information, and by allowing that PHI to be released and viewed by unauthorized persons.

119.    In violation of Cal. Civ. Code § 56.10(a), Defendant disclosed Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI (including medical information) without first obtaining an authorization. The resulting release of Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to unauthorized hackers during the Data Breach was an affirmative act in violation of violation of Cal. Civ. Code § 56.10(a). Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.10(a).

120.    In violation of the first sentence of Cal. Civ. Code § 65.101(a), Defendant created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI (including medical information)) in a manner that failed to preserve and breached the confidentiality of the information contained therein. The resulting release of Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(a). Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(a).

121.    In violation of the second sentence of Cal. Civ. Code § 56.101(a), Defendant negligently created, maintained, preserved, stored, abandoned, destroyed, or disposed of medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI (including medical information)). The resulting release of Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(a). Plaintiffs

22

Peterson and Maxwell's and California Sub-Class members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(a).

122.   Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI that was subject to the Data Breach included "electronic medical records" or "electronic health records" as referenced by Cal. Civ. Code § 56.101(c) and defined by 42 U.S.C. § 17921(5).

123.   In violation of Cal. Civ. Code § 56.101(b)(1)(A), Defendant's electronic health record system or electronic medical record system failed to protect and preserve the integrity of electronic medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI). The resulting release of Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of violation of Cal. Civ. Code § 56.101(b)(1)(A). Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.101(b)(1)(A).

124.   In violation of Cal. Civ. Code § 56.101(b)(1)(B), Defendant's electronic health record system or electronic medical record system failed to automatically record and preserve any change or deletion of any electronically stored medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI).

125.   In violation of Cal. Civ. Code § 56.101(b)(1)(B), Defendant's electronic health record system or electronic medical record system failed to record the identity of persons who accessed and changed medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI), failed to record the date and time medical information was

accessed (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI) and failed to record changes that were made to medical information (including Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI).

126.    In violation of Cal. Civ. Code § 56.36(b), Defendant negligently released confidential information or records concerning Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI. This negligent release of Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to unauthorized hackers during the Data Breach was an affirmative communicative act in violation of Cal. Civ. Code § 56.36(b). Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI was viewed by the unauthorized hackers as a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56.36(b).

127.    In violation of Cal. Civ. Code § 56.10(e), Defendant disclosed Plaintiffs Peterson and Maxwell's and California Sub-Class members' PHI to persons or entities not engaged in providing direct health care services to Plaintiffs Peterson and Maxwell or California Sub-Class members or their providers of health care or health care service plans or insurers or self-insured employers.

128.    The foregoing violations of CMIA resulted from Defendant's affirmative actions, and Defendant knew or should have known it had inadequate computer systems and data security practices to safeguard such information. Defendant knew or should have known of the risks inherent in collecting and storing the protected medical information of Plaintiffs Peterson and Maxwell and members of the California Sub-Class.

129.    The injury and harm Plaintiffs Peterson and Maxwell and members of the California Sub-Class suffered was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet its duties and its breach

would cause Plaintiffs Peterson and Maxwell and members of the California Sub-Class to suffer the foreseeable harms associated with the exposure of their PHI, including medical information.

130.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs Peterson and Maxwell and members of the California Sub-Class now face an increased risk of future harm.

131.    Pursuant to Cal. Civ. Code §§ 56.35 and 56.36, Plaintiffs Peterson and Maxwell and each member of the California Sub-Class seek relief including actual damages, nominal statutory damages of $1,000, punitive damages of $3,000, injunctive relief, and attorney fees, expenses, and costs. A recovery of nominal damages does not require that Plaintiffs Peterson and Maxwell or members of the California Sub-Class have suffered or have been threatened with actual damages.

132.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56, et seq., Plaintiffs Peterson and Maxwell and members of the California Sub-Class now face an increased risk of future harm.

133.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code § 56, et seq., Plaintiffs Peterson and Maxwell and members of the California Sub-Class have suffered injury and are entitled to damages in an amount to be proven at trial.

