**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **IN RE US FERTILITY, LLC DATA SECURITY LITIGATION** | **Master File No. 8:21-cv-299** |
| This Document Relates To: | |
| All Actions | |

### STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

This Order Regarding Production Of Electronically Stored Information And Paper Documents ("ESI Protocol") shall govern the production of documents, including electronically stored information in the above-captioned case and all actions that are later consolidated with that case (collectively, the "Litigation"), including between Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela ("Plaintiffs"), and Defendants US Fertility, LLC, Shady Grove Reproductive Science Center P.C., and Fertility Centers of Illinois ("Defendants") (collectively, the "Parties").

To expedite discovery in the Litigation, pursuant to this Court's authority and with the consent of the Parties, it is agreed:

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, and any other applicable orders and rules. All disclosures and productions made pursuant to this Stipulated Order will be subject to

any Stipulated Protective Order entered in the Litigation.  Except as expressly provided, this Order does not create greater duties or obligations than those existing under the Federal Rules of Civil Procedure and applicable law

## 2.  COOPERATION

The Parties are aware that the Court expects cooperation on issues relating to the identification, preservation, collection, search, review, production, integrity, and authentication of ESI. The Parties will familiarize themselves with the Court's Principles for the Discovery of Electronically Stored Information in Civil Cases ("Principles for Discovery of ESI").

The Parties will work cooperatively to fashion reasonable, precise and cost-effective search strategies and to agree upon and implement appropriate measures for quality assurance and quality control. The parties should be forthcoming and transparent in disclosing their use of mechanized tools to cull responsive data and are encouraged to bring technically-adept personnel together to resolve e-discovery issues.

## 3.  PROPORTIONALITY

The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(2)(C) must be applied in this case when formulating a discovery plan. To facilitate adherence to the proportionality standard, requests for production of ESI and related responses should be prepared in consultation with custodians, IT custodians, and/or IT administrators so the resulting discovery is reasonably targeted, clear, complete, accurate, and as particularized as practicable.

## 4.  LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be familiar with, or gain knowledge about, the technical aspects of e-discovery, including the

location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5. **PRESERVATION**

The Parties will take reasonable steps to preserve potentially relevant ESI. By preserving ESI for the purposes of this litigation, the Parties are not conceding that such material is discoverable. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree to meet and confer on preservation during the pendency of the lawsuit, specifically, but without limitation, preservation of metadata, preservation of deleted ESI, backup or archival ESI, ESI contained in dynamic systems, ESI destroyed or overwritten by the routine operation of systems, and offsite or online ESI.

6. **PRODUCTION MEDIA AND PROTOCOL**

The production media for document productions shall be secure FTP link provided via email at the time a production letter is emailed, unless the Parties agree otherwise. If the Parties agree, the production media may be a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, so long as such production media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) text referencing that it was produced in *In Re US Fertility, LLC Data Security Litigation*, (2) the production date, and (3) the Bates number range of the materials contained on such production media item.

## 7.  SEARCH METHODOLOGIES

**a.    Information to be exchanged.** Within 14 days of this Order, and within thirty days of any subsequent requests for production of documents, the Parties agree to exchange information regarding:

i.    The identity and job title of custodians or categories of custodians possessing relevant information and from whom documents will be collected or produced;

ii.    The location(s) and description(s) of relevant data sources including custodial and non-custodial documents, structured data sources, and applications;

iii.    A description of any potentially discoverable ESI that the party is aware of having been lost or destroyed; and

iv.    A description of any potentially discoverable ESI that the party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

1.    the reasons for the party's contention regarding accessibility; and

2.    the proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

**b.    ESI Search.** The Parties will cooperate in good faith regarding the disclosure and formulation of appropriate methods to search for and identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Agreement on a search methodology does not relieve a party of its obligations under the Federal Rules to conduct a reasonable search and produce all relevant and responsive documents and ESI of which it is aware. Such

documents should be produced promptly and should not be withheld pending agreements regarding (or production of) other aspects of discovery.

c.    **Search Methodology.** The Parties agree to meet and confer in good faith about any technology or process that a Producing Party proposes to use to streamline the document production in this case (*e.g.*, search by key term and/or data, email threading, near de-duplication).

