IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| IN RE US FERTILITY, LLC<br><br>DATA SECURITY LITIGATION<br><br><br>This Document Relates To: All Actions | Master File No. 8:21-cv-299 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     BACKGROUND ............................................................................................. 2

III.    THE SETTLEMENT AGREEMENT ........................................................... 4

        A.      The Proposed Class.............................................................................. 4

        B.      Benefits to the Settlement Class ......................................................... 5

                1.      Monetary Benefits..................................................................... 5

                2.      Injunctive Relief........................................................................ 7

        C.      Settlement Administrator and Administration Costs ........................... 7

        D.      Class Member Release ......................................................................... 8

        E.      Proposed Plan of Notice....................................................................... 9

        F.      Opt-Outs and Objections.................................................................... 10

        G.      Attorneys' Fees and Costs and Service Award................................... 11

IV.     LEGAL STANDARD FOR PRELIMINARY APPROVAL ......................... 11

V.      ARGUMENT ................................................................................................. 12

        A.      The Settlement Agreement warrants preliminary approval. ............... 12

                1.      The Settlement is fair. ............................................................. 13

                2.      The Settlement is adequate. .................................................... 16

                3.      The allocation of the Settlement is fair and reasonable. ............. 18

        B.      The Court Should Certify the Settlement Class. ................................ 20

                1.      The proposed class is ascertainable. ....................................... 20

                2.      The proposed class satisfies the requirements of Rule 23(a). .................. 20

                        a.      Numerosity.................................................................20

                        b.      Commonality..............................................................21

                        c.      Typicality...................................................................21

          d.   Adequacy of Representation……………………………...…………..22

    3.   The Settlement Class meets the requirements of Rule 23(b)(3)…………23

          a.   Predominance ……………………………………………….……..23

          b.   Superiority…………………………………………………….……23

C.   The Court Should Approve the Proposed Notice Plan and Appoint the Settlement Administrator. ........................................................................................................ 24

VI.   CONCLUSION..................................................................................................... 26

.

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alloways v. Cruise Web, Inc.*,
 No. CBD-17-2811, 2019 WL 1902813 (D. Md. April 29, 2019) ............................... 11, 12

*Decohen v. Abbasi, LLC*,
 299 F.R.D. 469 (D. Md. 2014) .................................................................................. *passim*

*Eisen v. Carlisle and Jacquelin*,
 417 U.S. 156 (1974) .................................................................................................... 24

*EQT Prod. Co. v. Adair*,
 764 F.3d 347 (4th Cir. 2014) ...................................................................................... 20

*Fire & Police Retiree Health Care Fund, San Antonio v. Smith*,
 No. CV CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020) ............................ 13

*Gaston v. LexisNexis Risk Sols. Inc.*,
 No. 516CV00009KDBDCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021) .............. 13, 16

*Herrera v. Charlotte Sch. of L., LLC*,
 818 F. App'x 165 (4th Cir. 2020) ................................................................................ 12

*In re Jiffy Lube Sec. Litig.*,
 927 F.2d 155 (4th Cir. 1991) ......................................................................... 11, 12, 13, 14

*In re The Mills Corp. Securities Litig.*,
 265 F.R.D. 246 (E.D. Va. 2009) .................................................................................. 16

*Jernigan v. Protas, Spivok & Collins, LLC*,
 No. CV ELH-16-03058, 2017 WL 4176217 (D. Md. Sept. 20, 2017) ........................... 15

*Jones v. Fid. Res., Inc.*,
 No. CV RDB-17-1447, 2019 WL 4141015 (D. Md. Aug. 30, 2019) ............ 19, 20, 22, 23

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
 No. 3:14CV238(DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ........................... 15

*Nicholes v. Combined Ins. Co. of Am.*,
 No. 5:16-CV-10203, 2019 WL 2575066 (S.D.W. Va. Feb. 22, 2019) ........................... 14

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) .................................................................................................... 24

*Robinson v. Carolina First Bank NA*,
 No. 7:18-CV-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ........................... 17

*Shaver v. Gills Eldersburg, Inc.*,
  No. 14-3977-JMC, 2016 WL 1625835 (D. Md. Apr. 25, 2016)........................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................................... 21

**STATUTES**

28 U.S.C. § 1715.............................................................................................................. 10

**RULES**

FED. R. CIV. P. 23 ............................................................. 11, 12, 15, 16, 17,19, 20, 21, 22, 23, 24

**EXHIBITS**

Joint Declaration of Class Counsel in Support of Motion for Preliminary Approval of
Class Action Settlement and for Certification of Settlement Class...……………………Exhibit A

Declaration of Steven Weisbrot of Angeion Group, LLC……………………………..Exhibit B

I.   **INTRODUCTION**

Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela ("Plaintiffs"), individually and on behalf of the proposed Settlement Class, seek preliminary approval of a proposed Settlement against Defendants US Fertility, LLC ("US Fertility" or "USF"), Shady Grove Reproductive Science Center P.C. ("Shady Grove"), and Fertility Centers of Illinois, S.C. ("Fertility Centers") (collectively, "Defendants," "US Fertility," or "USF"). The Settlement Agreement, if approved, will establish a common fund of $5,750,000.00 to provide monetary relief to Settlement Class members.

