## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement[1] is entered into by and among Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1[2], Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela (collectively, "Plaintiffs" or "Named Plaintiffs"), for themselves and on behalf of the Settlement Class, and Defendants US Fertility, LLC ("US Fertility" or "USF"), Shady Grove Reproductive Science Center P.C. ("Shady Grove"), and Fertility Centers of Illinois, PLLC ("Fertility Centers") (collectively, "Defendants," "US Fertility," or "USF"), subject to preliminary and final Court approval pursuant to Federal Rule of Civil Procedure 23. As provided herein, Defendants and the Named Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a final order and judgment, all claims of the Settlement Class against the Defendants in connection with the Data Breach as alleged in the action titled *In Re US Fertility, LLC Data Security Litigation*, Master File No. 8:21-cv-299, pending in the United States District Court for the District of Maryland, Southern Division, shall be settled and compromised upon the terms and conditions contained herein. The Named Plaintiffs and Defendants are collectively referred to herein as the **"Parties."**

### I.   RECITALS

A.   US Fertility, LLC ("US Fertility") is a limited liability company that provides administrative, clinical, and business information solutions to fertility clinics across the United States.

B.   Shady Grove Reproductive Science Center P.C. is a fertility clinic that utilizes IT platforms and services provided by USF.

C.   Fertility Centers of Illinois, PLLC is a fertility clinic that utilizes IT platforms and services provided by USF.

D.   Beginning in November 2020 through January 2021, US Fertility notified patients of its network of fertility clinics that its systems were accessed during a ransomware event by an unauthorized party(s), who acquired a limited number of files during the period August 12, 2020 to September 14, 2020. US Fertility also informed these individuals that

---

[1] Unless provided elsewhere, all capitalized terms shall have the meaning set forth in Section II of this Agreement.
[2] As Plaintiffs with pseudonyms "Jane Doe 1" and "Jane Doe" wish to remain anonymous, Plaintiffs' counsel will separately share their identities and certain agreed upon information for purposes of identifying them with USF's counsel. Should either bring a future claim or take any other action in contravention of the terms of this Agreement, USF shall be entitled to utilize this Agreement and the information received regarding their identity(s) provided by Plaintiff's counsel to seek all relief USF is entitled to under this Agreement. In such an instance USF shall not be required to protect Jane Doe 1 or Jane Doe's identity(s) through pseudonyms.

their personal identifiable information ("PII") and/or protected health information ("PHI") was contained within the impacted files (the **"Data Breach"**).

E.   This litigation against US Fertility that is pending in this Court was formed following the consolidation of a number of putative class actions filed in the same District. The Action was assigned to the Honorable United States District Judge Peter J. Messitte. On June 7, 2021, the Named Plaintiffs filed a Consolidated Class Action Complaint in this Court, captioned *In Re US Fertility, LLC Data Security Litigation*, Master File No. 8:21-cv-299 (ECF 39) and filed a First Amended Consolidated Class Action Complaint on November 15, 2021 (ECF 60). The Named Plaintiffs asserted claims against Defendants for negligence; unjust enrichment; breach of confidence; declaratory and injunctive relief; and breach of contracts to which Plaintiffs and the Class are third party beneficiaries. Plaintiffs also allege state-specific causes of action for violations of: California's Confidentiality of Medical Information Act ("CMIA"), Cal Civ. Code §§ 56, *et seq.*; the Maryland Consumer Protection Act ("MCPA"), Md. Comm. Code §§ 13-301, *et seq.*; the Maryland Personal Information Protection Act ("PIPA"), Md. Code Ann. §§ 14-3501, *et seq.*; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903, *et seq.*; the Virginia Personal Information Data Breach Notification Act, Va. Code Ann. §§ 18.2-186.6, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§ 505/1, *et seq.*; the Washington Consumer Protection Act, RCW §§ 19.86.020, *et seq.*; the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1., *et seq.*; the Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq.*; and the Utah Consumer Sales Practices Act, Utah Code §§ 13-11-1, *et. seq.*

F.   On September 28, 2021, counsel for the Parties mediated this matter via Zoom before mediator Bennett G. Picker. The mediation did not result in agreement on settlement terms.

G.   On November 15, 2021, Plaintiffs filed their First Amended Consolidated Class Action Complaint. (ECF 60)

H.   On November 22, 2021, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint and Motion to Strike. (ECF 65)

I.   On December 22, 2021, Plaintiffs filed a Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint and Motion to Strike. (ECF 78)

J.   On January 11, 2022, Defendants filed a Reply in Support of their Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint. (ECF 82)

K.   On April 28, 2022, the Court heard oral argument from the Parties on Defendants' Motion to Dismiss Plaintiffs' First Amended Consolidated Class Action Complaint and Motion to Strike. (ECF 89)

L.     On June 13, 2022, counsel for the Parties attended a mediation via Zoom before Judge Morton Denlow (Ret.). The mediation did not result in agreement on settlement terms.

