IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| IN RE US FERTILITY, LLC<br>DATA SECURITY LITIGATION<br><br>This Document Relates To: All Actions | Master File No. 8:21-cv-299 |

## [~~PROPOSED~~] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASSES

Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela ("Plaintiffs"), individually and on behalf of the proposed Settlement Class,[1] seek preliminary approval of a proposed Settlement of claims against defendants US Fertility, LLC ("US Fertility" or "USF"), Shady Grove Reproductive Science Center P.C. ("Shady Grove"), and Fertility Centers of Illinois, S.C. ("Fertility Centers") (collectively, "Defendants," "US Fertility," or "USF"). For the reasons set forth herein, the Court GRANTS preliminary approval and preliminary certification of the Settlement Class for settlement purposes only; approves the Notice plan and the dissemination of Notice to the Settlement Class; appoints Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Class Representatives;

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement, attached as Exhibit 1 to the Joint Declaration of Counsel ("Joint Counsel Decl.").

1

appoints Lisa Cox, Heidi Schneider, Laura Petersen, and Patrisia Vela as CMIA Subclass Representatives; appoints John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel; and appoints Angeion as the notice and claims administrator.

## I. BACKGROUND

Beginning in November 2020 through January 2021, US Fertility notified patients of its network of fertility clinics that its systems were accessed during a ransomware event by an unauthorized party(s), who acquired files during the period August 12, 2020 to September 14, 2020. US Fertility also informed these individuals, which total nearly 900,000 individuals, that their personal identifiable information ("PII") and/or protected health information ("PHI") was contained within the impacted files. Beginning in January 2021, Plaintiffs began filing lawsuits in this Court: *Doe et al. v. US Fertility, LLC* ("*Doe*"), Case No. TDC-21-248 (D. Md. Jan. 28, 2021); *Vinsant v. US Fertility, LLC*, Case No. TDC-21-225 (Jan. 26, 2021); *Fadness v. US Fertility, LLC*, Case No. PJM-21-299 (Feb. 4, 2021); *Churchill v. US Fertility, LLC*, Case No. PWG-21-370 (Feb. 15, 2021); *Decker v. US Fertility, LLC*, Case No. PWG-21-404 (Feb. 17, 2021); *Mateson v. US Fertility, LLC*, Case No. PWG-21-466 (Feb. 23, 2021); *Stuckey v. US Fertility, LLC*, Case No. PWG-21-496 (Feb. 25, 2021); and *Forest v. US Fertility, LLC*, Case No. TDC-21-646 (Mar. 15, 2021). The Court consolidated these cases, and Plaintiffs filed a consolidated class action complaint on June 7, 2021 (ECF No. 39). In July 2021, the Court consolidated *Mullinix v. US Fertility,* LLC, 1:21-cv-01430 and *Leonard v. US Fertility, LLC*, 1:21-cv-1783 with the previously consolidated cases. Plaintiffs amended their consolidated class action complaint on November 15,

2021 (ECF No. 60). The First Amended Consolidated Class Action Complaint ("Consolidated Complaint") asserts claims on behalf of a proposed nationwide class and state-specific subclasses for negligence, unjust enrichment, breach of confidence, declaratory and injunctive relief, breach of contract, California's Confidentiality of Medical Information Act ("CMIA"), data privacy laws of Maryland and Virginia, and consumer protection laws of Maryland, Nevada, Florida, Illinois, Washington, North Carolina, Idaho, and Utah.

On November 22, 2021, Defendants filed a motion to dismiss the Consolidated Complaint and a motion to strike (ECF No. 65). Defendants argued that Plaintiffs had not alleged legally cognizable harms arising out of the Data Breach, that Defendants were not the proximate cause of any such harms, and that Plaintiffs had not pled facts showing damages. Defendants relied heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021).

Plaintiffs filed their opposition to Defendants' motion to dismiss on December 22, 2021 (ECF No. 78). On January 11, 2022, Defendants filed a reply in support of their motion to dismiss (ECF No. 82). On April 28, 2022, the Court heard oral argument of the Parties on Defendants' motion to dismiss Plaintiffs' Consolidated Complaint (ECF No. 83).

