# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Southern Division*

| | |
|---|---|
| **IN RE US FERTILITY, LLC** | **Master File No. 8:21-cv-299** |
| **DATA SECURITY LITIGATION** | |
| This Document Relates To: All Actions | |

## <u>PLAINTIFFS' MOTION FOR FINAL APPROVAL<br>OF CLASS ACTION SETTLEMENT</u>

**PLEASE TAKE NOTICE** that on April 18, 2024 at 11:00 AM at the United States District Court for the District of Maryland located at 6500 Cherrywood Lane, Suite 475, Greenbelt, MD 20770, before the Honorable Peter J. Messitte, Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Peterson, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela, respectfully move this Court to (1) grant this Motion; (2) finally approve the proposed Settlement; (3) affirm the certification of the Settlement Class for settlement purposes only; (4) affirm the appointment of Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Peterson, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Class Representatives; (5) affirm the appointment of Lisa Cox, Heidi Schneider, Laura Peterson, and Patrisia Vela as Subclass Representatives; (6) affirm the appointment of John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel; (7) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; (8) grant Plaintiffs' request for attorneys' fees, litigation costs, and service awards; (9) enter Final Judgment dismissing this action; and (10) any other relief this Court deems just.

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................... 1

II.     LITIGATION AND SETTLEMENT HISTORY ............................................ 3

III.    SUMMARY OF THE SETTLEMENT BENEFITS........................................ 6

        A.     The Proposed Class.......................................................................... 6

        B.     Benefits to the Settlement Class ...................................................... 6

               1.     Monetary Benefits.................................................................. 6

               2.     Prospective Injunctive Relief ................................................ 9

        C.     The Settlement Here Compares Favorably to Settlements of Similar Cases.......... 9

IV.     SETTLEMENT ADMINISTRATOR AND ADMINISTRATION COSTS..................... 9

V.      CLASS MEMBER RELEASE ...................................................................... 10

VI.     CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT...................... 10

VII.    THE LEGAL STANDARD FOR FINAL APPROVAL ................................. 11

VIII.   ARGUMENT ............................................................................................... 12

        A.     The Settlement Agreement Warrants Final Approval ......................... 12

               1.     The Settlement is Fair ........................................................ 13

               2.     The Settlement is Adequate ................................................ 16

               3.     The Allocation of the Settlement is Fair and Reasonable......................... 20

IX.     THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ............... 22

X.      THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS........................................ 23

XI.     CONCLUSION............................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abubaker v. Dominion Dental USA Inc.*,
   No. 1:19-cv-1050 (E.D. Va.) .................................................................. 21

*Alexander v. Carrington Mortg. Servs., LLC*,
   No. 1:20-cv-2369-RDB (D. Md. Nov. 10, 2022) ...................................... 24

*Alloways v. Cruise Web, Inc.*,
   No. CBD-17-2811, 2019 WL 1902813 (D. Md. April 29, 2019)...................... 11, 12

*Boger v. Citrix Systems, Inc.*,
   2023 WL 3763974 (D. Md. June 1, 2023)................................................ 18

*Boyd v. Coventry Health Care Inc.*,
   299 F.R.D. 451 (D. Md. 2014)............................................................ 19, 24

*Decohen v. Abbasi, LLC*,
   299 F.R.D. 469 (D. Md. 2014)......................................................... 14, 17, 23

*Fire & Police Retiree Health Care Fund, San Antonio v. Smith*,
   No. CV CCB-18-3670, 2020 WL 6826549 (D. Md. Nov. 20, 2020) ...................... 12

*Gaston v. LexisNexis Risk Sols. Inc.*,
   No. 516CV00009KDBDCK, 2021 WL 244807 (W.D.N.C. Jan. 25, 2021)...................... 12, 15

*Herrera v. Charlotte Sch. of L., LLC*,
   818 F. App'x 165 (4th Cir. 2020) ....................................................... 12

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*,
   No. 8:16-md-02737 (M.D. Fla.) .......................................................... 21

*In re Am. Cap. S'holder Derivative Litig.*,
   No. CIV. 11-2424 PJM, 2013 WL 3322294 (D. Md. June 28, 2013) ...................... 15

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299, 312 (N.D. Cal. 2018)................................................... 23

*In re Brinker Data Incident Litig.*,
   2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)............................................ 17

*In re Hanna Andersson and SalesForce.com Data Breach Litig.*,
   No. 3:20-cv-812 (N.D. Cal.).............................................................. 21

ii

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .............................................................. 11, 12, 13, 14, 16, 18, 19

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*,
   No. 115MD2627AJTTRJ, 2018 WL 11203065 (E.D. Va. Oct. 9, 2018) ................................ 19

I*n re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs.*,
   952 F.3d 471, 474 n.8 (4th Cir. 2020) ............................................................... 12, 19

*In re Marriott International, Inc., Customer Data Sec. Breach Litig.*,
   78 F. 4th 677 (2023) .................................................................................... 17

I*n re The Mills Corp. Securities Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) ........................................................................ 16

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
   No. 3:14CV238(DJN), 2016 WL 1070819 (E.D. Va. Mar. 15, 2016) ................................... 15

*McAdams v. Robinson*,
   26 F.4th 149 (4th Cir. 2022) ........................................................................... 14

*Monegato v. Fertility Centers of Illinois, PLLC*,
   No. 2022 CH 00810 (Ill. Cir. Ct.) ...................................................................... 21

*Nicholes v. Combined Ins. Co. of Am.*,
   No. 5:16-CV-10203, 2019 WL 2575066 (S.D.W. Va. Feb. 22, 2019) ................................... 14

*Robinson v. Carolina First Bank NA*,
   No. 7:18-CV-02927-JDA, 2019 WL 719031 (D.S.C. Feb. 14, 2019) ............................... 16, 17