134.    Plaintiffs Peterson and Maxwell and members of the California Sub-Class suffered a privacy injury by having their sensitive medical information disclosed, irrespective of whether they subsequently suffered identity fraud or incurred any mitigation damages. PHI has been recognized as private sensitive information in common law and federal and state statutory schemes and the disclosure of such information resulted in cognizable injury to Plaintiffs Peterson and Maxwell and members of the California Sub-Class.

## COUNT SEVEN
### Violations of the California Consumer Records Act
### (On behalf of Plaintiffs Peterson and Maxwell and the California Sub-Class)

135.    Plaintiffs repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

136.    Plaintiffs Peterson and Maxwell bring this claim individually and on behalf of the California Sub-Class.

137.    Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay…"

138.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

139.    Any person or business that is required to issue a security breach notification under the CCRA shall meet all the following requirements:

140.    The security breach notification shall be written in plain language;

141.    The security breach notification shall include, at a minimum, the following information:

142.    The name and contact information of the reporting person or business subject to this section;

143.    A list of the types of personal information that were or are reasonably believed to have been the subject of the breach;

144.    If the information is possible to determine at the time the notice is provided, then any of the following:

145.    The date of the breach;

146.    The estimated date of the breach;

147.    The date range within which the breach occurred.  The notification shall also include the date of the notice.

148.    Whether notification was delayed as a result of law enforcement investigation, if that information is possible to determine at the time the notice is provided;

149.    A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

150.    The toll-free number and addresses of the major credit reporting agencies if the breach exposes a Social Security Number or a driver's license or California identification card number.

151.    The Data Breach described herein constituted a "breach of the security system" of Defendant.

152.    On September 14, 2020, Defendant became aware that it had experienced a malware attack on its computer network. Between November 13 and November 25, 2020, Defendant concluded its forensic investigation into the attack and concluded that the attack had resulted in unauthorized access of the PHI of Plaintiffs Peterson and Maxwell and members of

the California Sub-Class. However, Defendant did not notify Plaintiffs Peterson and Maxwell or members of the California Sub-Class of the Data Breach involving their PHI until January 8, 2021.

153.    Defendant failed to disclose to Plaintiffs Peterson and Maxwell and members of the California Sub-Class, without unreasonable delay and in the most expedient time possible, that their PHI had been compromised, when Defendant knew or reasonably believed such information had been compromised.

154.    Defendant's ongoing business interests give Defendant an incentive to conceal the Data Breach from the public to ensure continued revenue.

155.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82(b), Plaintiffs Peterson and Maxwell and California Sub-Class members were deprived of prompt notice of the Data Brach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection. These measures could have prevented some of the damages suffered by Plaintiffs Peterson and Maxwell and California Sub-Class members because their PHI would have had less value to identity thieves.

156.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82(b), Plaintiffs Peterson and Maxwell and California Sub-Class members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

157.    Plaintiffs Peterson and Maxwell and California Sub-Class members seek all remedies available under Cal. Civ. Code § 1798.82(b), including but not limited to the damages suffered by Plaintiffs Peterson and Maxwell and California Sub-Class members as alleged above and equitable relief.

158.     Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiffs Peterson and Maxwell and California Sub-Class members of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiffs Peterson and Maxwell and California Sub-Class members and despicable conduct that has subjected Plaintiffs Peterson and Maxwell and California Sub-Class members to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiffs Peterson and Maxwell and California Sub-Class members are entitled to punitive damages against Defendant under Cal. Civ. Code § 3294(a).

### COUNT EIGHT
### Violation of the CCPA
### (By Plaintiffs Peterson and Maxwell on Behalf of the California Sub-Class)

159.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

160.     Plaintiffs Peterson and Maxwell brings this count individually and on behalf of the California Sub-Class.

161.     For purposes of the CCPA, personal information includes a person's name in combination with that person's social security number, driver's license, identification card or other unique identifier issued on a government document, an account number, credit card or debit card number in combination with access code or password, medical information, health insurance information or unique biometric information, or a username or email address with a

password or security question that permits access to an online account. *See* Cal. Civ. Code § 1798.81.5(d)(1).