For example, the Parties anticipate using search terms to narrow certain sets of documents subject to linear review where appropriate. Prior to implementing such search terms, the producing party will provide a list of proposed search terms to the requesting party and the Parties will meet and confer regarding any modifications or additional terms proposed by the requesting parties. The Parties will cooperate in developing search terms in furtherance of the goal of Proportionality Standard of the Rules of Civil Procedure, for example, as appropriate, by testing multiple versions of search terms, providing hit reports for each search term and custodian, and selecting and sequencing the terms to be used for review and production.

The Producing Party will conform any agreed modifications or additional term to the search syntax and any constraints of the review and analytics platform being used, and will identify the final form or forms of any such search term.

The Parties will meet and confer in good faith if they anticipate using predictive coding, continuous active learning or any other technology assisted review or advanced analytics. Following the disclosure of such technology or process, the Parties shall attempt to resolve any objections to the use of such technology or process before seeking relief from the Court. A party will not use predictive coding, continuous active learning, or any other technology assisted

review or advanced analytics in a production of documents before disclosing the use of such tools to the other party and meeting and conferring about appropriate methods and protocols.

This Stipulation is not intended to limit a party's ability to use basic technology and analytics, such as email threading, domain exclusions, and metadata analysis to facilitate a responsiveness review. To the extent a party wishes to use such methods, the parties will meet and confer to discuss the details of how these methods will be used.

8. **TESTING AND VALIDATION**

The Parties intend to conduct a linear review of documents that hit on agreed upon search terms to identify documents responsive to requests for production served on them. At the substantial completion of their linear review process, any party that produces more than 10,000 documents in the litigation shall disclose the number of documents that hit on the agreed search terms, the number of documents produced or withheld as privileged, and the number of documents identified as non-responsive during the course of the review.

Any party that produces more than 10,000 documents in the litigation agrees to quality check the data that does not hit on any terms (the Null Set) by selecting a statistically random sample of documents from the Null Set. The parties will meet and confer in good faith in an attempt to agree on the appropriate sample size. If responsive documents are found during the Null Set review, Defendants agree to produce the responsive documents separate and apart from the regular production. The Parties will then meet and confer to determine if any additional terms, or modification to existing terms, are needed to ensure substantive, responsive documents are not missed.

9.  **PRODUCTION FORMATS**

a.      **Production Format/TIFFs**. Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder, or by providing a list of Bates numbers containing documents removed from the production with the production cover letter. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These .TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

b.      **Text Files**.  All unredacted documents should be provided with complete document-level extracted text files, where extracted text is available. Where extracted text is not available, OCR text will be provided where reasonably feasible. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents and other imaged documents that do not have extracted text. If a party is not providing OCR for a set of documents, it will identify those documents by Bates number at the time of production. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder

or included in the same folder as their corresponding images. The number of TXT files per folder should be limited to 1,000 files.

      c.    **<u>Native File Production</u>**.

      i.    Responsive spreadsheets (e.g., Excel), presentation files (e.g., Powerpoint), audio files, and video files shall be produced in native format.

      ii.    A TIFF placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in native format. The placeholder should include the words "Document produced in native format."

      iii.    The file name for documents produced in native should be the Bates number for the document along with the applicable confidentiality designation (e.g., "USF000000001 – Confidential"), with the original file name identified in the File Name metadata field specified in Exhibit A.

      iv.    Native files will not be produced for redacted documents, except for spreadsheets or similar documents, which shall be natively redacted where feasible. Documents that cannot be natively redacted may be produced in .tiff format with OCR text files in lieu of a native file. Responsive ESI produced in native format shall be produced with all the metadata contained in or associated with that file to the extent technologically possible. If a party identifies other forms of responsive ESI that it would prefer to produce or receive in native format, the producing and receiving parties shall meet and confer in good faith to address the issue.