Specifically, a $5,750,000 Common Fund will be created to resolve the claims of Plaintiffs and the Settlement Class Members deriving from the potential disclosure of their personal identifiable information ("PII") and/or protected health information ("PHI") to an unauthorized third party(s) who engaged in a ransomware event (the "Data Breach"). The Common Fund will provide cash payments to Settlement Class Members, pay Administrative Costs to provide notice and administer the settlement, and pay any Attorneys' Fee and Expense Award and Service Awards that the Court may approve.

The proposed Settlement should be preliminarily approved. The Settlement provides substantial monetary and valuable injunctive relief to the Settlement Class. This relief was secured after 18 months of settlement negotiations which included two full, day-long mediation sessions before independent mediators, by experienced and informed counsel. As such, the proposed Settlement warrants preliminary approval, as the terms are fair, reasonable, and adequate. Accordingly, Plaintiffs request that the Court (1) preliminarily approve the proposed Settlement;

(2) certify the Settlement Class for settlement purposes only; (3) appoint Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Class Representatives; (4) appoint Lisa Cox, Heidi Schneider, Laura Petersen, and Patrisia Vela as CMIA Subclass Representatives; (5) appoint John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel, (6) appoint Angeion Group as the Settlement Administrator, approve the plan to distribute Class Notice and order that Class Notice be distributed to the Settlement Class, and (7) schedule a Final Approval Hearing. Defendants do not oppose the relief sought in this Motion.

## II.    BACKGROUND

Beginning in November 2020 through January 2021, US Fertility notified patients of its network of fertility clinics that its systems were accessed during a ransomware by an unauthorized party(s), who acquired files during the period August 12, 2020 to September 14, 2020. US Fertility also informed these individuals that their PII and/or PHI was contained within the impacted files. Beginning in January 2021, Plaintiffs began filing lawsuits in this Court: *Doe et al. v. US Fertility, LLC* ("*Doe*"), Case No. TDC-21-248 (D. Md. Jan. 28, 2021); *Vinsant v. US Fertility, LLC*, Case No. TDC-21-225 (Jan. 26, 2021); *Fadness v. US Fertility, LLC*, Case No. PJM-21-299 (Feb. 4, 2021); *Churchill v. US Fertility, LLC*, Case No. PWG-21-370 (Feb. 15, 2021); *Decker v. US Fertility, LLC*, Case No. PWG-21-404 (Feb. 17, 2021); *Mateson v. US Fertility, LLC*, Case No. PWG-21-466 (Feb. 23, 2021); *Stuckley v. US Fertility, LLC*, Case No. PWG-21-496 (Feb. 25,

2021); and *Forest v. US Fertility, LLC*, Case No. TDC-21-646 (Mar. 15, 2021). The Court consolidated these cases, and Plaintiffs filed a consolidated class action complaint on June 7, 2021 (ECF No. 39). In July 2021, the Court consolidated *Mullinix v. US Fertility*, LLC, 1:21-cv-01430 and *Leonard v. US Fertility, LLC*, 1:21-cv-1783 with the previously consolidated cases. Plaintiffs amended their consolidated class action complaint on November 15, 2021 (ECF No. 60). The First Amended Consolidated Class Action Complaint ("Consolidated Complaint") asserts claims on behalf of a proposed nationwide class and state-specific subclasses for negligence, unjust enrichment, breach of confidence, declaratory and injunctive relief, breach of contract, California's Confidentiality of Medical Information Act ("CMIA"), data privacy laws of Maryland and Virginia, and consumer protection laws of Maryland, Nevada, Florida, Illinois, Washington, North Carolina, Idaho, and Utah.

On November 22, 2021, Defendants filed a motion to dismiss the Consolidated Complaint and a motion to strike (ECF No. 65). Defendants argued that Plaintiffs had not alleged legally cognizable harms arising out of the Data Breach, that Defendants were not the proximate cause of any such harms, and that Plaintiffs had not pled facts showing damages. Defendants relied heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

Plaintiffs filed their opposition to Defendants' motion to dismiss on December 22, 2021 (ECF No. 78). On January 11, 2022, Defendants filed a reply in support of their motion to dismiss (ECF No. 82). On April 28, 2022, the Court heard oral argument of the Parties on Defendants' motion to dismiss Plaintiffs' Consolidated Complaint (ECF No. 83).

On January 26, 2022, Plaintiffs moved to intervene and transfer another case, *Doe v. US Fertility*, No. 1:21-cv-00579 (N.D. Ill.), arising from the Data Breach. Judge Feinerman of the United States District Court for the Northern District of Illinois granted Plaintiffs' motion as to the

3

claims against US Fertility and transferred the case to the United States District Court for the District of Maryland on July 6, 2022. Plaintiffs moved to consolidate *Doe* with *In re: US Fertility, LLC Data Security Litigation*, No. 8:21-cv-299, on September 8, 2022.