M.     On October 4, 2022, Judge Denlow provided the Parties with a mediator's recommendation as to certain settlement terms.

N.     On October 10, 2022, counsel for the Parties reached a tentative agreement with regard to certain material terms of the settlement, which are memorialized in this Agreement.

O.     The Parties did not discuss attorneys' fees, costs, and expenses, or Service Awards for the Class Representatives prior to reaching an agreement as to the material terms of the relief for the Settlement Class.

P.     The Parties now agree to settle this Action in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class. The Parties intend this Agreement to bind the Named Plaintiffs, Defendants, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement.

NOW, THEREFORE, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, it is hereby stipulated and agreed by the Parties that the Action be settled, compromised, and dismissed on the merits and with prejudice as to Defendants, subject to Court approval pursuant to Federal Rule of Civil Procedure 23, on the following terms and conditions:

## II.   **DEFINITIONS**

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

1.     **"Action"** means or refers to the matter titled *In Re US Fertility, LLC Data Security Litigation,* Master File No. 8:21-cv-299, pending in the United States District Court for the District of Maryland, Southern Division.

2.     **"Agreement"** or **"Settlement Agreement"** means this Settlement Agreement and Release, including its attached Exhibits (which are an integral part of this Settlement Agreement and Release and are incorporated in their entirety herein by reference).

3.     **"Approved Claim"** means a valid Settlement Claim in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution Process, as set forth in this Agreement.

4.     **"Claims Deadline"** means the deadline by which a Claim Form must be postmarked or submitted electronically to the Settlement Website, in order for a Settlement Class Member to be entitled to any of the monetary consideration contemplated in this Settlement Agreement. The Claims Deadline shall be 90 days after the Notice Deadline.

5.    "**Claim Form**" or "**Claim**" means the form Settlement Class Members must submit to be eligible for relief under the terms of the Settlement, the proposed form of which is attached hereto as Exhibit B.

6.    "**Class Counsel**" means:

John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N Franklin Street, 7th Floor
Tampa, FL 33602

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA 92101

Hassan A. Zavareei
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Ste. 1010
Washington, DC 20006

David M. Berger
**GIBBS LAW GROUP LLP**
1111 Broadway, Ste. 2100
Oakland, CA 94607

Nikoletta S. Mendrinos
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, MD 21202

7.    "**Class Representative(s)**" means Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela.

8.    "**Court**" means the United States District Court for the District of Maryland, Southern Division.

9.    "**Defendants' Counsel**" means Claudia D. McCarron and Paulyne Gardner of Mullen Coughlin LLC.

10.    "**Effective Date**" means the date by when: (a) if there are no objections to the settlement submitted, or any timely objections have been submitted and then withdrawn before entry of the Final Approval Order, then the date the Court enters the Final Approval Order; or (b) if an objection to the settlement has been submitted by a member of the Settlement Class found by the Court to have standing to object, sixty-five (65) calendar days after the Court enters the Final

Approval Order; or (c) if any appeal, writ, or other appellate proceeding opposing the Court's Final Approval Order has been filed, five (5) business days after any appeal, writ, or other appellate proceedings opposing the Final Approval Order have been finally and conclusively dismissed with no right to pursue further remedies or relief.

11.     **"Fee Request"** means Class Counsel's application for the payment of attorneys' fees, costs, and expenses from the Settlement Fund (defined below).

12.     **"Final Approval"** means the date that the Court enters an order and judgment granting final approval of the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Awards (defined below). In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

13.     **"Final Approval Order"** means the order and judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

14.     **"Named Plaintiffs"** means Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela.

15.     **"Net Settlement Fund"** means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses, (iii) Service Awards Payments approved by the Court, and (iv) Fee Award and Costs approved by the Court.

16.     **"Non-Profit Residual Recipient"** means a third-party cy pres recipient agreed upon by the Parties and approved by the Court to accept remaining funds in the Net Settlement Fund after completion of the claims administration process set forth herein.

17.     **"Notice"** means the notice of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement

18.     **"Notice Deadline"** means 30 days after the Court has entered the Preliminary Approval Order.

19.     **"Notice Program"** means the notice methods provided for in this Agreement and consists of (1) Notice to all Settlement Class Members via one or more summary postcard notice(s) via United States Postal Service and (2) Notice posted on the Settlement Website. The forms of Notice shall be substantially in the forms attached as Exhibit C (Long Form) and Exhibit D (Short Form) to this Agreement and approved by the Court, and the Notice Program shall be affected in substantially the manner provided in Section VIII.

20.     **"Objection Deadline"** means 60 days after the Notice Deadline.

21.    **"Opt-Out Deadline"** means 60 days after the Notice Deadline.