On January 26, 2022, Plaintiffs moved to intervene and transfer another case, *Doe v. US Fertility*, No. 1:21-cv-00579 (N.D. Ill.), arising from the Data Breach. Judge Feinerman of the United States District Court for the Northern District of Illinois granted Plaintiffs' motion as to the claims against US Fertility and transferred the case to the United States District Court for the District of Maryland on July 6, 2022. Plaintiffs moved to consolidate *Doe* with *In re: US Fertility, LLC Data Security Litigation*, No. 8:21-cv-299, on September 8, 2022.

Prior to filing their Consolidated Complaint, the Parties mediated this matter before mediator Bennett G. Picker on September 28, 2021. Although this mediation did not result in

3

agreement on settlement terms, the Parties continued negotiations and agreed to engage in a second mediation on June 13, 2022, before Judge Morton Denlow (Ret.), a retired U.S. Magistrate Judge and an experienced mediator in assisting in the resolution of class litigation. The Parties were unable to reach an agreement as to the amount of the settlement on that date. As a result, on October 4, 2022, Judge Denlow provided the Parties with a mediator's recommendation as to the monetary terms of the settlement. On October 10, 2022, after further negotiations among the Parties, counsel for the Parties reached a tentative agreement with regard to those terms. Thereafter, the Parties engaged in ongoing negotiations related to business practices commitments which are to be included as part of the settlement. All of these terms are incorporated into the Settlement Agreement, executed by the Parties on August 21, 2023.

## II. SETTLEMENT TERMS

### A. The Proposed Settlement Class

The Settlement Agreement contemplates certification of the following Settlement Classes for settlement purposes only:

> **The Nationwide Class**: All persons residing in the United States or its territories whose PII and/or PHI, as defined herein, was compromised in the Data Breach that US Fertility or its subsidiaries or partners first announced in November 2020.
>
> **The CMIA Subclass**: All United States residents whose information was provided to a fertility clinic in California and whose PHI, as defined herein, was compromised in the Data Breach that US Fertility announced in November 2020.

### B. Benefits to the Settlement Class

The Settlement Agreement, if approved, will create a common fund of $5,750,000.00 that will resolve the claims of Plaintiffs and the Settlement Class Members deriving from the Data Breach about which US Fertility began notifying patients of its network of fertility information

that their PII and/or PHI was potentially obtained by unauthorized third parties who engaged in a ransomware event. The common fund will provide cash payments to Settlement Class Members, as well as Administrative Costs to provide notice and administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members may elect to receive a cash payment in the presumptive amount of $50.00 upon filing an approved claim. Settlement Class Members may also submit a claim for reimbursement of Attested Time, which is capped at $100.00. Settlement Class Members who incurred Out-of-Pocket Losses have the option of submitting a claim for up to $15,000.00 for reimbursement with documentation. Finally, California CMIA Subclass members may claim a statutory payment in the presumptive amount of $200.00.

In addition to the common fund, the Settlement includes important and valuable injunctive relief. Specifically, Defendant US Fertility agrees to adopt business practices for at least three years that will further safeguard patients' PII and PHI.

### C. Settlement Administrator and Administration Costs

The proposed Settlement Administrator is Angeion, a leading class action administration firm in the United States. Class Counsel obtained and reviewed proposals from several prominent settlement administrators before deciding on Angeion based on overall cost and value to the Settlement Class. Administrative Costs will be paid from the Settlement Fund.

### D. Class Member Release

Upon the Effective Date, and in consideration for the Settlement Payment and for Defendants' other promises contained herein, the Named Plaintiffs, any Settlement Class Member who does not timely and properly opt out from the Settlement, and any person claiming or

5

receiving a benefit under this Settlement shall be deemed to have released, acquitted, and forever discharged Defendant and each of the Released Parties from any and all Released Claims.

The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Action and that Plaintiffs, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement. Upon the Effective Date, Plaintiffs, the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Class Representatives, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released

Claims, including but not limited to any Unknown Claims they may have, as that term is defined above.