*Robinson v. Nationstar Mortg. LLC*,
   No. 8:14-CV-03667-TJS, 2020 WL 8256177 (D. Md. Dec. 11, 2020) ................................... 14

*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013) ................................................................. 18, 24

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................................... 4

*Wegner v. Carahsoft Tech. Corp.*,
   2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) ........................................................ 24

*Yost v. Elon Prop. Mgmt. Co-Lexford Pools 1/3, LLC*,
   2023 WL 185178, at *10 (D. Md. Jan. 13, 2023) ...................................................... 24

**Statutes**

28 U.S.C. § 1715.................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 23(e) ..................................................................................... 11, 12, 22

## I.    **INTRODUCTION**

Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela ("Plaintiffs"), individually and on behalf of the proposed Settlement Class,[1] seek final approval of a proposed Settlement of claims against Defendants US Fertility, LLC, Shady Grove Reproductive Science Center P.C., and Fertility Centers of Illinois, PLLC (together, "Defendants" or "USF"). The Settlement Agreement, if approved, will establish a common fund of $5,750,000.00 to provide direct monetary relief to Settlement Class members, and will provide additional injunctive relief by Defendants as outlined in Exhibit A, the costs of which will be borne by Defendants separate and apart from the Settlement Fund. S.A. ¶ 35. The total monetary value of the Settlement far exceeds the $5,750,000.00 Common Fund and is an excellent Settlement to which only one class member has objected.[2]

Specifically, a $5,750,000.00 Common Fund will be created to resolve the claims of Plaintiffs and the Settlement Class Members deriving from the potential disclosure of their personal identifiable information ("PII") and/or protected health information ("PHI") to an unauthorized third party(s) who engaged in a ransomware event (the "Data Breach"). The Common Fund will provide cash payments to Settlement Class Members, pay Administrative Costs to provide notice and administer the settlement, and pay any Attorneys' Fee and Expense Award and Service Awards that the Court may approve. Additionally, the Settlement includes

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ("SA").

[2] This Class Member does not object to any monetary components. He is only concerned with the destruction of his records, and has explicitly stated he will not appear at the final approval hearing.

valuable injunctive relief: Defendants have agreed by contract to business practice commitments and remedial measures over at least the next three years that will improve the security and integrity of their systems and the information kept on those systems. Due to the sensitivity of those business practice commitments and the likelihood that nefarious actors might use them for bad, the particulars have been filed under seal with the approval of this Court.

The proposed Settlement has been preliminarily approved and warrants final approval now. The settlement provides monetary relief to the Settlement Class that otherwise would not have been achievable, as well as significant injunctive relief improving the security of Defendants' systems and the privacy of Settlement Class Members' PII and PHI.

The notice program and claim administration were very successful, resulting in effective notice of more than 98% of the Settlement Class and a claims rate of 6.99%. After payment of expenses, attorneys' fees, and costs of notice and administration, each of the 61,563 Settlement Class Member who submitted a valid claim will receive the following benefits. Settlement Class Members who claimed the Cash Payment option will receive $26.95 for that portion of their claim. Settlement Class Members who qualified for the CMIA Cash Payment (residents of California) will receive $107.80 for that portion of their claim. Those Settlement Class Members who had documented lost out-of-pocket expenses will receive on average $220.98 for that portion of their claim. Finally, those Settlement Class Members who made valid claims for lost time will receive on average $39.53 for that lost time portion of their claim. These results are extraordinary in a case of this nature, where class members' claims are typically valued at an average of $5.74. *See* ECF No. 112 at 3–4 (outlining the values that other recent class action data breach settlements have provided, ranging from under $3 per class member with an average of $5.74 per class member)

As such, the proposed Settlement warrants final approval, as the terms are fair, reasonable, and adequate.

Therefore, Plaintiffs request that the Court: (1) grant this Motion; (2) finally approve the proposed Settlement; (3) affirm the certification of the Settlement Class for settlement purposes only; (4) affirm the appointment of Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Petersen, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela as Class Representatives; (6) affirm the appointment of Lisa Cox, Heidi Schneider, Laura Peterson, and Patrisia Vela as CMIA Subclass Representatives; (7) affirm the appointment of John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel as Class Counsel; (8) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; and (9) enter Final Judgment dismissing this action. Defendants do not oppose Plaintiffs' request.

## II.   LITIGATION AND SETTLEMENT HISTORY

Beginning in November 2020 through January 2021, Defendants notified patients of its network of fertility clinics that its systems were accessed during a ransomware by an unauthorized party(s), who acquired files during the period August 12, 2020 to September 14, 2020. Defendants also informed these individuals that their PII and/or PHI was contained within the impacted files.

Beginning in January 2021, Plaintiffs began filing lawsuits in this Court: *Doe et al. v. US Fertility, LLC* ("*Doe*"), Case No. TDC-21-248 (D. Md. Jan. 28, 2021); *Vinsant v. US Fertility,*

*LLC*, Case No. TDC-21-225 (Jan. 26, 2021); *Fadness v. US Fertility, LLC*, Case No. PJM-21-299 (Feb. 4, 2021); *Churchill v. US Fertility, LLC*, Case No. PWG-21-370 (Feb. 15, 2021); *Decker v. US Fertility, LLC*, Case No. PWG-21-404 (Feb. 17, 2021); *Mateson v. US Fertility, LLC*, Case No. PWG-21-466 (Feb. 23, 2021); *Stuckley v. US Fertility, LLC*, Case No. PWG-21-496 (Feb. 25, 2021); and *Forest v. US Fertility, LLC*, Case No. TDC-21-646 (Mar. 15, 2021). The Court consolidated these cases, and Plaintiffs filed a consolidated class action complaint on June 7, 2021. (ECF No. 39). In July 2021, the Court consolidated *Mullinix v. US Fertility,* LLC, 1:21-cv-01430 and *Leonard v. US Fertility, LLC*, 1:21-cv-1783 with the previously consolidated cases. Plaintiffs amended their consolidated class action complaint on November 15, 2021 (ECF No. 60).