162.    Plaintiffs Peterson and Maxwell and California Sub-Class members' personal information was subject to an unauthorized access and exfiltration, theft or disclosure, resulting from Defendant's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information it manages.[1]

**COUNT NINE**
**Breach of California's Unfair Competition Law**
**(By Plaintiffs Peterson and Maxwell on Behalf of the California Sub-Class)**

163.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

164.    Plaintiffs Peterson and Maxwell bring this claim individually and on behalf of the California Sub-Class.

165.    California's Unfair Competition Law ("UCL") provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Cal. Bus. & Prof. Code § 17200, *et seq*.

166.    A consumer that has suffered an injury in fact and a loss of money or property caused by unfair competition may bring a claim under the UCL. Such an economic injury may be shown where, *inter alia*, a consumer has "surrender[ed] in a transaction more, or acquire[d] less, than he or she otherwise would have." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *30 (N.D. Cal. May 27, 2016).

167.    It is well-established that an invasion of privacy claim can support a UCL claim based on unlawful business practices. *Hayden v. The Retail Equation, Inc.*, Case No. 8:20-cv-

---

[1] Plaintiffs will amend this complaint at the expiration of the statutory notice period to seek damages under the CCPA.

01203-JWH-DFM (ECF No. 170) *at 15 (C.D. Cal. Jan. 22, 2021) (citing *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1039 (N.D. Cal. 2019).

168.    Unfair conduct occurs when the alleged practice "offends an establish public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *South Bay Chevrolet v. General Motors Acceptance Corporation*, 72 Cal. App. 4th 861, 886–87 (1999).

169.    Plaintiffs Peterson and Maxwell and California Sub-Class members paid money in the form of insurance premiums and out-of-pocket expenses in exchange for fertility services under the notion that their PHI would be adequately protected. Had they known their PHI would be subject to Data Breach, they would have taken their business elsewhere. As a result of the Breach, they have suffered a diminution of the value of the PHI in the form of increased risk of identity theft. As a result, they have suffered an economic loss.

170.    Defendant subjected Plaintiffs Peterson and Maxwell and California Sub-Class members to an invasion of privacy. As such, Defendant's failure to secure Plaintiffs Peterson and Maxwell and California Sub-Class members' PHI constitutes an unlawful business practice.

171.    Defendant's failure to secure Plaintiffs Peterson and Maxwell and California Sub-Class members' PHI is substantially injurious to consumers. Defendant's failure to secure valuable, private data which it collects from patients in its clinic network increases the risk that patients, and the general public at large, will be subjected to identity theft and the loss of privacy in PHI. Thus, Defendant's failure to secure patient information constitutes unfair conduct.

172.    As a direct and proximate result of Defendant's business practices in violation of the UCL, Defendant has been unjustly enriched and should be required to make restitution to

Plaintiffs Peterson and Maxwell and California Sub-Class members or disgorge its ill-gotten profits pursuant to Cal. Bus. & Prof. Code § 17203.

173.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs Peterson and Maxwell and California Sub-Class members seek an order of this Court enjoining Defendants from continuing to engage in unlawful, and unfair business practices in violation of the UCL. Plaintiffs Peterson and Maxwell and California Sub-Class members also seek an order requiring Defendants to disgorge and/or make full restitution of all moneys wrongfully obtained from the Plaintiffs Peterson and Maxwell and California Sub-Class members. Plaintiffs Peterson and Maxwell and California Sub-Class members also seek attorney's fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT TEN
### Violation of Idaho Deceptive Trade Practices Act
### (By Plaintiff Fadness and the Idaho Sub-Class)

174.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if full set forth herein.

175.   Plaintiff Fadness brings this claim individually and on behalf of the Idaho Sub-Class.

176.   Defendant advertised, offered, or sold services in Idaho and engaged in trade or commerce directly or indirectly affecting the people of Idaho.