      v.    Extracted text taken from native files will be provided at a document level. There will be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document will reside in the same location (file directory) as the images for that document. The text file associated with any

redacted document will exclude redacted text (*i.e.*, the Producing Party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

vi.     No party may attach to any pleading or any correspondence or submit as an exhibit or in any other manner use at a deposition or any other judicial proceeding a copy of any native format document produced by any party without ensuring that either the corresponding slip sheet is attached to the document or the corresponding Bates number and confidentiality legend, as designated by the Producing Party, appears on or is associated with the document.

d.      **Embedded Objects**. If documents contain embedded objects (e.g., a spreadsheet embedded in a word processing document), the Parties will produce embedded objects as separate files and treated as an attachment to the parent document.

e.      **Color**. ESI containing color (for example, graphs, pictures, or color marketing materials) will be produced as color images for each such document if color is necessary to reasonably understand the content of the ESI (e.g., color charts). Otherwise, a Party may request the Producing Party to produce particular documents or categories of documents in color where reasonable.

f.      **Bates Numbering**. All images must be assigned a Bates Number that must be unique across the entire document production and sequentially numbered within a given document. Producing Parties must emboss Bates numbers on all image files in a manner that does not obscure any part of the underlying image and is, to the extent possible, oriented in the same manner as the majority of the text on the page. The Parties shall cooperate with reasonable requests regarding Bates Number formatting necessary for litigation support application use. Each Bates Number shall be no more than 18 characters in length and including leading zeros so that all Bates numbers produced by a Party have the same number of digits.

g.      **De-duplication**. The Parties shall make reasonable efforts to de-duplicate ESI. ESI shall be de-duplicated horizontally across custodians. ESI will be considered duplicative if it has the same MD5 or SHA-1 hash value at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent and all attachments are also duplicates. An email that contains content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not contain identical content in those fields, even if all remaining content in the email is identical. All custodians who were in possession of a de-duplicated document must be identified in the Custodians metadata field specified in Exhibit A.

h.      **Confidentiality Endorsements**. The producing party must brand any confidentiality or similar endorsements in a corner of the TIFF images pursuant to the protective order entered in this case. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates Number, to the extent possible.

i.      **Email Threading**. To reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document, senders and recipients (including blind copy), and all attachments are exactly the same will be considered duplicates. Email thread suppression may not be used where any of the emails or attachments included in the thread are withheld or redacted.

j.      **Metadata Fields and Processing**. Each of the metadata and index fields set forth in Exhibit A will be produced for that document. If the Producing Party becomes aware of an

issue extracting metadata or any other processing, the Producing Party must notify the other party and meet and confer to arrive at a mutually acceptable resolution of the issue. The Parties are not obligated to create or manually code any of the fields in Exhibit A if such fields cannot be extracted from a document, with the exception of metadata referring to characteristics of the document production process itself, such as Bates numbers, confidentiality designations, and redactions.

k.  **Parent-Child Relationships**. Parent-child relationships refer to the association between an attachment and its parent document. Parent-child relationships must be preserved. Family relationships often exist between an email and its attachments, but can also be found amongst a stand-alone document and files originally contained within that parent document, which are subsequently de-embedded as part of discovery processing. For example, a PowerPoint document with embedded Excel spreadsheets, for which the spreadsheets would be treated as attachments to the PowerPoint.

l.  **Attachments**. The Parties agree to produce complete documents when any part of the document (including parents or attachments) is responsive. Where a document includes numerous irrelevant attachments with confidential proprietary and/or personal information, the Parties will meet and confer on whether those attachments need to be produced. If an attachment is entirely withheld on the basis of privilege, such that the Producing Party asserts privilege over a portion but not all of the responsive files in a family, the Producing Party shall produce a Bates numbered slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." Slip sheets need not be produced for fully privileged document families.

m.  **Redaction.** The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF with each redaction clearly indicated, except in cases where the

documents cannot be rendered to TIFF in a reasonably usable manner (such as Excel spreadsheets). In that case, the document may be redacted natively as long as pristine copy of the original document is maintained. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content, where reasonably feasible. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

If a party redacts documents or ESI, the Producing Party will identify that the document has been redacted and the basis for that redaction (*e.g.*, "Privileged—ACC," "Privileged—WP," "Privileged—Both ACC/WP," "PII," or "PHI") in the "Redacted" metadata field identified in Exhibit A. The redaction also shall be clearly visible on the face of the document. The party shall also populate a corresponding metadata tag to indicate any such redactions. A party may not redact information on the basis it believes such information to be irrelevant.