Prior to filing their Consolidated Complaint, the Parties mediated this matter before mediator Bennett G. Picker on September 28, 2021. Although this mediation did not result in agreement on settlement terms, the Parties continued negotiations and agreed to engage in a second mediation on June 13, 2022 before Judge Morton Denlow (Ret.), a retired U.S. Magistrate Judge and an experienced mediator in assisting in the resolution of class litigation. The Parties were unable to reach an agreement as to the amount of the settlement on that date. Ultimately, on October 4, 2022, Judge Denlow provided the Parties with a mediator's recommendation as to the monetary terms of the settlement. On October 10, 2022, after further negotiations among the Parties, counsel for the Parties reached a tentative agreement with regard to those terms. Thereafter, the Parties engaged in ongoing negotiations relating to business practice commitments which are to be included as part of the settlement. All of these terms are incorporated into the Settlement Agreement executed by the Parties on or about August 21, 2023.

## III.    THE SETTLEMENT AGREEMENT

### A.    The Proposed Class

The Settlement Agreement contemplates certification of the following Settlement Classes for settlement purposes only:

> **The Nationwide Class**: All persons residing in the United States or its territories whose PII and/or PHI, as defined herein, was compromised in the Data Breach that US Fertility or its subsidiaries or partners first announced in November 2020.

> **The CMIA Subclass**: All United States residents whose information was provided to a fertility clinic in California and whose PHI, as defined herein, was compromised in the Data Breach that US Fertility announced in November 2020.

4

Joint Declaration of Class Counsel ("Joint Counsel Decl.") attached hereto as **Exhibit A**, at Ex. 1 ("SA") ¶ 39.

### B.    Benefits to the Settlement Class

#### 1.    Monetary Benefits

The Settlement Agreement provides monetary benefits in the form of a common fund of $5,750,000.00, from which shall be paid (1) all payments to Settlement Class members, (2) all Administrative Costs, (3) any Fee and Expense Award approved by the Court, and (4) any Service Awards to the Class Representatives approved by the Court. *See* SA ¶ 35. After payment of costs of administration and notice and any attorneys' fees, expenses, and service awards authorized by the Court, the Net Settlement Fund will be distributed to Settlement Class Members as described below. *Id.* ¶ 15.

Members of the Nationwide Class and the CMIA Subclass may submit claims for (a) a presumptive payment of $50.00 without any documentation; (b) reimbursement of up to four hours of Time Spent at $25.00 per hour, capped at $100.00, with a brief description of how and when the time was spent and how the expenditure of time is related to the data breach and/or (c) reimbursement of Out-of-Pocket Losses of up to $15,000.00 with documentation. *Id.* ¶¶ 53, 50, 48. Members of the CMIA Subclass may also submit claims for a statutory payment in the presumptive amount of $200.00. Members of the Nationwide and CMIA subclass may claim more than one category of benefits but no one individual may receive in excess of the total sum of $15,000.00. SA ¶ 62. Defendants have identified approximately 884,090 Settlement Class Members and have represented that they have what are believed to be their most recent mailing addresses as of the time of notice. *Id.* ¶ 39; Joint Counsel Decl. ¶ 34.

In the event that the aggregate amount of all claims for settlement benefits exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for benefits do not exceed the Net Settlement Fund. *Id.* ¶ 64. In the event that the aggregate amount of Approved Claims for all benefits does not total the Net Settlement Fund, then the value of each Participating Settlement Class Members' Cash Payment and CMIA Payment shall be increased on a pro rata basis such that the aggregate value of all Approved Claims to the greatest extent feasible, exhaust the Net Settlement Fund. *Id.* If a check is returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall make reasonable efforts to locate the Settlement Class Member, reissue the check, and send it to a valid address within 30 days after the check is returned to the Settlement Administrator as undeliverable. *Id.* ¶ 57. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Settlement Class Member to obtain updated address information. *Id.* Any replacement check issued to Settlement Class Members shall remain valid and negotiable for 60 days after their issuance and may thereafter automatically be canceled if not cashed by the Settlement Administrator within that time. *Id.*

If a settlement check is not cashed within 90 days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class Member by email and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. *Id.* ¶ 58.

Any reissued Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for 60 days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time. *Id.*

To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement payments to the Settlement Class Members, or 30 days after all reissued settlement checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be divided pro rata and disbursed in a secondary distribution to the CMIA Subclass Members who submitted valid claims, except that if the remaining monies, after covering additional costs of administration, are insufficient to provide a secondary distribution of at least $5.00 per eligible recipient, then the remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient as approved by the Court. *Id.* ¶ 59. In no event shall any remaining funds be returned to Defendants. *Id.*

## 2. Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. US Fertility has already implemented or agreed to implement a number of contractual business practice commitments and remedial measures for at least 3 years following the Effective Date of the Settlement Agreement. *Id.* ¶ 65. These measures are designed to safeguard patients' PII and PHI, and are described in detail in Exhibit A to the SA, filed under seal. These commitments are substantial and their implementation is subject to verification by US Fertility's counsel to Class Counsel throughout the commitment period.