22.    **"Out-of-Pocket Losses"** are documented unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Breach. Out-of-Pocket Losses may include, without limitation, the following: (1) unreimbursed costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's personal information; (2) costs incurred on or after August 12, 2020, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (3) other miscellaneous expenses incurred related to any Out-of-Pocket Loss, such as notary, fax, postage, copying, mileage, and long-distance telephone charges; (4) credit monitoring or other mitigative costs that were incurred on or after August 12, 2020, through the date of the Settlement Class Member's claim submission.

23.    **"Participating Settlement Class Member"** means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

24.    **"Personally Identifying Information"** means an individual's name, date of birth, Social Security number, driver's license number, credit card number, financial account or other financial information, passport information, and/or Patient Number/MPI as referred to in the notices of data incident sent by US Fertility between about November 2020 and January 2021.

25.    **"Preliminary Approval Order"** means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment. Such order will include the forms and procedure for providing notice to the Settlement Class, including notice of the procedure for Settlement Class Members to object to or opt-out of the Settlement, and set a date for the Final Approval Hearing.

26.    **"Protected Health Information"** or "PHI" means medical information, treatment information, provider name, medical information, and /or surgical information, insurance information or provider name as referred to in the notice of data incident sent by US Fertility on or about November 2020 and January 2021.

27.    **"Reasonable Documentation"** means documentation tending to establish Out-of-Pocket Losses fairly traceable to the Data Breach.

28.    **"Released Claims"** means any and all claims, demands, rights, actions or causes of action, liabilities, damages, losses, obligations, judgments, suits, penalties, remedies, matters, and issues of any kind or nature, whether known or unknown, contingent or absolute, existing or potential, suspected or unsuspected, disclosed or undisclosed, matured or unmatured, liquidated or unliquidated, legal, statutory, or equitable, in the Action, or in any court, tribunal, or proceeding by or on behalf of the Named Plaintiffs or any members of the Settlement Class, arising out of, or relating to the Data Breach, and which have been asserted or could have been asserted based on the facts alleged in this Action against any of the Released Parties whether based on federal, state, local, statutory, common law, or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against any or all of the Released Parties, which the Named

6

Plaintiffs or any member of the Settlement Class ever had, now has, or hereinafter may have, prior to entry of the final order and judgment in this Action. Released Claims shall not include the right of Named Plaintiffs, Settlement Class Members, or any Released Person to enforce the terms of the Settlement Agreement and claims not arising from the facts alleged in the Action.

29.   **"Released Party"** means US Fertility, LLC; Shady Grove Reproductive Science Center P.C.; and Fertility Centers of Illinois, PLLC; and any and all of their present or past direct or indirect heirs, executors, estates, affiliates, divisions, predecessors, successors, assigns, parents, or subsidiaries, including Amulet Capital Partners, LP; IntegraMed America, Inc.; Arizona Reproductive Medicine Associates; Arizona Reproductive Medicine Specialists; Boston IVF; Center for Reproductive Endocrinology; Center for Reproductive Medicine; Center for Reproductive Medicine & Advanced Reproductive Technologies; Center for Reproductive Medicine Alabama; Center for Reproductive Medicine Orlando; Coastal Fertility Specialists; Fertility Centers of Illinois, LLC; Fertility Centers of Orange County; Fertility Partners of Pennsylvania Surgery Center, LLC; Georgia Reproductive Specialists, LLC d/b/a SGF Atlanta; Idaho Center for Reproductive Medicine; IVF New England; LA OC Surgical Center, Inc.; Midwest Fertility Specialists; Nevada Center for Reproductive Medicine; Nevada Fertility Center; New York Fertility Medical Practice, PLLC d/b/a SGF New York; Northwest Center for Infertility and Reproductive Endocrinology, LLP d/b/a IVF Florida Reproductive Associates; NYU Langone Reproductive Specialists of New York; Ovation Fertility, Reproductive Endocrinology Associates of Charlotte (a/k/a REACH), Reproductive Medical Partners Group, Inc.; Reproductive Partners Fertility Center – San Diego; Reproductive Partners, Inc.; Reproductive Partners Medical Group, Inc.; Reproductive Science Center of Bay Area; Reproductive Science Center of the San Francisco Bay Area; RSC Surgery Center, LLC; Seattle Reproductive Medicine; Seattle Reproductive Surgery; SGF Tampa Bay, LLC; Shady Grove Fertility; Shady Grove Fertility Center of Pennsylvania, PLLC; Shady Grove Reproductive Science Center, P.C.; SHER Institute of Reproductive Medicine – New Jersey, SHER Institute of Reproductive Medicine New York; SHER Institute of Reproductive Medicine, St. Louis; SHER Institute for Reproductive Medicine – Texas; SIRM Central Illinois Fertility Clinics; SIRM Connecticut Fertility, P.C.; SIRM St. Louis Fertility; Southeastern Fertility Centers; Sprout Fertility; UNC Fertility, LLC; Utah Fertility Centers; Virginia Fertility Associates, LLC d/b/a SGF Richmond; and Virginia IVF and Andrology Center, LLC; (**"Released Entities"**), and the owners, associates, employers, employees, agents, consultants, contractors, independent contractors, vendors, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, administrators, bankruptcy trustee(s), financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, sellers, distributors, legal representatives, successors in interest, assigns and persons, firms, trustees, trusts, corporations, officers, directors, general or limited partners of the Released Entities, any US Fertility managed entities, and any and all other individuals or entities in which Defendants have a controlling interest or that are affiliated with them, or any other representatives of any of these persons and entities.