"Released Party" means US Fertility, LLC; Shady Grove Reproductive Science Center P.C.; and Fertility Centers of Illinois, PLLC; and any and all of their present or past direct or indirect heirs, executors, estates, affiliates, divisions, predecessors, successors, assigns, parents, or subsidiaries, including Amulet Capital Partners, LP; IntegraMed America, Inc.; Arizona Reproductive Medicine Associates; Arizona Reproductive Medicine Specialists; Boston IVF; Center for Reproductive Endocrinology; Center for Reproductive Medicine; Center for Reproductive Medicine & Advanced Reproductive Technologies; Center for Reproductive Medicine Alabama; Center for Reproductive Medicine Orlando; Coastal Fertility Specialists; Fertility Centers of Illinois, LLC; Fertility Centers of Orange County; Fertility Partners of Pennsylvania Surgery Center, LLC; Georgia Reproductive Specialists, LLC d/b/a SGF Atlanta; Idaho Center for Reproductive Medicine; IVF New England; LA OC Surgical Center, Inc.; Midwest Fertility Specialists; Nevada Center for Reproductive Medicine; Nevada Fertility Center; New York Fertility Medical Practice, PLLC d/b/a SGF New York; Northwest Center for Infertility and Reproductive Endocrinology, LLP d/b/a IVF Florida Reproductive Associates; NYU Langone Reproductive Specialists of New York; Ovation Fertility, Reproductive Endocrinology Associates of Charlotte (a/k/a REACH), Reproductive Medical Partners Group, Inc.; Reproductive Partners Fertility Center – San Diego; Reproductive Partners, Inc.; Reproductive Partners Medical Group, Inc.; Reproductive Science Center of Bay Area; Reproductive Science Center of the San Francisco Bay Area; RSC Surgery Center, LLC; Seattle Reproductive Medicine; Seattle Reproductive Surgery; SGF Tampa Bay, LLC; Shady Grove Fertility; Shady Grove Fertility Center of Pennsylvania, PLLC; Shady Grove Reproductive Science Center, P.C.; SHER Institute of

Reproductive Medicine – New Jersey; SHER Institute of Reproductive Medicine New York; SHER Institute of Reproductive Medicine, St. Louis; SHER Institute for Reproductive Medicine – Texas; SIRM Central Illinois Fertility Clinics; SIRM Connecticut Fertility, P.C.; SIRM St. Louis Fertility; Southeastern Fertility Centers; Sprout Fertility; UNC Fertility, LLC; Utah Fertility Centers; Virginia Fertility Associates, LLC d/b/a SGF Richmond; and Virginia IVF and Andrology Center, LLC ("Released Entities"), and the owners, associates, employers, employees, agents, consultants, contractors, independent contractors, vendors, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, accountants, administrators, bankruptcy trustee(s), financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, sellers, distributors, legal representatives, successors in interest, assigns and persons, firms, trustees, trusts, corporations, officers, directors, general or limited partners of the Released Entities, any US Fertility managed entities, and any and all other individuals or entities in which Defendants have a controlling interest or that are affiliated with them, or any other representatives of any of these persons and entities.

### E.  Proposed Plan of Notice

The Parties' proposed Notice plan consists of direct notice in the form of Postcard Notice, as well as a Settlement Website where Class Members may view and download a Long Form Notice.

Within 5 days from the Preliminary Approval Order, Defendants, at their own expense, will compile the Class Member List and provide it to the Settlement Administrator and Class Counsel.

As soon as practicable but starting no later than 23 days after the receipt of the Settlement Class Member List, the Settlement Administrator shall cause the Postcard Notice to be sent to all

8

Settlement Class Members. Prior to the date on which the Settlement Administrator mails the Postcard Notice, the Settlement Administrator shall establish the Settlement Website. The Settlement Website shall contain: (1) the Long Form Notice; 2) Claim Forms; (3) the Settlement Agreement; (4) the signed Preliminary Approval Order; (5) the Consolidated Complaint filed in the Action; and (6) any other such documents as Class Counsel and Defendants' Counsel agree to post. The Settlement Website shall remain accessible until at least 5 business days after the last payment under the Settlement is made or the Settlement is terminated.