The First Amended Consolidated Class Action Complaint ("Consolidated Complaint") asserts claims on behalf of a proposed nationwide class and state-specific subclasses for negligence, unjust enrichment, breach of confidence, declaratory and injunctive relief, breach of contract, California's Confidentiality of Medical Information Act ("CMIA"), data privacy laws of Maryland and Virginia, and consumer protection laws of Maryland, Nevada, Florida, Illinois, Washington, North Carolina, Idaho, and Utah.

On November 22, 2021, Defendants filed a motion to dismiss the Consolidated Complaint and a motion to strike (ECF No. 65). Defendants argued that Plaintiffs had not alleged legally cognizable harms arising out of the Data Breach, that Defendants were not the proximate cause of any such harms, and that Plaintiffs had not pled facts showing damages. Defendants relied heavily on *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Plaintiffs filed their opposition to Defendants' motion to dismiss on December 22, 2021 (ECF No. 78). On January 11, 2022, Defendants filed a reply in support of their motion to dismiss (ECF No. 82). On April 28, 2022,

the Court heard oral argument of the Parties on Defendants' motion to dismiss Plaintiffs' Consolidated Complaint (ECF No. 83).

On January 26, 2022, Plaintiffs moved to intervene and transfer another case, *Doe v. US Fertility*, No. 1:21-cv-00579 (N.D. Ill.), arising from the Data Breach to this Court. Judge Feinerman of the United States District Court for the Northern District of Illinois granted Plaintiffs' motion as to the claims against Defendants and transferred the case to the United States District Court for the District of Maryland on July 6, 2022. Plaintiffs moved to consolidate *Doe* with *In re: US Fertility, LLC Data Security Litigation*, No. 8:21-cv-299, on September 8, 2022.

Prior to filing their Consolidated Complaint, the Parties mediated this matter before mediator Bennett G. Picker on September 28, 2021. Although this mediation did not result in agreement on settlement terms, the Parties continued negotiations and agreed to engage in a second mediation on June 13, 2022 before Judge Morton Denlow (Ret.), a retired U.S. Magistrate Judge and an experienced mediator in assisting in the resolution of class litigation. The Parties were unable to reach an agreement as to settlement terms on that date. Ultimately, on October 4, 2022, Judge Denlow provided the Parties with a mediator's recommendation as to the monetary terms of the settlement. On October 10, 2022, after further negotiations among the Parties, counsel for the Parties reached a tentative agreement with regard to those terms. Thereafter, the Parties engaged in extensive negotiations relating to business practice commitments which are to be included as part of the settlement. All of these terms are incorporated into the Settlement Agreement executed by the Parties in August 2023.

III.    **SUMMARY OF THE SETTLEMENT BENEFITS**

A.    **The Proposed Class**

The Settlement Agreement contemplates certification of the following Settlement Classes

for settlement purposes only:

> **The Nationwide Class**: All persons residing in the United States or
> its territories whose PII and/or PHI, as defined herein, was
> compromised in the Data Breach that US Fertility or its subsidiaries
> or partners first announced in November 2020.
>
> **The CMIA Subclass**: All United States residents whose information
> was provided to a fertility clinic in California and whose PHI, as
> defined herein, was compromised in the Data Breach that US
> Fertility announced in November 2020.

Settlement Agreement, ECF No. 104-1 ("S.A.") ¶ 39.

B.    **Benefits to the Settlement Class**

1.    **Monetary Benefits**

The Settlement Agreement provides monetary benefits in the form of a common fund of

$5,750,000.00, from which shall be paid (1) all payments to Settlement Class members, (2) all

Administrative Costs, (3) any Fee and Expense Award approved by the Court, and (4) any Service

Awards to the Class Representatives approved by the Court. *See* S.A. ¶ 35. After payment of costs

of administration and notice and any attorneys' fees, expenses, and service awards authorized by

the Court, the Net Settlement Fund will be distributed to Settlement Class Members as described

below. *Id.* ¶ 15.

Members of the Nationwide Class and the CMIA Subclass may submit claims for (a) a

presumptive payment of up to $50.00 without any documentation; (b) reimbursement of up to four

hours of Time Spent at $25.00 per hour, capped at $100.00, with a brief description of how and

when the time was spent and how the expenditure of time is related to the data breach and/or (c)

reimbursement of Out-of-Pocket Losses of up to $15,000.00 with documentation. *Id.* ¶¶ 53, 50,

6

48. Members of the CMIA Subclass may also submit claims for a statutory payment in the presumptive amount of up to $200.00. Members of the Nationwide and CMIA subclass may claim more than one category of benefits but no one individual may receive in excess of the total sum of $15,000.00. S.A. ¶ 62. Defendants identified approximately 884,090 records for Settlement Class Members and have represented that they had what they believed to be the most recent mailing addresses as of the time of notice. *Id.* ¶ 104-1. The Settlement Administrator de-duplicated and updated the list with the USPS National Change of Address database before notice commenced. *See* Declaration of Taylor Adessa ("Adessa Decl."), ¶ 5. After analyzing the data provided by Defendants and removing duplicative records, the Settlement Administrator identified an overall combined total of 881,215 unique records. Adessa Decl., ¶ 3.