177.   Defendant engaged in deceptive trade practices in the course of its business or occupation, in violation of Idaho Code Ann. § 48-603, including:

178.   Knowingly making a false representation as to the characteristics, uses, and benefits of goods or services offered in violation of Idaho Code Ann. § 48-603(5);

179.    Representing that goods or services offered are of a particular standard, quality, or grade when Defendant knew or should have known that they are of another standard, quality, or grade in violation of Idaho Code Ann. § 48-603(7);

180.    Advertising goods or services with intent not to sell them as advertised § 48-603(9);

181.    Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer in violation of Idaho Code Ann. § 48-603(17);

182.    Engaging in any unconscionable method, act, or practice in the conduct of trade or commerce, as provided in section § 48-603C; and

183.    Engaging in unconscionable conduct in trade and commerce by knowingly, or with reason to know, taking advantage of the consumer by engaging in a sales conduct that would outrage or offend the public conscience, as provided in Idaho Code Ann. § 48-603C(2)(d).

184.    Defendant's deceptive trade practices in the course of its business or occupation include:

185.    Failing to implement and maintain reasonable security, privacy, and data management measures to protect Plaintiff Fadness' and Idaho Sub-Class members' PHI, which was a direct and proximate cause of the Data Breach;

186.    Failing to identify foreseeable security and privacy risks, failing to remediate identified security and privacy risks including those identified in previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

187.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Fadness' and Idaho Sub-Class members' PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

188.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Fadness' and Idaho Sub-Class members' PHI, including the duties imposed by the FTC Act, 15 U.S.C. § 45;

189.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Fadness' and Idaho Sub-Class members' PHI;

190.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Fadness' and Idaho Sub-Class members' PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45; and

191.    Failing to timely notify those impacted by the Data Breach in violation of Idaho Code Ann. § 28-51-105(1), *et seq.*

192.    Defendant's representations were material because they were likely to deceive, and did actually deceive, reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' PHI.

193.    Had Defendant disclosed to Plaintiff Fadness and Idaho Sub-Class members that its data systems were not secure and resultantly, vulnerable to attack, Plaintiff Fadness and Idaho Sub-Class members likely would not have entrusted Defendant with their PHI. Plaintiff Fadness and Idaho Sub-Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

194.    Defendant acted intentionally, knowingly, and maliciously in violating Idaho's Unfair and Deceptive Practices Act, and with reckless disregard for the rights of Plaintiff Fadness and Idaho Sub-Class members' rights. Other data breaches within the healthcare industry put Defendant on notice that its security and privacy protections were inadequate.

195.     As a direct and proximate result of Defendant's unfair and deceptive trade practices, Plaintiff Fadness and Idaho Sub-Class members have suffered and will continue to suffer injury in the form of ascertainable losses of money or property, monetary and non-monetary damages, including loss of the benefit of their bargain as they would not have paid for goods and services or would have paid less for such goods and services but for Defendant's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; time and money spent cancelling and replacing forms of personal identification; loss of value of their PHI; and an increased, imminent risk of fraud and identity theft.

196.     Plaintiff Fadness and Idaho Sub-Class members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, and attorneys' fees and costs.

### COUNT ELEVEN
**Violation of Washington Consumer Protection Act**
**(By Plaintiff Peterson and the Washington Sub-Class)**

197.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

198.     Plaintiff Peterson brings this claim individually and on behalf of the Washington Sub-Class.

199.     Defendant is a "person" within the meaning of the Washington Consumer Protection Act, RCW § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of RCW § 19.86.010(2).

35

200.    Plaintiff Peterson and members of the Washington Sub-Class are "persons" within the meaning of RCW § 19.86.010(1).

201.    Defendant's failure to safeguard PHI disclosed in the Data Breach constitutes an unfair act that offends public policy, including as set forth in state laws.

202.    Defendant's failure to notify Plaintiff Peterson and Washington Sub-Class members promptly and fully regarding the Data Breach is unfair and/or deceptive because these acts or practices offend public policy and omit to disclose material information timely to Plaintiff Peterson and Washington Sub-Class members.