n.    **Load Files**. Documents must be provided with (1) a delimited metadata file (.dat or .txt); (2) an image load file; and (3) a text file.

o.    **File Size Limitation/Non-Standard Files**. To the extent necessary or practical, the Parties will discuss the format of production of unusually large files and non-standard electronic files, and large oversized documents (e.g., blueprints, posters), to determine the optimal production format.

p.    **Dynamic Fields**. Documents with dynamic fields for file names, dates, and times will be processed, where reasonably feasible, to show the field code (e.g., "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

If it is not reasonably feasible to process and produce dynamic fields as above for any ESI items, the producing party will advise the requesting party.

q.   **Compressed Files**. Compressed file types will be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

r.   **Scanning of Hard-Copy Documents**. Hard copy documents will be scanned and processed as .tiff images with OCR. The Parties will use best efforts to unitize documents (i.e., distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and maintain document relationships. Copies of hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party. To the extent this production format is not feasible or causes the producing party undue burden, the Parties agree to meet and confer to discuss a different form of production.

s.   **No Backup Restoration Required**.  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to, backup tapes, discs, SAN or other form of media, in order to comply with its discovery obligation in the present case.

t.   **Encryption**. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover, reasonably contemporaneously with sending the encrypted media.

10. **<u>SPECIAL ESI ISSUES</u>**

     a.     **Password-Protected or Encrypted.** The Producing Party will take reasonable steps to unlock or decrypt any password-protected or encrypted documents so they can be reviewed and/or produced. In the event that a Producing Party is unable to access the content of documents that are reasonably likely to be responsive to a discovery request, the Producing Party shall produce a Bates numbered slip sheet for each document that cannot be accessed that contains the following language: "Document Cannot be Opened Due to Encryption or Password Protection." In addition, the Producing Party shall advise the Requesting Party of the total number of such documents and shall produce any available metadata for each document that cannot be accessed.

     b.     **Hidden Text.** ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, and comments, all of which shall be rendered visible on any documents not produced in native format.

     c.     **System Files.** ESI productions should be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology. Other files types may be added or removed from the list of excluded files by agreement of the parties. This provision is not intended to waive the Parties' right to seek production of specific files or file types that otherwise would be excluded by this provision.

     d.     **Production of Structured Data.** To the extent responsive information is contained in a database or other structured data source, the parties will meet and confer in good faith to discuss the appropriate format for production. A Producing Party that desires to produce less than the entire data source will provide the Requesting Party with information about the data source sufficient to facilitate an informed discussion of the appropriate form of production. This

may include information such as database schema, tables and fields, codes, abbreviations, and available report formats.

e.   **Inaccessible ESI**. If a Producing Party asserts that certain ESI is inaccessible or otherwise unnecessary under the circumstances, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the Parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such dispute after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

11. **PRIVILEGE LOGS AND CHALLENGES**

a.   **Privileged Documents That Need Not Be Logged.**  Defendants shall have no obligation to log privileged or work product documents created on or after September 14, 2020 solely concerning litigation, governmental regulatory investigations and administrative proceedings arising out of the data security incident if exchanged exclusively between a Party, its in-house attorneys, and its outside counsel, including support staff, paralegals, and secretarial personnel. Documents and communications concerning other matters, including incident response, investigation, remediation, and attacker attribution must be logged. Plaintiffs shall have no obligation to log correspondence solely concerning this litigation exchanged exclusively between themselves and outside counsel following counsel's retention, including their respective support staff, paralegals, and secretarial personnel. The Parties are not required to log privileged or work product documents exchanged between outside counsel and experts or consultants solely concerning litigation,  governmental regulatory investigations and administrative proceedings arising out of the data security incident.  To the extent any experts or consultants also were involved in activities related to incident response, investigation, or remediation, documents and

communications exchanged in such other capacities must be logged. Any other Parties joined in the future, if any, shall have no obligation to log correspondence solely concerning the litigation exchanged with their outside counsel after the date on which a duty to preserve was triggered. This Order is not intended to alter any applicable discovery limitations concerning activities undertaken in compliance with the duty to preserve information (including, but not limited to, litigation hold letters) under Federal Rule of Civil Procedure 26(b)(3)(A) and (B).