## C. Settlement Administrator and Administration Costs

Subject to Court approval, the Settlement Administrator is Angeion Group ("Angeion"), a leading class action administration firm in the United States with experience in administering data

breach cases of the type at issue in this litigation. Joint Counsel Decl. ¶ 33; Declaration of Steven Weisbrot of Angeion Group, LLC ("Weisbrot Decl.") ¶ 11, attached hereto as **Exhibit B**. Interim Class Counsel requested, received, and reviewed proposals from three prominent settlement administrators before deciding on Angeion based on overall cost and value to the Settlement Class. Joint Counsel Decl. ¶ 33. The proposals included the mailing of direct postcard notice with a returnable claim form attached, the creation of a dedicated settlement website which will contain all important case documents and a long form version of the notice, the opportunity to file claims online and a toll-free number for Settlement Class Members to call for information about the Settlement. *Id.*

All Administrative Costs shall be paid from the Settlement Fund. SA ¶ 42. Currently, the Settlement Administrator estimates that the costs of notice and administration based on various assumptions will be approximately $651,959 and it has provided agreement that the costs will not exceed $779,500. Weisbrot Decl. ¶ 26; Joint Counsel Decl. ¶ 32. The Settlement Administrator will oversee the provision of Class Notice to the Settlement Class Members and administration of the Common Fund. Weisbrot Decl. ¶¶ 13-25.

**D.     Class Member Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, or relating to, the Data Breach. SA ¶ 28. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative complaint.

### E.    Proposed Plan of Notice

The parties' proposed Notice Plan is designed to reach as many Settlement Class Members as possible and is the best notice practicable under the circumstances of the instant case. Weisbrot Decl. ¶ 28; Joint Counsel Decl. ¶ 35. Within 5 days or such other time as provided in the Preliminary Approval Order, Defendants will compile the Settlement Class Member List and provide it to the Settlement Administrator and Class Counsel. SA ¶ 68. As soon as practicable, but starting no later than 23 days after receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Postcard Notice to be sent to all Settlement Class Members. *Id.*

The Settlement Administrator will also provide notice through a paid search campaign. Weisbrot Decl. ¶ 16. Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. *Id.* ¶ 36. The Settlement Website shall contain: (1) the Long Form Notice; (2) Claim Forms; (3) the Settlement Agreement; (4) the signed Preliminary Approval Order; (5) the Consolidated Complaint filed in the Action; and (6) any other such documents as Class Counsel and Defendants' Counsel agree to post. *Id.* The Settlement Website shall remain accessible until at least 5 business days after the last payment under the Settlement is made or the Settlement is terminated. *Id.*

The Settlement Administrator shall also maintain a toll-free telephone line for Settlement Class Members to call and obtain pre-recorded answers to frequently asked questions. SA ¶ 71; Weisbrot Decl. ¶ 19. Settlement Class Members will also be provided with a dedicated email address to submit questions or requests, Weisbrot Decl. ¶ 18, and there will be an opportunity for Settlement Class Members to leave a message or submit requests on the telephone line. Weisbrot Decl. ¶ 19.

The Settlement Administrator will also ensure that the necessary notice is provided to the appropriate government officials as is required by the Class Action Fairness Act, 28 U.S.C. § 1715 . *Id.* ¶ 76; Weisbrot Decl. ¶ 27. The estimated cost of Notice and settlement administration is $651,959 and will not exceed $779,500. Weisbrot Decl. ¶ 26.

**F.    Opt-Outs and Objections**

The Class Notice will advise Settlement Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Awards for the Class Representatives, and of the associated deadlines. SA ¶¶ 69-70. Settlement Class Members who choose to opt out must submit a written request for exclusion. *Id.* ¶ 69. Any request for exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. *Id.* Any Settlement Class Member who does not file a timely Request for Exclusion in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary. *Id.*

Class Members who wish to object to the Settlement must mail a written objection, postmarked no later than 60 days after Class Notice is sent, to the Settlement Administrator. *Id.* ¶ 70. The written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear

at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* Any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Award Application, or the Fee and Expense Award. *Id.*

> **G.  Attorneys' Fees and Costs and Service Award**

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees in an amount not to exceed 33.3%, as well as for documented, customary costs incurred by Class Counsel not to exceed $75,000.00. SA ¶ 86. Any approved Fee and Expense Award shall be paid from the Settlement Fund prior to distribution to the Settlement Class Members. *Id.* ¶ 15. At least 21 days before the Opt-Out and Objection Deadlines, Class Counsel will move for an award of attorneys' fees and expenses. *Id.* ¶ 86.