30.   **"Releasing Parties"** means the Named Plaintiffs, any Settlement Class Member who does not timely and properly opt out from the Settlement, and any person claiming or receiving a benefit under this Settlement.

31. **"Service Award"** means an amount to be awarded by the Court that is intended to compensate the Class Representatives for their efforts in the litigation and commitment on behalf of the Settlement Class.

32. **"Settlement"** means this settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement, including the exhibits hereto.

33. **"Settlement Administrator"** presumptively means Angeion Group as selected by Class Counsel to serve as the Settlement Administrator. In the absence of agreement, either Class Counsel or Defendants may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the Settlement Administrator.

34. **"Settlement Class Members"** or **"Settlement Class"** means all persons who fall within the Nationwide Class or the CMIA Subclass definitions set forth in Section III.

35. **"Settlement Fund"** shall mean the sum of five million seven hundred fifty thousand United States dollars ($5,750,000.00) which Defendants agree to pay to resolve the claims of the Settlement Class, and to fund all relief to the Settlement Class as described herein, including the costs of notice and claims administration, Service Awards, and the Fee and Expense Request of counsel for Plaintiffs and the Settlement Class.

36. **"Settlement Website"** means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Notice, Preliminary Approval Order, the Claim Forms, the Complaints filed in the Action and such other documents as Class Counsel and Defendants agree to post or that the Court orders posted on the website. The URL of the Settlement Website shall be agreed upon by Class Counsel and Defendants. Settlement Class Members shall be able to submit Claim Forms electronically via the Settlement Website. The Settlement Website shall not include any advertising and shall remain operational until at least five (5) business days after the last payment or credit under this Settlement is made or the Settlement is terminated.

37. **"Taxes and Tax-Related Expenses"** means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon US Fertility with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

38. **"Time Spent"** means time spent trying to prevent and redress misuse of PII or PHI, including monitoring financial or other accounts, researching the data breach, researching credit monitoring options and/ or communicating with financial or other institutions, or taking other actions reasonably related to or in response to receipt of Notice of Data Breach.

## III.   SETTLEMENT CLASS

39.   For settlement purposes only, the Parties agree that the Court should certify the following Nationwide class and CMIA subclass pursuant to Federal Rule of Civil Procedure 23 (the "**Nationwide Class**" and the "**CMIA Subclass**") defined as:

> **The Nationwide Class**: All persons residing in the United States or its territories whose PII and/or PHI, as defined herein, was compromised in the Data Breach that US Fertility or its subsidiaries or partners first announced in November 2020.
>
> **The CMIA Subclass**: All United States residents whose information was provided to a fertility clinic in California and whose PHI, as defined herein, was compromised in the Data Breach that US Fertility or its subsidiaries or partners announced in November 2020.

For purposes of determining membership in the Settlement Class, Defendants have identified approximately 884,090 patients who had their PII and/or PHI impacted in the Data Breach. It is intended that these approximately 884,090 individuals shall constitute the members of the Nationwide Class. The CMIA subclass is comprised of approximately 5,300 individuals whose PHI is alleged to have been compromised in the Data Breach, and who have been identified by Defendants as belonging to this subclass.

40.   Excluded from the Settlement Class are the Court, the officers and directors of Defendants, persons who have been separately represented by an attorney and entered into a separate settlement agreement in connection with the Data Incident, and persons who timely and validly request exclusion from the Settlement Class. Named Plaintiffs will move for certification of the Nationwide Class and the CMIA Subclass contemporaneously with their motion for Preliminary Approval of the Settlement. For purposes of this Settlement only, Defendants agree not to contest certification of the Nationwide Class and the CMIA Subclass. Should the Settlement not be approved, Defendants reserve all rights and defenses on the merits and as to class certification.

41.   For settlement purposes only, the Named Plaintiffs shall also seek, and Defendants shall not oppose, the appointment of Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP; John A. Yanchunis of Morgan & Morgan Complex Litigation Group; David M. Berger of Gibbs Law Group LLP; Hassan A. Zavareei of Tycko & Zavareei LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel; and Named Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Class Representatives.