The Settlement Administrator shall also maintain a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries and answer the questions of the Settlement Class Members who call with or otherwise communicate such inquiries within one business day. The number shall be included in the Class Notice and posted on the Settlement Website.

The Settlement Administrator will also ensure that the necessary and timely notice is provided to the appropriate government officials as is required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

### F.   Opt-Outs and Objections

The Class Notice will advise Class Members of their right to opt out of the Settlement or to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to Class Representatives, and of the associated deadlines to opt out or object.

Class Members who choose to opt out must submit a written request for exclusion. Any request for exclusion must be postmarked no later than 60 days after Class Notice is sent. Any request for exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that

the individual does not wish to participate in the Settlement at the top of the communication. Any Settlement Class Member who does not file a timely Request for Exclusion in accordance with the deadlines and other requirements will be bound by the Settlement absent a court order to the contrary.

Class Members who wish to object to the Settlement must mail a written objection, postmarked no later than 60 days after Class Notice is sent, to the Settlement Administrator. The written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement that states with specificity the grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. Any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

Any Class Member who does not provide a timely written objection shall be deemed to have waived the objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement, Fee and Service Award Application, or the Fee and Expense Award or Service Awards.

### G. Attorneys' Fees and Costs and Service Awards

The Settlement Agreement contemplates Class Counsel petitioning the Court for attorneys' fees in an amount not to exceed 33.33%, as well as for documented, customary costs incurred by

10

Class Counsel. Any approved Fee and Expense Award shall be paid from the Settlement Fund prior to distribution to the Settlement Class Members.

At least 30 days before the Opt-Out and Objection Deadlines, Class Counsel will file a petition for attorneys' fees and costs explaining why the requested Fee and Expense Award is reasonable. Defendants have not agreed to any award of attorneys' fees or expenses and reserve the right to respond as they deem appropriate.

Class Counsel may also petition the Court for up to $2,500 for each of Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Service Awards as compensation for their time and effort in the Action. Any approved awards will be deducted from the Settlement Fund prior to distribution to the Settlement Class Members.

### III. FINDINGS AND ORDERS

#### A. The Settlement Agreement warrants preliminary approval.

1. The Court finds, on a preliminary basis, that the Settlement Agreement appears to be within the range of reasonableness of a settlement that could ultimately be given final approval by this Court. The Court has reviewed the terms of the Settlement and preliminarily finds the Settlement to be fair, reasonable, and adequate. The Court finds that the Settlement contains no obvious deficiencies and that the Parties entered into the settlement in good faith, following arm's length negotiations between their respective counsel. The Settlement meets the considerations set forth in Federal Rule of Civil Procedure 23(e) and in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991).

2. In the Fourth Circuit, courts look to a four-factor test to evaluate the fairness of a class settlement: "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of [the] class action litigation." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.[2] As to the posture of the case, it appears that the Settlement was reached after over two years of litigation, including motions practice and oral argument with respect to Defendants' motion to dismiss and motion to strike. Although the Parties did not engage in formal discovery, it appears Defendants provided substantial informal discovery to allow Class Counsel to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation. The provision of informal damages discovery is sufficient to satisfy the fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval). Thus, the first two fairness factors warrant preliminary approval.

3. The third factor—the circumstances surrounding the negotiations—also supports preliminary approval. The Settlement was negotiated with the assistance of Bennett G. Picker and Judge Morton Denlow (Ret.), experienced mediators, and appears to be the result of extensive, arm's length negotiations between the Parties after Class Counsel and Defendants' Counsel had investigated the claims, litigated them, and become familiar with the claims' strengths and weaknesses. Further, the Parties did not discuss attorneys' fees, costs and expenses, or Service Awards until after agreeing upon the material terms of the Settlement. The Settlement appears not to be collusive, has no obvious defects, and falls within the range of reasonableness.