The Settlement Administrator has de-duplicated and processed the claims for fraud. *See* Adessa Decl., ¶¶ 14–18. Here, the aggregate amount of all claims for settlement benefits exceeds the total amount of the Net Settlement Fund, so the Settlement Agreement requires that the value of such payments shall be reduced on a pro rata basis, such that the aggregate value of all payments for benefits do not exceed the Net Settlement Fund. S.A. ¶ 64. Because of the robust claims rate, it is approximated that those claims for settlement benefits will be reduced to approximately 50% to 55% of the initially-claimed amounts for cash payments, time spent, and out-of-pocket expenses. Adessa Decl., ¶¶ 14–18.

After payment of expenses, attorneys' fees, and costs of notice and administration, each of the 61,563 Settlement Class Member who submitted a valid claim will receive the following benefits. Settlement Class Members who claimed the Cash Payment option will receive $26.95 for that portion of their claim. Settlement Class Members who qualified for the CMIA Cash Payment (residents of California) will receive $107.80 for that portion of their claim. Those Settlement

Class Members who had documented lost money will receive on average $220.98 for that portion of their claim. Finally, those Settlement Class Members who made valid claims for lost time will receive on average $39.53 for that lost time portion of their claim. Adessa Decl. ¶ 14–18.

      If a settlement check is not cashed within 90 days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class Member by email and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. S.A. ¶ 58. Any reissued Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for 60 days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time. *Id.*

      To the extent any monies remain in the Net Settlement Fund more than 150 days after the distribution of Settlement payments to the Settlement Class Members, or 30 days after all reissued settlement checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be divided pro rata and disbursed in a secondary distribution to the CMIA Subclass Members who submitted valid claims, except that if the remaining monies, after covering additional costs of administration, are insufficient to provide a secondary distribution of at least $5.00 per eligible recipient, then the remaining monies shall be distributed as required by state law or to the Non-Profit Residual Recipient as approved by the Court. *Id.* ¶ 59. In no event shall any remaining funds be returned to Defendants. *Id.*

### 2.    Prospective Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. Defendants have already implemented or agreed to implement a number of contractual business practice commitments and remedial measures for at least three years following the Effective Date of the Settlement Agreement. *Id.* ¶ 65. These measures are designed to safeguard patients' PII and PHI, and are described in detail in Exhibit A to the S.A., filed under seal. These commitments are substantial and their implementation is subject to verification by Defendants' counsel to Class Counsel throughout the commitment period.

### C.    The Settlement Here Compares Favorably to Settlements of Similar Cases

Data breach class action litigation is inherently risky and wades into uncharted territory as cases proceed to class certification and trial. While members of Class Counsel have certified both monetary and injunctive relief classes, trials on data breaches are a rarity. Armed with this extensive experience in the data breach and privacy areas of law (and particularly class litigation), Class Counsel submit that the benefits available to Settlement Class Members compare favorably with the benefits in other data breach class action settlements. *See* ECF No. 112 at 3–4 (outlining the values that other recent class action data breach settlements have provided, ranging from under $3 per class member with an average of $5.74 per class member).

### IV.    SETTLEMENT ADMINISTRATOR AND ADMINISTRATION COSTS

The Proposed Settlement Administrator is Angeion Group ("Angeion"), a leading class action administration firm in the United States with experience in administering data breach cases of the type at issue in this litigation. Joint Counsel Decl. ¶ 45; ECF No. 104-2. Class Counsel requested, received, and reviewed proposals from three prominent settlement administrators before deciding on Angeion based on overall cost and value to the Settlement Class. Joint Counsel Decl.

¶ 45. The proposals included the mailing of direct postcard notice with a returnable claim form attached, the creation of a dedicated settlement website which will contain all important case documents and a long form version of the notice, the opportunity to file claims online and a toll-free number for Settlement Class Members to call for information about the Settlement. *Id.*

All Administrative Costs shall be paid from the Settlement Fund. S.A. ¶ 42. As of February 2024, the Settlement Administrator estimates that it has incurred costs amounting to $614,166.10 and agreed from the outset that the costs will not exceed $779,500. ECF No. 104-2 at ¶ 26; Joint Counsel Decl. ¶ 45; Adessa Decl. ¶ 22. The Settlement Administrator has overseen the provision of Class Notice to the Settlement Class Members and administration of the Common Fund. Adessa Decl. ¶¶ 3–18.

## V.    **CLASS MEMBER RELEASE**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, or relating to, the Data Breach. S.A. ¶ 28. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative complaint.

## VI.    **CLASS NOTICE WAS PROVIDED AS DIRECTED BY THE COURT**

After preliminary approval, the Parties provided Notice of the settlement in accordance with the Parties' agreement and this Court's preliminary approval order. Adessa Decl. ¶¶ 4–6. The Class Notice consisted of direct notice in the form of Postcard Notice, as well as a Settlement Website where Class Members could view and request to be sent the Long Form Notice. Postcard Notice was sent to 875,416 Class Members for whom Defendants provided an address. *Id.* Pursuant to these efforts, of the 884,090 originally identified Settlement Class Members, approximately

875,416 Postcard Notices were sent, with only 18,408 undeliverable, with approximately 11,791 remailed on February 12, 2024, and then 2,649 remailed on March 1, resulting in at least a 98% deliverable rate (*i.e.*, 18,408/880,490) for the Settlement Class, which will increase with the notices that were resent in February and March. *Id.*

The Class Notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for Class Representative Service Awards and the percentage and/or amounts which would be requested. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## VII.    **THE LEGAL STANDARD FOR FINAL APPROVAL**

Federal Rule of Civil Procedure 23 requires court approval of class action settlements. Fed. R. Civ. P. 23(e). "The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). Accordingly, the Court may approve a settlement only upon a finding that the settlement is "fair, reasonable, and adequate." *Alloways v. Cruise Web, Inc.*, 2019 WL 1902813, at *8 (D. Md. April 29, 2019). "The fairness prong is concerned with the procedural propriety of the proposed settlement agreement, while the adequacy prong focuses on the agreement's substantive propriety." *Id.* (citing *Edelen v. Am. Residential Servs., LLC*, 2013 WL 3816986, at *8 (D. Md. July 22, 2013)).