203.    Defendant's failure to safeguard the PHI disclosed in the Data Breach, and its failure to provide timely and complete notice of the Data Breach to the victims causes substantial injury to Plaintiff Peterson and Washington Sub-Class members, is not outweighed by any countervailing benefits to consumers or competitors and is not reasonably avoidable by consumers.

204.    Defendant's failure to safeguard the PHI disclosed in the Breach and its failure to provide timely and complete notice of the Data Breach to the victims is unfair because these acts and practices are immoral, unethical, oppressive, and unscrupulous.

205.    Defendant's unfair acts or practices occurred in its trade or business and are capable of injuring a substantial portion of the public. Defendant's general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

206.    As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff Peterson and Washington Sub-Class members suffered injury in fact.

207.   Plaintiff Peterson and Washington Sub-Class members are entitled to an order enjoining the conduct complained of herein and ordering Defendant to take measures to prevent similar data breaches; actual damages; treble damages pursuant to RCW § 19.86.090; costs of suit, including reasonable attorneys' fees; and such further relief as the Court may deem proper.

## COUNT TWELVE
### Violation of Washington Data Disclosure Law
### (By Plaintiff Peterson and the Washington Sub-Class)

208.   Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

209.   Plaintiff Peterson brings this claim individually and behalf of the Washington Sub-Class.

210.   Under RCW § 19.255.0101, Defendant is required to disclose "any breach of the security of the data immediately following discovery" of a data breach, "in the most expedient time possible and without unreasonable delay."

211.   Under RCW § 19.255.020, Defendant is required to exercise "reasonable care to guard against unauthorized access to" the PHI disclosed in the Data Breach.

212.   By waiting several months after discovering the Data Breach, Defendant failed to disclose the Data Breach in the most expedient time possible and failed to exercise reasonable care to prevent the Data Breach.

213.   Plaintiff Peterson and Washington Sub-Class members seek damages permitted by law, as well as injunctive relief.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

A.   Certify this case as a class action on behalf of the Classes defined above, appoint Plaintiffs as Class representatives, and appoint the undersigned as Class counsel;

B.   Award declaratory and other equitable relief as is necessary to protect the interests of Plaintiffs and members of the Classes;

C.   Award injunctive relief as is necessary to protect the interests of Plaintiffs and members of the Classes;

D.   Enter an Order enjoining Defendant from further deceptive and unfair practices and making untrue statements with respect to the Data Breach and the stolen PHI;

E.   Enter an award in favor of Plaintiffs and Class members that includes compensatory, exemplary, punitive damages, and statutory damages, including pre- and post-judgment interest thereon, in an amount to be proven at trial;

F.   Award restitution and damages to Plaintiffs and Class members in an amount to be determined at trial;

G.   Enter an award of attorneys' fees and costs, as allowed by law;

H.   Enter an award of pre-judgment and post-judgment interest, as provided by law;

I.   Grant Plaintiffs and Classes members leave to amend this complaint to conform to the evidence produced at trial; and

J.   Grant such other or further relief as may be appropriate under the circumstances.

## VII.      DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

38

RESPECTFULLY SUBMITTED AND DATED this February 4, 2021.


By:  */s/ Jonathan Shaw*
Jonathan Shaw
District of Maryland Bar No. 11328
**Boies Schiller Flexner LLP**
1401 New York Ave, NW
Washington, DC 20005
Tel:  (202) 274-1123
Fax:  (202) 237-6131
jshaw@bsfllp.com

Adam R. Shaw (*pro hac vice forthcoming*)
Jenna C. Smith (*pro hac vice forthcoming*)
**Boies Schiller Flexner LLP**
30 South Pearl Street, 11th Floor
Albany, NY 12207
Tel:  (518) 434-0600
Fax:  (518) 434-0665
ashaw@bsfllp.com
jsmith@bsfllp.com

Samuel J. Strauss
Mary C. Turke
**TURKE & STRAUSS, LLP**
613 Williamson Street Suite 201
Madison, WI 53703
Ph: (608) 237-1775
mary@turkestrauss.com

*Attorneys for Plaintiffs*