 **b.** **Format and Timing of Privilege Log Productions.** Privilege logs shall be produced as Excel spreadsheets. Each Producing Party shall produce privilege logs on a rolling basis, updated to cover documents withheld from a particular production within 30 days of that production. The Parties agree to produce privilege logs with sufficient time for the receiving party to review the entries and bring challenges before any applicable case deadlines expire and will meet and confer as necessary to permit this process.

 c. **General Privilege Log Contents**. Unless otherwise specified in this Stipulation and Proposed Order or agreed to by the parties, documents a party believes are covered by an attorney-client privilege or work product protection should be logged on a privilege log on a document-by-document basis. Consistent with Federal Rule of Civil Procedure 26(b)(5), the following information should be provided (as applicable) in the privilege log for each document:

- Bates-number range, or if no Bates-number range, a unique document identification number;
- document type;
- family relationship;
- document date;
- attorney(s) and client(s) involved;
- all persons or entities shown on the document to have received or sent the document,

including copyees and blind copyees;

- all persons or entities known to have been furnished the document or informed of its substance;

- privilege or protection claimed; and

- without revealing information itself privileged or protected, a description of the subject matter of the withheld document or electronically stored information sufficient to enable the Requesting Party to assess the validity of the privilege claim.

d.       **Documents Redacted for Privilege.** A Party need not provide a log of documents redacted for privilege if (1) it complies with the provisions of this Stipulation and Order concerning redactions, including providing a metadata field that indicates the basis of the redaction, and (2) the contents and metadata produced with the redacted document together contain all of the information that would otherwise be included on a privilege log.

e.       **Email Strings.**  Each withheld communication in an email string shall be separately logged as described above, including identifying all other documents in the same email string or document family.

f.       **Identification of Counsel.**  All in-house attorneys and outside counsel, including their respective support staff, paralegals, and secretarial personnel involved in privileged communications or work product shall be so identified in the privilege log.

g.       **Challenges to Privilege Log.**  If a Requesting Party believes in good faith that one or more items in a Producing Party's privilege log should be produced and are inappropriately being withheld, then it shall raise the issue with the Producing Party in writing with reasonably sufficient detail so that the Producing Party may understand the Requesting Party's complaint. Within ten (10) business days, the Producing Party shall respond in writing. If the response does not satisfy the Requesting Party, the Parties shall meet and confer, and if the

dispute as to the privileged nature of the material cannot be resolved, then the Requesting Party may seek relief from the Court as to the specific log entries or categories of log entries (so long as the category is identified with reasonable particularity) raised with the Producing Party in accordance with any applicable Court procedures.

12. **<u>MISCELLANEOUS PROVISIONS</u>**

a.    **<u>Objections Preserved</u>.** Nothing in this protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.  Except as provided expressly herein, the Parties do not waive any objections as to the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden or overbreadth of document requests.

b.    **<u>Modifications.</u>** Any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI. This Stipulated Order may also be modified by the Court for good cause shown.

**EXHIBIT A**
**Metadata Fields**

**A. Default Production Fields**

The following default fields will be provided for all documents in the production.

| Field Name | Description |
|---|---|
| Begin Bates | Beginning Bates Number of the Email, Application File, or Paper Document |
| End Bates | Ending Bates Number of the Email, Application File, or Paper Document |
| Begin/End Bates | Bates Range for Email, Application File, or Paper Documents |
| Begin/End Attachment | Bates Range for Full Family |
| Att Count | Number of attachments to an email |
| Parent/Child ID | Bates Number of either the Attachment (if Parent Email) of Parent Email (if Attachment) |
| Confidentiality | Field populated with the appropriate confidentiality designation for the Document. |
| Custodians | Multi-value field for custodians identified during collection. All documents should have a custodian value present. Multiple custodians should be separated by a ",". If multiple documents dedupe during processing, this field should be populated with all custodian values available. |
| Page Count | The number of pages in the Document. |
| Redacted | Field indicating whether the Document contains redactions and the basis for the redaction (*e.g.*, privileged, etc.). |