## IV.  <u>LEGAL STANDARD FOR PRELIMINARY APPROVAL</u>

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is "fair, reasonable, and adequate." *Alloways v. Cruise Web, Inc.*, No. CBD-17-2811, 2019 WL 1902813, at *8 (D. Md. Apr. 29, 2019). "The fairness prong is concerned with the procedural propriety of the proposed settlement agreement, while the adequacy prong focuses on the agreement's substantive propriety." *Id.* (citing *Edelen v. Am. Residential Servs., LLC*, No. DKC-11-2744, 2013 WL 3816986, at *8 (D. Md. July 22, 2013)).

In the Fourth Circuit, courts look to a four-factor test to evaluate fairness: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Jiffy Lube*, 927 F.2d at 159 . Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter of the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

In addition to these factors, Rule 23 itself, as amended in 2018, provides specific guidance to federal courts considering whether to approve a class action settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate that a court should consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See v. Charlotte Sch. of L., LLC*, 818 F. App'x 165, 176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

## V.   ARGUMENT

### A.   The Settlement Agreement warrants preliminary approval.

A settlement must be "fair, reasonable, and adequate." *Alloways*, 2019 WL 1902813, at *8. Courts in the Fourth Circuit typically bifurcate this analysis into consideration of the fairness and

adequacy of the proposed settlement. *See, e.g., Fire & Police Retiree Health Care Fund, San Antonio v. Smith*, No. CV CCB-18-3670, 2020 WL 6826549, at *2 (D. Md. Nov. 20, 2020); *see also Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021). "Preliminary approval should be granted when a proposed settlement is 'within the range of possible approval,' subject to further consideration after a final fairness hearing at which interested parties have had an opportunity to object." *Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016); *see also Gaston*, 2021 WL 244807, at *5 (same). The Settlement here, reached by sophisticated counsel with extensive experience litigating the largest data breach and data privacy cases in the country, after arm's length negotiations and providing significant monetary and prospective relief to the class, is readily within the range of approval.

### 1. The Settlement is fair.

"There is a strong presumption in favor of finding a settlement fair." *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (internal quotation marks and citation omitted). And a preliminary review of each of the factors relating to fairness shows that the Settlement is fair and warrants preliminary approval. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159. Namely, each of the *Jiffy Lube* fairness factors is satisfied.

***First***, the posture of the case at the time of settlement demonstrates that the Settlement was reached in the absence of collusion, and that the parties and counsel are well-informed. The Plaintiffs commenced these actions in January (*Doe, Vinsant*), February (*Fadness, Decker, Mateson*, and *Stuckley*), and March (*Forest*) of 2021. The proposed settlement was reached after over a year of investigation, negotiation, pleading amendment, motion practice with respect to

motions to intervene and dismiss, mediations, and an oral argument on the motion to dismiss. Joint Counsel Decl. ¶¶ 4-13.

*Second*, the Settlement follows substantial, targeted informal discovery. Class Counsel have litigated data breach cases and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the discovery process, while allowing the parties to focus on the most relevant discovery. Joint Counsel Decl. ¶ 6. Plaintiffs have conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. *See In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval); *see also Decohen*, 299 F.R.D. at 480 (finding proposed settlement met fairness factors where "parties ha[d] engaged in informal discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case").

*Third*, the circumstances surrounding the parties' negotiations demonstrate that the Settlement was reached through good faith, informed, arm's length negotiations. *See In re Jiffy Lube*, 927 F.2d at 159. In particular, the parties' negotiations of the claims in this action, with the assistance of two separate neutral mediators, evidences the absence of collusion. *See Nicholes v. Combined Ins. Co. of Am.*, No. 5:16-CV-10203, 2019 WL 2575066, at *2 n.1 (S.D.W. Va. Feb. 22, 2019); *see also Decohen*, 299 F.R.D. at 480. Before agreeing upon the terms of the Settlement, the parties discussed negotiations for many months, and after Class Counsel had investigated the claims, litigated them, and become familiar with the claims' strengths and weaknesses. They attended mediation for a full day before Bennett G. Picker and many months later for a day before Judge Morton Denlow (Ret.). Joint Counsel Decl. ¶¶ 4-13. In advance of the first mediation

session, Defendants provided Plaintiffs with the information needed for analysis and evaluation, and data relating to the circumstances surrounding the breach and the numbers and geographical locations of those whose PII and/or PHI were obtained by unauthorized third parties. *Id.* ¶ 6.