## I.   SETTLEMENT FUND

42.   **Establishment of Settlement Fund**. Within thirty (30) days of the Effective Date, Defendants will pay to the Claims Administrator to fund the relief provided under the Settlement Agreement; the Settlement Fund ($5,750,000.00) minus the amounts advanced for notice and

claims administration cost as described in the next sentence. Within thirty (30) days of the entry of the order preliminarily approving the Settlement and approving the Claims Administrator, Defendants will pay $650,000 from the Settlement Fund to the Claims Administrator to defray the actual expenses of notice and claims administration. To the extent this Settlement Agreement is not finally approved, Defendants will be entitled to the return of any amounts not already incurred by the Claims Administrator in connection with Settlement Administration.

43.     **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Defendants in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraph 79.

44.     **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund (QSF) from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a QSF from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account and must be insured by the Federal Deposit Insurance Corporation. The Settlement Administrator shall select the financial institution at which the QSF is to be created and held, subject to approval of the parties. Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

45.     **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraph 79.

46.     **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i) Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payments approved by the Court; (iv) Fee Award and Costs; (v) Reimbursement for Out of-of-Pocket Losses and Time Spent; (vi) Cash payments to the Nationwide Class and (vii) CMIA cash payments to the CMIA subclass. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

47.     **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no

representation or warranty with respect to the tax treatment by any Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement. However, where a Settlement Class Member who is entitled to more than $599 fails to submit an IRS Form W-9 (or equivalent tax document), the Settlement Administrator shall consult with counsel to determine how to remit payment to the Settlement Class Member (*i.e.*, capped at $599 or withholding necessary taxes and sending the remainder to the Settlement Class Member).

## II.    REIMBURSEMENT FOR OUT-OF-POCKET LOSSES AND TIME SPENT

48.    **Reimbursement for Out-of-Pocket Losses**. All Settlement Class Members may submit a claim for up to $15,000.00 for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that document the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. A legal guardian for a Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a Minor Claim Form seeking reimbursement of Out-of-Pocket Losses on the minor's behalf.

49.    **Assessing Claims for Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Losses reflects valid Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Breach but may consult with Class Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Settlement Administrator to consider (i) whether the timing of the loss occurred on or after; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was stored on US Fertility's systems. Costs expended after August 12, 2020, for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after shall be presumed "reasonably incurred." The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

50.    **Reimbursement for Time Spent**. All Settlement Class Members may submit a claim for reimbursement of Time Spent of up to four (4) hours at twenty-five dollars ($25) per hour. Settlement Class Members can receive reimbursement of Time Spent with a brief description of the actions taken in response to the Data Breach and the time associated with each action. Claims for Time Spent are capped at $100.00 per individual. A claim for Time Spent may be combined with reimbursement for Out-of-Pocket Losses but in no circumstance will a Settlement Class

Member be eligible to receive more than the $15,000.00 individual cap. A legal guardian for a Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a Minor Claim Form seeking reimbursement of Time Spent on the minor's behalf.

51.   **Assessing Claims for Time Spent.** The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Time Spent but may consult with Class Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

52.   **Disputes.** To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Time Spent is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations.

## III.   CASH PAYMENTS

53.   **Cash Payments.** Settlement Class Members may elect to receive a cash payment in the presumptive amount of $50.00 upon the filing of an Approved Claim in addition to the other benefits described herein as available to the Nationwide Class upon the filing of an Approved Claim.

54.   **CMIA Subclass Statutory Payments ("CMIA Payments").** Settlement Class Members who sought treatment in California clinics and whose PHI was compromised as a result of the Data Breach may claim a statutory payment in the presumptive amount of $200.00, in addition to the other benefits described herein upon the filing of an Approved Claim.

## IV.   PAYMENTS TO PARTICIPATING SETTLEMENT CLASS MEMBERS

55.   **Payment Timing.** Payments for Approved Claims for reimbursement for Out-of-Pocket Losses, Time Spent, Cash Payments, and CMIA Payments shall be issued in the form of an electronic payment, or upon request, a check mailed, as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

56.   **Timing.** Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator shall send an e-mail and/or place a telephone call to that Participating Settlement Class Member reminding him/her of the deadline to cash such check.

57.     **Returned Checks.** For any Settlement Check returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make reasonable efforts to locate a valid address and resend the Settlement Payment within thirty (30) days after the check is returned to the Settlement Administrator as undeliverable. In attempting to locate a valid address, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Settlement Class Member to obtain updated address information. Any replacement Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time.

58.     **Uncashed Checks.** To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time.