---

[2] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

4. With respect to the fourth factor, Class Counsel and Defendants' Counsel are experienced in class action litigation. Moreover, it appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed Settlement Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation, including the largest data breach and data privacy cases in the country. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation.

5. It appears to the Court that the terms of the proposed award of attorneys' fees and expenses are fair and reasonable. However, prior to final approval, Class Counsel shall file a separate motion seeking approval of Attorneys' Fees and Expenses in an amount not to exceed 33.33% of the Settlement Fund, plus their reasonable expenses of litigation. In this submission, Class Counsel will set forth the specific legal and factual bases for their request for attorneys' fees and expenses. It likewise appears to the Court that the proposed Service Awards are fair and reasonable.

6. Accordingly, the Court preliminarily finds that the Settlement is fair.

7. In assessing the adequacy of the settlement, the Court looks to "(1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the defendant[] and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement." *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.

8. The first and second factors, which are generally considered together, evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). Here, Plaintiffs faced the risk that their claims would not have survived, or survived in full, on a class-wide basis at class certification or summary judgment.

9. With respect to the third factor, the likely duration and expense of continued litigation is substantial. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to 884,090 Class Members.

10. Finally, Defendants appear to be solvent.

11. Accordingly, the Court preliminarily finds that the Settlement is adequate.[3]

12. It appears to the Court that the Settlement is fair, reasonable, and adequate when balanced against the risks of litigation and potential appeals of rulings.

**B.    Certification of the Settlement Class for settlement purposes is appropriate.**

On a motion for preliminary approval, the parties must also show that the Court "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). The Court finds for purposes of settlement only that the Settlement Class meets all of the requirements of Fed. R. Civ. P. 23(a) and b(3).

1. It appears to the Court for purposes of settlement only that the proposed Settlement Class is sufficiently numerous that joinder would be logistically impossible. The proposed Settlement Class consists of over 884,090 members of the Nationwide Class and 5,355 members

---

[3] The fifth *Jiffy Lube* factor, the degree of opposition to the settlement, cannot be evaluated until after Class Notice has gone out and Class Members have had the opportunity to opt out or object to the settlement.

14

of the California CMIA subclass (collectively, the "Settlement Class"). The numerosity requirement is satisfied.

2.  It appears to the Court for the purposes of settlement only that there is a commonality of interests between the Settlement Class Members, including both questions of law and questions of fact. Plaintiffs' claims here depend on common contentions that Defendants failed to provide adequate security to the PII and PHI they were duty bound to safeguard, and as a result of the theft of their personal data, they suffered injury. All members of the Nationwide Class are asserting the same legal claims, and all members of the CMIA subclass are asserting the same legal claims. For the same reason, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied for settlement purposes.

3.  It appears to the Court for purposes of settlement only that the Class Representatives' claims are typical of those of the Settlement Class Members. The Class Representatives' claims arise from the same alleged conduct as those of the Settlement Class Members. The typicality requirement is satisfied.

4.  It appears to the Court that for purposes of settlement only that the Class Representatives and Class Counsel are adequate representatives and have no conflicts with the proposed Settlement Class.

5.  It appears to the Court for purposes of settlement only that a class action is a superior method of resolving the claims of the Settlement Class Members, which for many, are modest amounts.

### C. The proposed Notice Plan is approved.

Due Process under Rule 23 requires that class members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B);

15

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974) ("[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort.").

It appears to the Court that the proposed Notice Plan, which consists of Postcard Notice to be sent directly to Class Members, as well as a Long Form Notice, Settlement Website, toll-free phone line, and paid search campaign comports with due process, Rule 23, and all other applicable law. The Court finds that mailed notice is the best notice practicable under the circumstances and orders that Defendants provide the Settlement Class List, consisting of the names and mailing addresses for Settlement Class Members, to the Settlement Administrator. *See Stone v. SRA Int'l, Inc.*, No. 2:14-cv-209-DEM, 2015 WL 12778408, *3 (E.D. Va. Jan. 7, 2015 (preliminarily approving notice plan consisting of mailed notice, concluding that it was "the best notice practicable under the circumstances and satisfies the requirements of due process"); *Witt v. CoreLogic Saferent, LLC*, No. 3:15-cv-386, 2018 WL 1560069, at *2, *4 (E.D. Va. Mar. 22, 2018) (granting final approval where settlement class members were notified by mailed notice).