In the Fourth Circuit, courts look to a four-factor test to evaluate fairness: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel."

*Jiffy Lube*, 927 F.2d at 159. Adequacy is assessed through "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

In addition to these factors, Rule 23 itself, as amended in 2018, provides specific guidance to federal courts considering whether to approve a class action settlement. *See* Fed. R. Civ. P. 23(e), Committee Notes. The factors that the Rules contemplate that a court should consider include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte Sch. of L., LLC*, 818 Fed. App'x 165, 176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

**VIII.    ARGUMENT**

**A.    The Settlement Agreement Warrants Final Approval**

As previously noted, a settlement must be "fair, reasonable, and adequate." *Alloways*, 2019 WL 1902813, at *8.  Courts in the Fourth Circuit typically bifurcate this analysis into consideration of the fairness and adequacy of the proposed settlement. *See, e.g., Fire & Police Retiree Health Care Fund, San Antonio v. Smith*, 2020 WL 6826549, at *2 (D. Md. Nov. 20, 2020); *see also Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021). The

Settlement here, reached after motion practice by sophisticated counsel and providing significant monetary and prospective relief to the class, is both fair and adequate.

1.    **The Settlement is Fair**

Each of the of the *Jiffy Lube* fairness factors is satisfied in this case.

*First*, the posture of the case at the time of settlement demonstrates that the Settlement was reached without collusion, and that the Parties and counsel were well-informed. The Plaintiffs commenced these actions in January 2021 (*Doe et al. v. UF Fertility, LLC*), into March 2021, culminating in a consolidated class action complaint being filed on June 7, 2021 (ECF No. 39) and amended on November 15, 2021 (ECF No. 60). Defendants' motion to dismiss was fully briefed by January 11, 2022 (ECF Nos. 65, 78, 82) and the Court heard oral argument on April 28, 2022 (ECF No. 83). In the meantime, and following that briefing, the Parties were engaged in mediation related discovery and settlement discussions with two respected, experienced, neutral mediators— Bennett G. Picker and subsequently Judge Morton Denlow (Ret.). The proposed settlement was reached after months of negotiation and after evaluating the merits of the case and defenses presented at dismissal.

*Second*, the Settlement follows substantial investigation, legal analysis, and motions practice. Class Counsel engaged in a thorough investigation of the legal theories and Defendants' practices prior to filing and throughout the litigation, and later reviewed and analyzed informal discovery from Defendants to understand and appreciate the facts and circumstances surrounding the data security incident. Class Counsel have litigated many similar data breach class actions and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the formal discovery process, while allowing the Parties to focus

13

their efforts on the merits of the causes of action and potential defenses. Joint Counsel Decl. ¶¶ 20–21. Plaintiffs have conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. *See In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to approval); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) (finding proposed settlement met fairness factors where "parties ha[d] engaged in informal discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case").

*Third*, the circumstances surrounding the Parties' negotiations demonstrate that the Settlement was reached through good faith, informed, arm's length negotiations. *See In re Jiffy Lube*, 927 F.2d at 159. In particular, the Parties' negotiation of the claims in this action, with the assistance of not one but two mediators, particularly evidences the absence of collusion. *See Nicholes v. Combined Ins. Co. of Am.*, 2019 WL 2575066, at *2 n.1 (S.D.W. Va. Feb. 22, 2019); *see also Decohen*, 299 F.R.D. at 480. Class Counsel have extensive experience in data breach class actions (as do counsel for Defendants). ECF No. 104-1, Joint Counsel Decl. ¶¶ 27–38. In advance of that mediation, Plaintiffs sought and obtained substantial informal discovery. *Id.* ¶ 9. Because Class Counsel has litigated and settled other cases involving similar factual and legal issues, Class Counsel understands what information is critical to resolve the claims at issue, including information relating to the amount of damages. *Id.* ¶¶ 27–38.

The Settlement authorizes each Plaintiff to seek a Service Award of $2,500. This amount is below the range of approval for class action settlements that provide significant benefits to the class. *See, e.g., Robinson v. Nationstar Mortg. LLC*, 2020 WL 8256177, at *4 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022) (awarding $5,000

14

service award in class action); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (noting that "[v]arious studies have found that the average incentive award per plaintiff ranged from $9,355 to $15,992" (citing Newberg on Class Actions § 17.8 (5th ed.))).

*Fourth*, Class Counsel and counsel for Defendants are experienced in the litigation, certification, trial, and settlement of nationwide litigation. ECF No. 104-1, Joint Counsel Decl. ¶¶ 27–38. Class Counsel have settled a number of data breach class action cases. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for these types of case, as well as other cases involving data breaches. ECF No. 104-1, Joint Counsel Decl. ¶¶ 27–38. This understanding of the intricacies of data breach cases provided Class Counsel with the tools and perspective to achieve an outstanding recovery for the Settlement Class—and prepared them to fight this Action to a successful conclusion if necessary. *Id.* ¶¶ 27–38; *see also In re Am. Cap. S'holder Derivative Litig.*, 2013 WL 3322294, at *4 (D. Md. June 28, 2013) (noting satisfaction with class counsel due to "affiliat[ion] with well-regarded law firms with strong experience" in the relevant field). In Class Counsel's experience and informed judgment, the benefits of settling outweigh the risks and uncertainties of continued litigation, as well as the attendant time and expenses associated with litigation, discovery, and possible appellate review. Courts afford due consideration to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See Gaston*, 2021 WL 244807, at *6 ("The opinion of experienced and informed counsel in favor of settlement should be afforded due consideration in determining whether a class settlement is fair and adequate.").

###### 2.    The Settlement is Adequate

Each of the *Jiffy Lube* adequacy factors is satisfied, showing that the Settlement is adequate and warrants final approval. The first two factors (the relative strength of the plaintiffs' case on the merits and the existence of any difficulties of proof or strong defenses) evaluate "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009).

While confident in the strength of their claims, Plaintiffs and Class Counsel are also pragmatic and recognize the risks inherent in litigation of this magnitude. *See* ECF No. 104-1; Joint Counsel Decl. ¶ 17. Defendants have argued that Plaintiffs' claims are unfounded, deny any liability, and have indicated a willingness to litigate vigorously in the ever-evolving and still-uncertain data breach litigation realm. Should the case proceed in litigation, Plaintiffs could see their claims dismissed or narrowed by a motion to dismiss, motion for summary judgment, at trial, or on a subsequent appeal. *Id.* They also face the risk that class certification could be denied. *Id.* ¶ 17. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in *zero* recovery for the class. *Id.* ¶ 18. And even if Plaintiffs prevailed at trial, any recovery would likely be delayed for years by further appeals. *Id.* ¶ 19.

Plaintiffs face substantial risks to their claims should the Settlement not be approved. And, if the case continues in litigation, the class members will need to wait much longer before receiving any recovery at all. *See Robinson v. Carolina First Bank NA*, 2019 WL 719031, at *8 (D.S.C. Feb. 14, 2019) ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation."). That recovery is, of course, premised on the claims survive dispositive motions, are certified for class treatment, and are not defeated on

appeal. Now, 881,215 Settlement Class Members stand to gain significant relief in the near term, without any further risks attendant to protracted litigation. *See Decohen*, 299 F.R.D. at 480 (finding settlement adequate where despite reversal of dismissal of claims, there was no guarantee the court would certify a class, and "the road to recovery—particularly for the class as a whole—likely would be protracted and costly if the settlement were not approved").

Moreover, few privacy cases have been certified (and even fewer in the data breach context); for example, *In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021), was certified for 23(b)(3) purposes, subsequently appealed, and then remanded for further briefing on class certification. *See also In re Marriott International, Inc., Customer Data Sec. Breach Litig.*, 78 F4th 677 (2023) (underscoring the challenges of class certification in data breach litigation). Further, there is no guarantee that this Court or any other would certify a class.

Of course, Plaintiffs believe their claims are meritorious and that they would prevail if their cases proceeded to trial. But ultimately, the claims of individuals are modest compared with the aggregation of those claims for settlement. There is also a risk of complete loss at trial, or the risks or costs of further potential appellate proceedings. All that is certain is that if the case continues in litigation, the class members will need to wait much longer before receiving any recovery at all. *See Robinson*, 2019 WL 719031, at *8 ("There is a strong judicial policy in favor of settlement to conserve scarce resources that would otherwise be devoted to protracted litigation."). Instead, Settlement Class Members recover with certainty.

While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 881,215 Settlement Class Members. And these benefits are substantial: without expending any costs or expenses for attorneys' time and efforts,

individuals who make claims are automatically entitled to cash payments, reimbursement of time spent, and reimbursement of out-of-pocket expenses. ECF No. 104-1. These amounts were presumptive and subject to *pro rata* adjustments depending on the amount of claims submitted. *Id.* Presently, the claims rate is approximately 6.99% and will result in each Settlement Class Member receiving approximately 50% to 55% of the monetary benefits that were claimed.[3] Adessa Decl. ¶¶ 13–18. A pro rata reduction does not, however, suggest that final approval is not warranted. *See, e.g.*, *Boger v. Citrix Systems, Inc.*, 2023 WL 3763974 (D. Md. June 1, 2023) (approving settlement where potential *pro rata* share of the net settlement fund was still found to be fair and reasonable); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) (same).

The third *Jiffy Lube* adequacy factor (the anticipated duration and expense of additional litigation) also favors approval. This case is settling in its early stages; if the Settlement is not approved, the Parties will receive a ruling on the Defendants' Motion to Dismiss, amend pleadings and will likely need to litigate through multiple dispositive motions and a motion for class certification. ECF No. 104-1, Joint Counsel Decl. ¶¶ 17–18. The litigation would likely take years to resolve and involve expensive expert discovery and substantial time engaging in in protracted and expensive discovery disputes. *Id.* And of course, all Parties would need to spend significant resources preparing for trial. The drawn out and expensive process that further litigation would entail would lead to significant legal costs to both sides, but would not necessarily lead to a better result for the class. Thus, this factor favors approval. *See Edelen*, 2013 WL 3816986, at *9 (approving settlement where absent approval, "litigation of this dispute could prove to be long and expensive" and "require substantial time by the parties' attorneys").

---

[3] The claim rate is precisely 6.9864%. (881,215 x .069862 = 61,563).

As to the fourth *Jiffy Lube* adequacy factor (the solvency of the defendant and the likelihood of recovery on a litigated judgment), there is nothing to indicate that Defendants could not satisfy a judgment if one were entered. But, as previously noted, it is clear that continued litigation would be expensive and consume significant resources of the Parties and the court system. Thus, "[o]n balance, the risks, delays, and costs associated with further litigation weigh in favor of granting" final approval. *Edelen*, 2013 WL 3816986, at *9.

Finally, the fifth *Jiffy Lube* factor—the degree of opposition to the settlement—also weighs heavily in favor of final approval. Of the approximate 881,215 Settlement Class Members, only 39 requested to opt-out of the Settlement, Adessa Decl. ¶ 18, and only one objected to the settlement. ECF No. 127. "A small number of objections and a low opt-out rate suggest that the proposed settlement is adequate." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018), *aff'd sub nom In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) ("Finally, only 94 of the 178,859 class members who responded to the class-action settlement notice opted out of the settlement (about 0.05%), and 12 class members objected thereto (about 0.006%). Those figures provide further support for the settlement's adequacy."); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."). This support is particularly notable given that there were 355,282 page views of the Settlement Website Settlement and the Administrator fielded 752 calls totaling 3,542 minutes via telephone. Adessa Decl. ¶¶ 9–12.[4]

---

[4] It should be noted also that Class Counsel also received direct calls from numerous class members which were unanimously positive.

The Court should overrule the single objection. ECF No. 127. To begin with, the objection is neither to the monetary compensation that the Settlement provides nor to the amount of fees and costs and service awards that Class Counsel seek. *See generally id.* Instead, this one objector suggested that a forensic specialist *may* have accessed his information and demanded that his information be deleted from Defendants' systems. *Id.* at 1. Class Counsel has confirmed that the forensic vendor has not retained the data. In addition, Defendants have agreed to stronger safeguards through the business practice changes and remediation efforts that were filed under seal as part of the Settlement in this case. *See* ECF No. 104 (including sealed exhibit outlining Defendants' agreements to business practice changes and remediation efforts). Those exact changes cannot be disseminated to the public precisely because of this one objector's concerns: it would provide confidential and sensitive information that nefarious actors could use in an attempt to gain access to Defendants' systems. The Court reviewed these proposals at the preliminary approval stage and found them to be adequate (ECF No. 121) and nothing has since changed to disturb that analysis.

### 3.     The Allocation of the Settlement is Fair and Reasonable

The allocation of the Settlement Fund is also fair and reasonable, and the manner of administering relief will be effective. Under the settlement, Defendants will provide a $5,750,000.00 cash common fund. The cash common fund will provide cash payments to Settlement Class Members, as well as Administrative Costs for notice and to administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members are eligible for cash payments, as well as reimbursement for time spent and out-of-pocket expenses. S.A. ¶¶ 48–50. The Settlement Administrator has performed an initial assessment of all of these claims and has preliminarily determined that a pro rata reduction of

Settlement Class benefits is likely, reducing the monetary benefits to 50% to 55% of their presumptive values. Adessa Decl. ¶¶ 14–18.

Importantly, Settlement Class Members were informed that these *pro rata* reductions could occur. *See* ECF No. 104 (Notice exhibits to Settlement informing that monetary benefits "are subject to pro rata adjustment"). Not a single Settlement Class Member objected to this potential reduction.

This method is consistent with the distribution of common funds in other data breach cases. *See, e.g.*, *In re Hanna Andersson and SalesForce.com Data Breach Litig.*, No. 3:20-cv-812 (N.D. Cal.) (finally approved data breach settlement providing settlement benefits valued at $2 per class member with pro rata adjustments equally across all forms of monetary relief); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, No. 8:16-md-02737 (M.D. Fla.) (same; value of $3.64 per class member); *Monegato v. Fertility Centers of Illinois, PLLC*, No. 2022 CH 00810 (Ill. Cir. Ct.) (same; value of $5.99 per class member); *Abubaker v. Dominion Dental USA Inc.*, No. 1:19-cv-1050 (E.D. Va.) (same; value of $0.53 per class member).

These resulting monetary benefits that Settlement Class Members will receive are still well within norms, should the Court approve the Settlement. *See* ECF No. 112 at 3–4 (responding to the Court's inquiry about a potential *pro rata* reduction, and outlining the values that other recent class action data breach settlements have provided, ranging from under $3 per class member with an average of $5.74 per class member). Even still, where Class Counsel estimated that each Settlement Class Member might receive value of approximately $6.50 per claim, here, Settlement Class Members who have made claims stand to recover much higher amounts. *See* Adessa Decl. ¶¶ 14–18 (cash payments of approximately $26.95; CMIA payments of approximately $107.80; time spent reimbursement of approximately $39.53; and out-of-pocket expenses recovered at

approximately $220.98). Taking into account the risks of litigation (including no recovery should the case have an adverse result), these amounts are still fair and reasonable.

Defendants have also agreed to implement a number of contractual business practice commitments and remedial measures for at least three years following the Effective Date of the Settlement Agreement. S.A. ¶ 65. These measures are designed to safeguard patients' PII and PHI, and are described in detail in Exhibit A to the Settlement Agreement, filed under seal. These commitments are substantial and their implementation is subject to verification by Defendants' counsel to Class Counsel throughout that commitment period.

The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. *See generally* ECF No. 104. Settlement Class Members will have the option to choose to receive their payments digitally, and for those who do not so choose, the Settlement Administrator will mail checks to the Settlement Class Members, after running their addresses through the National Change of Address database.

## IX.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

For all of the same reasons the Court preliminarily certified the Settlement Class, none of which have changed, the Court should now grant final certification. Ascertainability is satisfied in this case, as the members of each class are identifiable based on objective criteria applied to records kept by Defendants. The Settlement Class is sufficiently numerous, including over 881,215 Settlement Class Members. There are common issues concerning Defendants' practices and policies that predominate over individual issues. The proposed Class Representatives are typical of the Class because their claims and the class claims against Defendants arise from the same course of conduct: the focus on a defendant's security measures in a data breach class action "is

the precise type of question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018). And the proposed CMIA Subclass Representatives are typical of the CMIA Subclass because, like with the nationwide class, their claims are identical with the added element that they all provided their information to a fertility clinic in California. The proposed Class Representatives and Subclass Representatives have no conflicts with the respective classes, have participated in this action, and are adequate. Class Counsel are experienced and adequate. Finally, class treatment is superior because classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are many class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Decohen*, 299 F.R.D. at 478 (finding superiority satisfied where "denial of the settlement will effectively foreclose relief for most class members as the harm each individual suffered will likely not justify the high costs of individual suits").

## X.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

Class Counsel have explained in their Motion for Attorneys' Fees, Expenses, and Service Awards why the proposed fees, costs, and service awards are reasonable and justified, including providing the Court with a detailed breakdown of each firm's attorneys' fees and costs with a supporting declaration detailing the tasks that Class Counsel have undertaken to support the interests of the Settlement Class and the benefits secured—all on a contingency basis without any promise or guarantee of recovery. ECF No. 125. Since that filing, Class Counsel have incurred additional hours responding to inquiries from and assisting Settlement Class Members, preparing this Final Approval motion, working with the Settlement Administrator to review, analyze, and process requests from Settlement Class Members, responding to the single objection, and

preparing for the Final Approval hearing. Class Counsel will incur additional attorneys fees and costs supervising and seeing the administration of benefits to conclusion, addressing any appeals, and other matters to bring this Settlement and litigation to finality. Joint Counsel Decl. ¶ 5.

The 33% request is well within the range of reasonableness for class action settlements in this District and Circuit. *See*, *e.g.*, *Singleton*, 976 F. Supp. 2d at 685 (recognizing that fee awards in percentage-of-recovery class actions range as a high as 40%); *Dickman v. Banner Life Ins. Co.*, 2020 WL 13094954, at *5 (D. Md. May 20, 2020) (39.5% of settlement fund) *aff'd* 28 F.4th 513 (4th Cir. 2022); *Wegner v. Carahsoft Tech. Corp.*, 2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) ("A request for one-third of a settlement fund is common in this circuit and generally considered reasonable"); *Kelly*, 2020 WL 434479, at *3 (noting that "[c]ontingent fees of up to one-third are common in this circuit") (collecting cases).

The requested costs are also reasonable. The Settlement Agreement provided for recovery of up to $75,000, and Class Counsel are only requesting $39,280.83. These include filing fees, mediation costs, and other costs necessary to pursue this litigation and secure the excellent settlement benefits available to Settlement Class Members. Joint Counsel Decl. ¶ 6.

Finally, the $2,500 Service Awards should be approved. Similar to the requests for attorneys' fees and costs, no objections have been made to the Service Awards, which indeed fall below amounts that are routinely upheld in this District. *See, e.g.*, *Yost v. Elon Prop. Mgmt. Co-Lexford Pools 1/3, LLC*, 2023 WL 185178, at *10 (D. Md. Jan. 13, 2023) (approving $5,000 service award and collecting cases approving $3,500, 5,000, $6,000, and $7,000); *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 469 (D. Md. 2014) (same); *Alexander v. Carrington Mortg. Servs., LLC*, No. 1:20-cv-2369-RDB (D. Md.) (approving $5,000 for each plaintiff). Accordingly, Plaintiffs respectfully request the Court award $2,500 Service Awards to each named Plaintiff for

their services to the Settlement Classes by assisting Class Counsel with the investigation of their claims, providing private information and documentation about themselves, and assisting with the recovery in this case.

## XI.    **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that the Court (1) grant this Motion; (2) finally approve the proposed Settlement; (3) affirm the certification of the Settlement Class for settlement purposes only; (4) affirm the appointment of Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Peterson, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Velaas Class Representatives; (5) affirm the appointment of Lisa Cox, Heidi Schneider, Laura Peterson, and Patrisia Vela as Subclass Representatives; (6) affirm the appointment of John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy as Class Counsel; (7) retain jurisdiction over this matter to resolve issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement; and (8) enter Final Judgment dismissing this action.

By the separate motion filed on January 29, 2024, ECF No. 125, Plaintiffs also request that the Court grant a Service Award of $2,500 to each of the Class Representatives and award Class Counsel reasonable attorneys' fees of $1,914,750.00 and reimbursement of litigation costs and expenses of $39,280.83 which, as set forth in the Settlement, shall be paid out of the Settlement Fund. There have been no objections or oppositions filed to the requests for attorneys' fees,

litigation costs, and service awards. Should this Court so request, Plaintiffs will offer a Proposed

Order after the conclusion of the Hearing for Final Approval.

Dated: April 10, 2024                                Respectfully submitted,

_____/s/_____                _____/s/_____
Hassan A. Zavareei (Bar No. 18489)           John A. Yanchunis (pro hac vice)
**TYCKO & ZAVAREEI LLP**                      **MORGAN & MORGAN**
2000 Pennsylvania Avenue NW, Suite 1010       201 N. Franklin Street, 7th Floor
Washington, DC 20006                          Tampa, FL 33602
Telephone: (202) 973-0900                     Telephone: (813) 223-5505
hzavareei@tzlegal.com                         jyanchunis@forthepeople.com


_____/s/_____                _____/s/_____
Gayle M. Blatt (pro hac vice)                David M. Berger (pro hac vice)
**CASEY GERRY SCHENK**                        **GIBBS LAW GROUP LLP**
**FRANCAVILLA BLATT &**                       1111 Broadway
**PENFIELD, LLP**                             Suite 2100
110 Laurel Street                             Oakland, CA 94607
San Diego, CA 92101                           Telephone: (510) 350-9700
Telephone: (619) 238-1811
gmb@cglaw.com


_____/s/_____
Nikoletta S. Mendrinos (Bar No. 18961)
**MURPHY, FALCON & MURPHY**
One South Street, 30th Floor
Baltimore, MD 21202
Telephone: (410) 951-8744
nikoletta.mendrinos@murphyfalcon.com

*Class Counsel*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 10, 2024, a copy of the foregoing Motion for Final Approval of Class Action Settlement and attendant Exhibits were filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

_____*/s/*_____
Nikoletta S. Mendrinos