B. **Metadata Fields**

The following metadata fields associated with emails, attachments and non-email files

will be exchanged. Any privileged metadata associated with any redacted documents may be

withheld from the production and treated like all other data subject to this Stipulation and Order.

| Field Name | Email or Non-Email | Description |
|---|---|---|
| Subject/Title | Email | Subject line of the email |
| File name | Non-Email | Name of the Application File |
| File Extension | Non-Email | File extension |
| Sent Date | Email | Email Sent date |
| Received Date | Email | Email Received date |
| Created Date | Non-Email | Date Application File was created. Note that Created Date may be subject to change during collection or processing as a result of auto date function or other processes. |
| Modified Date | Non-Email | Date Application File was last modified |
| Modified Time | Non-Email | Date Application File was last modified |
| Author/From | Both | Author of the Application File or sender of the Email |
| Recipient/To | Email | Recipients of the Email |
| Copyee | Email | CCs of the Email |
| BCC | Email | BCCs of the Email |
| File Type | Both | Email, Spreadsheet, Word Processing Document, etc. |
| File Path | Both | Location of the File Within the system |
| Path to Native | Both | Location of the File within the Production |

| Path to Text | Both | Location of the file within the Production |
|---|---|---|
| Document Type | Both | Type of file—Email, Attachment, or other file type |
| Email Sent Time | Email | Time Email was sent |
| Email Received Time | Email | Time Email was received |
| File Created Time | Non-Email | Time Application File was created |
| Native File Name | Non-Email | Native files named after the Bates number, *e.g.*, E00001.xls (in contrast to File Name which is the original name of the file) |
| MD5 Hash | Non-mail | Value commonly used to de-duplicate files or identify duplicates |

**IT IS SO STIPULATED,** through Counsel of Record.

/s/ Nikoletta S. Mendrinos

Nikoletta S. Mendrinos (Bar No. 18961)
Kaitlyn T. Holzer (Bar. No. 21684)
**MURPHY, FALCON & MURPHY, P.A.**
One South Street, 30th Floor
Baltimore, Maryland 21202
T: (410) 951-8744
F: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com
kaitlyn.holzer@murphyfalcon.com

*Liaison Counsel*

/s/ Gayle M. Blatt

Gayle M. Blatt, *Pro Hac Vice*
P. Camille Guerra, *Pro Hac Vice*
Catherine M. McBain, *Pro Hac Vice*
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
T: (619) 238-1811
F: (619) 544-9232
gmb@cglaw.com
camille@cglaw.com
kmcbain@cglaw.com

*Interim Class Counsel*

/s/ David M. Berger
David M. Berger, *Pro Hac Vice*
Rosemary M. Rivas, *Pro Hac Vice*
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
dmb@classlawgroup.com
rmr@classlawgroup.com

*Interim Class Counsel*

/s/ John A. Yanchunis
John A. Yanchunis, *Pro Hac Vice*
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 233-5505
jyanchunis@forthepeople.com

*Interim Class Counsel*

/s/ Hassan A. Zavareei
Hassan A Zavareei, *Pro Hac Vice*
Dia Rasinariu
**TYCKO & ZAVAREEI LLP**
1828 L Street NW Suite 1000
Washington, DC 20036
(202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com
drasinariu@tzlegal.com

*Interim Class Counsel*

/s/ Claudia D. McCarron
Claudia D. McCarron, *Pro Hac Vice*
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4770
cmccarron@mullen.law

*Counsel for Defendants US Fertility, LLC, Shady
Grove Reproductive Science Center P.C., and
Fertility Centers of Illinois, S.C.*

## [~~PROPOSED~~] ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: ___Nov 24___, 2021

_____
Honorable Peter J. Messitte
United States District Court

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 22nd day of November 2021, a copy of the foregoing Stipulated Order Re: Discovery of Electronically Stored Information was filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send e-mail notification of such filing to the registered attorneys of record.


*/s/ Nikoletta S. Mendrinos*

Nikoletta S. Mendrinos