The terms of the proposed award of attorneys' fees and Service Awards are also fair and demonstrate that the Settlement is the product of arm's length negotiation. *See* Fed. R. Civ. P. 23(e)(2)(c)(iii). Class counsel will file a separate motion seeking approval of Attorneys' Fees and Expenses and Service Awards, and the amounts they intend to seek are within those authorized by the Settlement Agreement. Class Counsel to seek an award of attorneys' fees of up to 33.3% of the common fund as well as expenses, which is consistent with the range in similar common fund settlements like this. This percentage is well within the range of reasonableness. *See, e.g., Jernigan v. Protas, Spivok & Collins, LLC*, No. CV ELH-16-03058, 2017 WL 4176217, at *5 (D. Md. Sept. 20, 2017) ("Fees awarded under 'the percentage-of-recovery' method in settlements under $100 million have ranged from 15% to 40%." (citation omitted)).

The Settlement authorizes each Class Representative to seek a Service Award of $2,500.00. This amount is well within the range of approval for class action settlements that provide significant benefits to the class. *See, e.g., Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (noting that "[v]arious studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992") (citing Newberg on Class Actions § 17.8 (5th ed.)).

***Fourth***, Class Counsel and counsel for Defendants are experienced in class litigation generally and have handled the largest data breach and data privacy cases filed in this country, certification, trial, and settlement of nationwide class action cases. Joint Counsel Decl. ¶ 23-31. In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and

uncertainties of continued litigation and secures relief addressing the typical repercussions of a data breach as well as relieves the Parties of the attendant time and expenses associated with litigation, discovery, and possible appellate review. Courts afford due consideration to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Gaston*, 2021 WL 244807, at *6 ("The opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate.").

### 2.    The Settlement is adequate.

Each of the *Jiffy Lube* adequacy factors is satisfied, showing that the Settlement is adequate and warrants preliminary approval. The first two factors (the relative strength of the plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses) evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009).

While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* Joint Counsel Decl. ¶¶ 14-18. Should the case proceed in litigation, they face the risk that class certification could be denied, or any certification decision be reversed on an appeal under Fed. R. Civ. P. 23(f), or decertification at trial. *Id.* ¶ 14. In addition, Plaintiffs risk the Court striking extensive expert analysis and damages models. *Id.* Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in a *zero* recovery to the class. *Id.* ¶ 15. And even if Plaintiffs prevailed at trial, any recovery would likely be delayed for years by further appeals. *Id.* ¶ 16.

Plaintiffs face substantial risks to their claims should the Settlement not be approved. And, if the case continues in litigation, the class members will need to wait much longer before receiving any recovery at all. *See Robinson v. Carolina First Bank NA*, No. 7:18-CV-02927-JDA, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation.").

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to approximately 884,090 Settlement Class Members. Through their extensive experience speaking to consumers who have experienced the repercussions of data breaches the relief was designed to meet the typical repercussions. Because Settlement Class Members thus stand to gain significant relief in the near term, without further risks attendant to protracted litigation, the first two *Jiffy Lube* adequacy factors weigh in favor of approval. *See Decohen*, 299 F.R.D. at 480 (finding settlement adequate where despite reversal of dismissal of claims, there was no guarantee the court would certify a class, and "the road to recovery—particularly for the class as a whole—likely would be protracted and costly if the settlement were not approved").

The third *Jiffy Lube* adequacy factor (the anticipated duration and expense of additional litigation) also favors approval. The Defendants' Motion to Dismiss has been fully briefed and argued. The Parties have invested substantial time and some expense addressing resolution and exchanging detailed information necessary to engage in those serious settlement negotiations; however, there remains much work to be done if the Settlement is not approved. The parties will likely litigate through multiple dispositive motions, amended pleadings, a motion for class certification, potential motion for summary judgment, an inevitable appeal under Fed. R. Civ. P.

23(f), and, of course, a trial on the merits. Joint Counsel Decl. ¶ 18. The litigation would likely take years to resolve and involve expensive expert discovery and substantial time engaging in protracted and expensive discovery disputes. *Id.* And of course, all parties would need to spend significant resources preparing for trial. The drawn out and expensive process that further litigation would entail would lead to significant legal costs to both sides but would not necessarily lead to a better result for the Class. Thus, this factor favors approval. *See Edelen*, 2013 WL 3816986, at *9 (approving settlement where absent approval, "litigation of this dispute could prove to be long and expensive" and "require substantial time by the parties' attorneys").

Lastly, as to the fourth *Jiffy Lube* adequacy factor (the solvency of the defendant and the likelihood of recovery on a litigated judgment), there is nothing to indicate that Defendants could not satisfy a judgment if one were entered. But, as previously noted, it is clear that continued litigation would be expensive and consume significant resources of the parties and the court system.[1] Thus, "[o]n balance, the risks, delays, and costs associated with further litigation weigh in favor of granting" preliminary approval. *See id.*

### 3.    The allocation of the Settlement is fair and reasonable.

The allocation of the Settlement Fund is also fair and reasonable, and the manner of administering relief will be effective. Under the settlement, Defendants will provide a $5,750,000.00 common fund, which will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members are entitled to receive a cash payment in the presumptive amount of $50.00, and up to $100.00 for Time Spent

---

[1] While the Class Members cannot react to the settlement (the fifth factor) until after notice goes out, the Court may properly consider the remaining factors at the preliminary approval stage.

or with documentation, up to $15,000.00 for Out-of-Pocket Losses. Members of the CMIA Subclass may also claim a statutory payment in the presumptive amount of $200.00. Settlement Class Members are therefore entitled to benefits that are tailored to the relief sought through the litigation. *See In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696, at *3 (S.D. Ind. Jan. 12, 2022) (finding that a settlement's terms were equitable where subclass members were eligible for an additional award based on the California Consumer Privacy Act); *Torres v. Mercer Canyons, Inc.*, No. 1:14-cv-03032-SAB, 2017 WL 11675392, at *3 (E.D. Wash. Aug. 14, 2017) (granting final approval to settlement where subclass members were entitled to an additional payment for statutory damages).

Defendants have also agreed to implement enhanced data security measures designed to protect Settlement Class Members private information from future disclosure to unauthorized third parties. Defendants have committed to maintain these practices for 3 years following the Effective Date of the Settlement.

The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The parties have agreed upon an experienced Settlement Administrator to administer the settlement. *See generally* Joint Counsel Decl. ¶ 33. Class Members will receive direct notice by USPS mail. Only those Class Members who wish to submit claims for Out-of-Pocket Losses are required to submit documentation or receipts with their Claim Form. SA ¶ 48. Settlement Class Members who make claims for Time Spent will simply need to describe what breach related activity they engaged in during the time for which reimbursement is sought and the amount of time spent doing the activity. *Id.* ¶ 50. The Settlement Administrator will provide digital payments or mail checks directly to Settlement Class Members.

**B.    The Court Should Certify the Settlement Class.**

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3).

### 1.    The proposed class is ascertainable.

Under Rule 23, a class definition must be sufficiently definite so that "a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This ascertainability requirement is satisfied in this case, as the members of each class are identifiable based on objective criteria applied to Defendants' well-maintained records.

### 2.    The proposed class satisfies the requirements of Rule 23(a).

Under Federal Rule of Civil Procedure 23(a), a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Settlement Class satisfies each of these requirements.

### a.    Numerosity

Class certification is appropriate when class members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No particular number of class members is needed to satisfy this requirement." *Jones v. Fid. Res., Inc.*, No. CV RDB-17-1447, 2019 WL 4141015, at *8 (D. Md. Aug. 30, 2019) (citing *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145

(4th Cir. 1984)). Here, the proposed Settlement Class consists approximately 884,090 Settlement Class Members. Numerosity is thus satisfied.

### b.    Commonality

The Settlement Class also satisfies the commonality requirement that there are "questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). A common question must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central" to each class member's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) does not require commonality of all issues; rather, "even a single common question will do." *Id.* at 359 (alterations and internal quotation marks omitted).

Here, all Settlement Class Members make the same legal claims based on the same set of common facts: that Defendants failed to provide adequate security to the PII and PHI they were duty bound to safeguard, and as a result of the theft of their personal data, they suffered injury. Accordingly, common questions of law and fact abound. *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050-LMB-MSN, 2021 WL 6750844, at *3 (E.D. Va. Nov. 19, 2021); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018). This is sufficient to satisfy the requirements of Rule 23(a)(2).

### c.    Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Id.* Class representatives are typical if they are "part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998)). "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so goes the claims of the class." *Id.* (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (internal quotation marks omitted)).

Here, Plaintiffs' claims are typical of other Settlement Class Members' because they arise from the same Data Breach and involve the same overarching legal theories, including the theories that Defendants failed in their common-law and other duty to protect their patients' PII and/or PHI. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *In re Capital One Consumer Data Sec. Breach Litig.*, MDL No. 1:19-md-2915 (AJT/JFA), 2022 WL 18107626, at *5 (E.D. Va. Sept. 13, 2022). Accordingly, Plaintiffs' claims are typical of the claims of Settlement Class Members.

### d.    Adequacy of representation

The adequacy requirement is satisfied when the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires that class counsel "be qualified, experienced, and able to conduct the litigation" and the named plaintiffs' interests "not be opposed to those of other class members." *Jones*, 2019 WL 4141015, at *10 (citation omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). "Such conflicts 'must be more than merely speculative or hypothetical;' rather, they 'must be fundamental' and 'go to the heart of the litigation.'" *Id.* (citation omitted).

Here, the Plaintiffs have no conflicts of interest with other class members, and they and their counsel will and have vigorously prosecuted this case on behalf of the class. *See* Joint Counsel Decl. ¶¶ 4-13, 21-22. As previously noted and illustrated in the applications for leadership filed previously with the Court which led to their selection as interim class counsel, Class Counsel is particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Joint Counsel Decl. ¶¶ 23-31. Given their experience, Class Counsel are qualified, experienced, and able to conduct this litigation. Adequacy is satisfied here.

3.    **The Settlement Class meets the requirements of Rule 23(b)(3).**

The Settlement Class satisfies the requirements of Rule 23(b)(3). Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### a.  Predominance

Common questions predominate over any questions affecting only individual members here. In this case, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by US Fertility. *See, e.g.*, *Dominion*, 2021 WL 6750844, at *3; *In re Capital One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626, at *5. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 at 312. Accordingly, predominance is satisfied.

### b.  Superiority

Class certification here is also "superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts consider four factors: (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[2] *Jones*, 2019 WL 4141015, at *11.

---

[2] Because Plaintiffs seek settlement-only class certification, the court need not consider the fourth factor here. *See Amchem Prod., Inc.*, 521 U.S. at 593 ("Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial.").

First, classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are hundreds of thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Decohen*, 299 F.R.D. at 478 (finding superiority satisfied where "denial of the settlement will effectively foreclose relief for most class members as the harm each individual suffered will likely not justify the high costs of individual suits"). Second, Class Counsel is not aware of other pending individual litigation against Defendants regarding the Data Breach. Joint Counsel Decl. ¶ 32. And third, "resolution of this case through class action settlement will achieve significant economies for the parties, the proposed class, and the court." *See Decohen*, 299 F.R.D. at 478. Accordingly, a class action is the superior method of adjudication.

**C.     The Court Should Approve the Proposed Notice Plan and Appoint the Settlement Administrator.**

The parties' proposed notice plan is formulated to conform with the procedural and substantive requirements of Rule 23. Due process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *eqt v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

The Class Notice is comprised of direct notice in the form of Postcard Notice. In addition, the Settlement Administrator will establish the Settlement Website where the Long Form Notice and Claim Form will be available, along with important case documents and the answers to frequently asked questions will be posted. A toll-free telephone number will also be available to Settlement Class Members who have questions. The operative notice plan is the best notice

practicable and is reasonably designed to reach the Settlement Class Members. *See* Joint Counsel Decl. ¶ 35. And the Notice Plan will be overseen by Angeion, a reputable settlement administrator. In addition, courts within the Fourth Circuit regularly approve class notice in the form of postcard notice. *See Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209-DEM, 2015 WL 12778408, *3 (E.D. Va. Jan. 7, 2015 (preliminarily approving notice plan consisting of mailed notice, concluding that it was "the best notice practicable under the circumstances and satisfies the requirements of due process"); *Witt v. CoreLogic Saferent, LLC*, No. 3:15-cv-386, 2018 WL 1560069, at *2, *4 (E.D. Va. Mar. 22, 2018) (granting final approval where settlement class members were notified by mailed notice).

Moreover, the substance of the notice will fully apprise class members of their rights. "Rule 23(e) requires notice that describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *McAdams*, 26 F.4th at 158. The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the settlement website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This approach to notice is adequate. *See, e.g., id.* at 158–59 (approving notice where email and postcard notice would include settlement "website and telephone number where class members could get the Longform Notice"). This information undoubtedly provides "sufficient detail" to allow class members with adverse viewpoints to conduct further investigation and "come forward to be heard." *See id.* at 158. Accordingly, this notice program will fully apprise Class Members of their rights under Rule 23(e) and should be approved. Additionally, the court should appoint Angeion as the settlement administrator.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela request that the Court preliminarily approve the Settlement, enter the Preliminary Approval Order, appoint them as Class Representatives, appoint Lisa Cox, Heidi Schneider, Laura Petersen, and Patrisia Vela as CMIA Subclass Representatives, appoint John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel, direct that Notice should be distributed to the Settlement Class, and schedule a Final Approval Hearing.

Dated: August 21, 2023

Respectfully submitted,

/s/ Gayle M. Blatt

Gayle M. Blatt (Bar No. 122048)
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
gmb@cglaw.com
*Interim Co-Lead Class Counsel*

/s/ David M. Berger

David M. Berger (pro hac vice)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Fascimile (510) 350-9701
dmb@classlawgroup.com
*Interim Co-Lead Class Counsel*

/s/ Hassan A. Zavareei

Hassan A. Zavareei (Bar No. 18489)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave NW, Suite 1010
Washington, DC 20006
(202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com

*Interim Co-Lead Class Counsel*

/s/ John A. Yanchunis

John A. Yanchunis (Bar No. 0324681)
**MORGAN & MORGAN**
201 N. Franklin Street
7th Floor
Tampa, FL 33602
Telephone: (813) 233-5505
jyanchunis@forthepeople.com

*Interim Co-Lead Class Counsel*

/s/ Nikoletta S. Mendrinos

Nikoletta S. Mendrinos (Bar No. 18961)
**MURPHY, FALCON & MURPHY**
One South Street, 30th Floor
Baltimore, Maryland 21202
Telephone: (410) 951-8744
Facsimile: (410) 539-6599
nikoletta.mendrinos@murphyfalcon.com

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 21, 2023 a copy of the foregoing was filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

/s/ Nikoletta S. Mendrinos
Nikoletta S. Mendrinos