59.     **Unclaimed Property.** No portion of the Settlement Fund shall revert or be repaid to Defendants after the Effective Date. To the extent any monies remain in the Net Settlement Fund more than one hundred and fifty (150) days after the distribution of Settlement payments to the Settlement Class Members, or thirty (30) days after all reissued Settlement Checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be divided pro rata and disbursed in a secondary distribution to the CMIA Sub-Class Members who submitted valid Claims, except that if the remaining monies (after covering additional costs of administration) are insufficient to provide a secondary distribution of at least $5.00 per eligible recipient, then the remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient as approved by the Court.

60.     **Deceased Class Members.** If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Settlement Administrator shall reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving proof the Participating Settlement Class Member is deceased and after consultation with Class Counsel.

## V.     CLAIMS, CAPS, AND DISTRIBUTION OF SETTLEMENT FUNDS

61.     **Submission of Electronic and Hard Copy Claims.** Settlement Class Members may submit Claim Forms to the Settlement Administrator via return postcard, electronically via a claims' website or otherwise physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline.

62.   **Individual Caps.** Participating Settlement Class Members are subject to an individual aggregate cap of $15,000.00 for payments made under the Settlement. Participating Settlement Class Members may submit claims for reimbursement of Time Spent, Out-of-Pocket Losses, and for Cash Payments, and/or CMIA Payments, but the Participating Settlement Class Member's combined claims will be subject to the individual aggregate cap of $15,000.00.

63.   **Order of Distribution of Funds.** The Settlement Administrator must first use the funds available in the Net Settlement Fund to make payments for Approved Claims for Out-of-Pocket Losses, followed by Approved Claims for Time Spent. The Settlement Administrator shall then utilize the remaining funds to make distributions for Cash Payments and CMIA Payments.

64.   **Pro-Rata Contingencies.** In the event that the aggregate amount of all claims for settlement benefits exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for benefits do not exceed the Net Settlement Fund. In the event that the aggregate amount of Approved Claims for all benefits does not total the Net Settlement Fund, then the value of each Participating Settlement Class Members' Cash Payment and CMIA Payment shall be increased on a pro rata basis such that the aggregate value of all Approved Claims to the greatest extent feasible, exhaust the Net Settlement Fund. All pro rata determinations required by this Paragraph shall be performed by the Settlement Administrator.

## VI.   CONTRACTUAL BUSINESS PRACTICE COMMITMENTS

65.   **Business Practice Commitments.** US Fertility agrees that it has or will adopt and implement the following contractual business practice commitments and remedial measures set forth in Exhibit A for a period of at least three (3) years following the Effective Date. All costs associated with implementing the contractual business practice commitments and remedial measures referred to herein and set forth in Exhibit A will be borne by US Fertility separate and apart from the Settlement Fund.

66.   **Modification and Costs.** The Parties acknowledge that technical requirements for securing information evolve and change dynamically. In the event that technological or industry developments, or intervening changes in law render specific business practice commitments set forth in Exhibit A obsolete or make compliance by US Fertility with them unreasonable or technically impractical, US Fertility may modify its business practices as necessary to ensure best security practices are being followed. For the period of three years after the Effective Date, US Fertility shall provide notice to Class Counsel within thirty (30) days of any proposed modifications to its business practice commitments.

67.   **Enforcement.** To the extent any of the business practice commitments set forth in Exhibit A require implementation on or before the Effective Date, US Fertility shall provide to Class Counsel a declaration attesting to implementation of the business practice commitments within thirty (30) days of the Effective Date. To the extent the business practice commitments require implementation by or on a date subsequent to the Effective Date, US Fertility shall provide to Class Counsel a declaration attesting to the implementation of the business practice commitment within thirty (30) days of the agreed upon deadline set forth in Exhibit A. Such declarations shall be treated as confidential and cannot be used for any purpose other than enforcement of this

14

Settlement Agreement. If at any time Class Counsel believes US Fertility is not complying with its contractual business practice commitments, the Parties are required to meet and confer to discuss the issue prior to seeking Court intervention. The Court will retain jurisdiction to enforce this Settlement Agreement for three (3) years from the Effective Date.

## VII.   SETTLEMENT CLASS NOTICE

68.   **Notice.** Within five (5) days after the date of the Preliminary Approval Order, US Fertility shall provide the Settlement Class List to the Settlement Administrator. Within twenty-three (23) days after receipt of Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. Notice shall be disseminated via summary postcard to Settlement Class members identified on the Settlement Class List via U.S. mail.   Notice to Settlement Class Members shall identify whether they are members of the Nationwide Class and/or the CMIA subclass.

## VIII.   OPT-OUTS AND OBJECTIONS

69.   **Opt-Outs.** The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

70.   **Objections.** The Notice shall explain the procedure for Settlement Class Members to object to the Settlement by submitting written objections to the Settlement Administrator postmarked no later than sixty (60) days after the Notice Deadline. The written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

## IX.   DUTIES OF THE SETTLEMENT ADMINISTRATOR

71.   **Duties of Settlement Administrator.** The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

a.  Creating, administering, and overseeing the Settlement Fund;

b.  Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.  Providing Notice to Settlement Class Members via U.S. mail;

d.  Establishing and maintaining the Settlement Website;

e.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call and obtain pre-recorded answers to frequently asked questions, and leave a message to which Angeion will respond within one (1) business day. ;

f.  Responding to any mailed or emailed Settlement Class Member inquiries within one (1) business day;

g.  Reviewing, determining the validity of, and processing all claims submitted by Settlement Class Members (including processing payments in excess of $599 consistent with Paragraph 47 above);

h.  Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel;

i.  After the Effective Date, processing and transmitting Settlement Payments to Settlement Class Members;

j.  Providing weekly or other periodic reports to Class Counsel and US Fertility's Counsel that include information regarding the number of Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel or Defendants' Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

k.  In advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

l.  Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or US Fertility's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

72.  **Limitation of Liability.** The Parties, Class Counsel, and US Fertility's Counsel shall not have any liability whatsoever with respect to (i) any act, omission or determination of the

Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

73.    **Indemnification.** The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Defendants' Counsel for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

## X.    PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION

74.    **Certification of the Settlement Class.** For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. US Fertility reserves the right to contest class certification for all other purposes. The Parties further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

75.    **Preliminary Approval.** Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval, to permit issuance of class notice of the Settlement and for certification of the Settlement Class with the Court within ten (10) business days.

76.    **Final Approval.** Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing; within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

77.    **Jurisdiction.** The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

## XI.   MODIFICATION AND TERMINATION

78.   **Modification**. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

79.   **Termination**. Class Counsel (on behalf of the Settlement Class Members) and Defendant shall have the right to terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") within seven (7) days of: (1) the Court's refusal to grant preliminary approval of the Settlement in any material respect; or (2) within fourteen (14) days of any of the following: (i) the Court's refusal to enter the Judgment in any material respect, or (ii) the date upon which the Judgment is modified or reversed in any material respect by any appellate or other court.

80.   **Effect of Termination**. In the event of a termination as provided in Paragraph 799, this Agreement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XII.   RELEASES

81.   **The Release**. Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Releasing Parties shall be deemed to have released, acquitted, and forever discharged Defendants and each of the Released Parties from any and all Released Claims.

82.   **Unknown Claims**. The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN

BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

83.     **Release of Class Representatives and Class Counsel.** As of the Effective Date, US Fertility and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys absolutely and unconditionally release and discharge the Class Representatives and Class Counsel from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to prosecution of the Action, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims by the Parties hereto to enforce the terms of the Settlement).

## XIII.   SERVICE AWARD PAYMENTS

84.     **Service Award Payments.** At least twenty-one (21) days before the Opt-Out and Objection Deadlines, Class Counsel will file a motion seeking a service award payment for the Class Representatives in recognition for their contributions to this Action. US Fertility agrees not to oppose Class Counsel's request for a service award not to exceed $2,500 per representative. The Settlement Administrator shall make the Service Award Payments to the Class Representatives from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than thirty (30) days after the Effective Date.

85.     **No Effect on Agreement.** In the event the Court declines to approve, in whole or in part, the payment of service awards in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the service awards shall constitute grounds for termination of this Agreement.

## XIV.   ATTORNEYS' FEES, COSTS, EXPENSES

86.     **Attorneys' Fees and Costs and Expenses.** At least twenty-one (21) days before the Opt-Out and Objection Deadlines, Class Counsel will file a motion for an award of attorneys' fees and litigation costs and expenses to be paid from the Settlement Fund. US Fertility agrees not to oppose Class Counsel's request for an award of attorneys' fees not to exceed 33.3% of the

Settlement Fund and reimbursement of litigation costs and expenses which Class Counsel expect not to exceed $75,000.00. Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to US Fertility and the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than three (3) days after the Effective Date.

87.   **Allocation.** Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiffs. US Fertility shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XV.   NO ADMISSION OF LIABILITY

88.   **No Admission of Liability.** The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

89.   **No Use of Agreement.** Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiffs; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by US Fertility in the Actions or in any proceeding in any court, administrative agency or other tribunal.

## XVI.   MISCELLANEOUS

90.   **Integration of Exhibits.** The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

91.   **Entire Agreement.** This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

92.   **Deadlines.** If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

93. **Singular and Plurals.** As used in this Agreement, all references to the plural shall also mean the singular and to the singular shall also mean the plural whenever the context so indicates.

94. **Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

95. **Binding Effect.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Plaintiffs and US Fertility.

96. **Construction.** For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

97. **Cooperation of Parties.** The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

98. **Obligation to Meet and Confer.** Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted in good faith.

99. **No Conflict Intended.** Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

100. **Governing Law.** The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Maryland, without regard to the principles thereof regarding choice of law.

101. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically, by facsimile, or through e-mail of an Adobe PDF shall be deemed an original.

102. **Notices.** All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
jyanchunis@ForThePeople.com

Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA**

**BLATT & PENFIELD LLP**
110 Laurel Street
San Diego, CA 92101
gmb@cglaw.com

Hassan A. Zavareei
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW, Ste. 1010
Washington, DC 20006
hzavareei@tzlegal.com

David M. Berger
**GIBBS LAW GROUP LLP**
1111 Broadway, Ste. 2100
Oakland, CA 94607
dmb@classlawgroup.com

Nikoletta S. Mendrinos
**MURPHY, FALCON & MURPHY**
1 South Street, Suite 3000
Baltimore, MD 21202
nikoletta.mendrinos@murphyfalcon.com

All notices to US Fertility provided for herein, shall be sent by overnight mail and email to:

Claudia D. McCarron
Paulyne Gardner
**MULLEN COUGHLIN**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
cmccarron@mullen.law
pgardner@mullen.law

The notice recipients and addresses designated above may be changed by written notice.

103.   **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

[SIGNATURES ON FOLLOWING PAGE]

By: _Judah Shechter_                    Date: 8/16/23
Judah Shechter
General Counsel
**US FERTILITY, LLC**


By: _____       Date: _____
Amy Davis
Executive Director
**SHADY GROVE REPRODUCTIVE SCIENCE CENTER P.C.**


By: _____       Date: _____
Megan Honke
Executive Director
**FERTILITY CENTERS OF ILLINOIS, PLLC**


By: _Claudia D. McCarron_                Date: 8/21/2023
Claudia D. McCarron
**MULLEN COUGHLIN**

*Counsel for Defendants*


By: _____       Date: _____
John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**


By: _____       Date: _____
Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD LLP**


By: _____       Date: _____
Hassan Zavareei
**TYCKO & ZAVAREEI LLP**


By: _____       Date: _____
David M. Berger
**GIBBS LAW GROUP LLP**

By: _____          Date: _____
Judah Shechter
General Counsel
**US FERTILITY, LLC**


By: _____          Date: _____
Amy Davis
Executive Director
**SHADY GROVE REPRODUCTIVE SCIENCE CENTER P.C.**


By: *Megan Honke*                   Date: **8/21/23**
Megan Honke
Executive Director
**FERTILITY CENTERS OF ILLINOIS, PLLC**


By: _____          Date: _____
Claudia D. McCarron
**MULLEN COUGHLIN**

*Counsel for Defendants*


By: _____          Date: _____
John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**


By: _____          Date: _____
Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD LLP**


By: _____          Date: _____
Hassan Zavareei
**TYCKO & ZAVAREEI LLP**


By: _____          Date: _____
David M. Berger
**GIBBS LAW GROUP LLP**

By: _____          Date: _____
Judah Shechter
General Counsel
**US FERTILITY, LLC**

By: _____          Date: _8·16·23_
Amy Davis
Executive Director
**SHADY GROVE REPRODUCTIVE SCIENCE CENTER P.C.**


By: _____          Date: _____
Megan Honke
Executive Director
**FERTILITY CENTERS OF ILLINOIS, PLLC**


By: _____          Date: _____
Claudia D. McCarron
**MULLEN COUGHLIN**

*Counsel for Defendants*


By: _____          Date: _____
John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**


By: _____          Date: _____
Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD LLP**


By: _____          Date: _____
Hassan Zavareei
**TYCKO & ZAVAREEI LLP**


By: _____          Date: _____
David M. Berger
**GIBBS LAW GROUP LLP**

By: _____          Date: _____
Judah Shechter
General Counsel
**US FERTILITY, LLC**


By: _____          Date: _____
Amy Davis
Executive Director
**SHADY GROVE REPRODUCTIVE SCIENCE CENTER P.C.**


By: _____          Date: _____
Megan Honke
Executive Director
**FERTILITY CENTERS OF ILLINOIS, PLLC**


By: _____          Date: _____
Claudia D. McCarron
**MULLEN COUGHLIN**

*Counsel for Defendants*

By: _____          Date: August 21, 2023
John A. Yanchunis
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**


By: _____          Date: August 21, 2023
Gayle M. Blatt
**CASEY GERRY SCHENK FRANCAVILLA**
**BLATT & PENFIELD LLP**


By: _____          Date: August 21, 2023
Hassan Zavareei
**TYCKO & ZAVAREEI LLP**


By: _____          Date: August 21, 2023
David M. Berger
**GIBBS LAW GROUP LLP**

By: _____

Nikoletta Mendrinos
**MURPHY, FALCON & MURPHY**

*Class Counsel*

Date: __08/21/2023_____