Moreover, the substance of the proposed Class Notice will fully apprise Class Members of their rights. Under Rule 23(e), notice to class members must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *McAdams v. Robinson*, 26 F.4th 149, 158 (4th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)). The Notice contains all the critical information required to apprise Class Members of their rights under the settlement, directs them to the Settlement Website, where they can obtain more detailed information, and provides a toll-free number for Class Members to call with questions. This

16

approach to notice is adequate. The Court also finds that the proposed costs associated with the Notice Plan appear to be fair and reasonable.

## IV. SCHEDULE AND PROCEDURES

The Court orders the following schedule and procedures for disseminating the Notice, requesting exclusion from the Settlement Class, objecting to the Settlement, filing the Fee and Service Award Application, and filing the motion for final approval:

| Date | Event |
|---|---|
| 5 days from Preliminary Approval Order | Defendants to provide Settlement Class List to Settlement Administrator |
| 23 days after receipt of the Settlement Class List | Settlement Administrator to send Class Notice |
| At least 21 days before the Opt-Out and Objection Deadlines | Deadline for Class Counsel to file Fee and Service Award Application |
| 60 days after Class Notice | Response Deadline (deadline to request exclusion or file objections) |
| No earlier than 140 days after the Order granting Preliminary Approval, but at least 90 days after the Settlement Administrator notices relevant government officials. | Deadline for Class Counsel to file Motion for Final Approval |

## V. FINAL APPROVAL HEARING

The Court shall hold a Final Approval Hearing on _April 18, 2024_ at _11:00 am_ at the United States District Court for the District of Maryland, 6500 Cherrywood Lane, Suite 475, Greenbelt, MD 20770, before the Honorable Peter J. Messitte, for a final determination whether the proposed Settlement is fair, reasonable, and adequate. Objections by Settlement Class Members will be considered if filed in writing with the clerk by the Response Deadline above. Settlement Class Members who have not requested exclusion may be heard orally in support of or in opposition to the Settlement. Settlement Class Members who wish to appear at the Final Approval Hearing through counsel are required to file a notice with the Clerk of his or her desire

17

to appear personally, and counsel must file a notice of appearance on the docket. Settlement Class Members proceeding *pro se* are requested, but not required, to file a notice with the Clerk of his or her desire to appear personally.

## VI. OTHER PROVISIONS

Class Counsel and Defendants are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement, including the proposed Notice Plan. The deadlines set forth in this Order may be extended by Order of the Court without further notice to Settlement Class Members, except that notice shall be posted on the Settlement Website. Settlement Class Members should check the Settlement Website regularly for updates and further details regarding the deadlines. Exclusions and objections must meet the deadlines and follow the requirements set forth in the approved Class Notice to be valid, although the Court will accept exclusions and objections deemed to be in substantial compliance.

If for any reason the Court does not execute and file an Order of Final Approval, or if the Effective Date does not occur for any reason, the Parties will be restored to the *status quo ante* as set forth more specifically in the Settlement.

## VII. CONCLUSION

Accordingly, the Court having considered the Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of the Settlement Class, it is hereby ordered that:

1. The Motion is GRANTED;

2. The proposed Settlement Class is certified for settlement purposes only pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

3. The proposed Settlement is preliminarily approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

4. Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela are appointed as Class Representatives;

5. Lisa Cox, Heidi Schneider, Laura Petersen, and Patrisia Vela are appointed as CMIA Subclass Representatives;

6. John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy are appointed as Class Counsel;

7. The proposed Notice Plan complies with the requirements of Rule 23 and Due Process, and Class Notice is to be sent to the Settlement Class Members as set forth in the Settlement Agreement and pursuant to the deadlines above, and Angeion is appointed the notice and claims administrator responsible for the dissemination of notice and if the Settlement is finally approved, the administration of the claims process.

DATED: 11/22/23

HONORABLE PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE