IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| IN RE US FERTILITY, LLC | Master File No. 8:21-cv-299 |
| DATA SECURITY LITIGATION | |
| This Document Relates To: All Actions | |

[~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Peterson, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela, (collectively, "Plaintiffs") individually and on behalf of the proposed Settlement Class,[1] request that this Court grant their Motion for Final Approval of Class Action Settlement and enter final approval of a proposed Settlement of claims against Defendants US Fertility, LLC, Shady Grove Reproductive Science Center P.C., and Fertility Centers of Illinois, PLLC (together, "Defendants" or "USF"). For the reasons set forth herein, the Court GRANTS the Motion.

I.    **BACKGROUND**

From November 2020 through January 2021, Defendants notified patients of its network of fertility clinics that US Fertility's systems were accessed during a ransomware attack perpetrated by an unauthorized party. US Fertility announced that between August 12 and September 14, 2020, the attackers acquired files containing Personally Identifiable Information

---

[1] Unless otherwise specifically defined herein, all capitalized terms have the same meanings as those set forth in the parties' Settlement Agreement ECF No. 106 ("S.A.").

(PII) and Personal Health Information (PHI) of the approximately 884,000 individuals that comprise the settlement class.

Beginning in January 2021, Plaintiffs began filing lawsuits in this Court: *Doe et al. v. US Fertility, LLC* ("*Doe*"), Case No. TDC-21-248 (D. Md. Jan. 28, 2021); *Vinsant v. US Fertility, LLC*, Case No. TDC-21-225 (Jan. 26, 2021); *Fadness v. US Fertility, LLC*, Case No. PJM-21-299 (Feb. 4, 2021); *Churchill v. US Fertility, LLC*, Case No. PWG-21-370 (Feb. 15, 2021); *Decker v. US Fertility, LLC*, Case No. PWG-21-404 (Feb. 17, 2021); *Mateson v. US Fertility, LLC*, Case No. PWG-21-466 (Feb. 23, 2021); *Stuckley v. US Fertility, LLC*, Case No. PWG-21-496 (Feb. 25, 2021); and *Forest v. US Fertility, LLC*, Case No. TDC-21-646 (Mar. 15, 2021). The Court consolidated these cases and appointed a team of counsel to lead the litigation for Plaintiffs. On June 7, 2021, Plaintiffs filed a consolidated class action complaint. (ECF No. 39). In July 2021, the Court consolidated *Mullinix v. US Fertility,* LLC, 1:21-cv-01430 and *Leonard v. US Fertility, LLC*, 1:21-cv-1783 with the previously consolidated cases. Plaintiffs amended their consolidated class action complaint on November 15, 2021 (ECF No. 60).

The First Amended Consolidated Class Action Complaint ("Consolidated Complaint") asserts claims on behalf of a proposed nationwide class and state-specific subclasses for negligence, unjust enrichment, breach of confidence, declaratory and injunctive relief, breach of contract, California's Confidentiality of Medical Information Act ("CMIA"), data privacy laws of Maryland and Virginia, and consumer protection laws of Maryland, Nevada, Florida, Illinois, Washington, North Carolina, Idaho, and Utah.

On November 22, 2021, Defendants filed a motion to dismiss the Consolidated Complaint and a motion to strike (ECF No. 65). After the motion to dismiss was fully briefed, the Court held

oral argument on April 28, 2022, on Defendants' motion to dismiss Plaintiffs' Consolidated Complaint (ECF No. 83).

On January 26, 2022, Plaintiffs moved to intervene in another case arising from the Data Breach, *Doe v. US Fertility*, No. 1:21-cv-00579 (N.D. Ill.), and sought to transfer it to this Court. Judge Feinerman of the United States District Court for the Northern District of Illinois granted Plaintiffs' motion as to the claims against Defendants and transferred the case on July 6, 2022. Plaintiffs moved to consolidate *Doe* with *In re: US Fertility, LLC Data Security Litigation*, No. 8:21-cv-299, on September 8, 2022.

Prior to filing their Consolidated Complaint, the Parties mediated this matter before mediator Bennett G. Picker on September 28, 2021. Although this mediation did not result in agreement on settlement terms, the Parties continued negotiations and agreed to engage in a second mediation on June 13, 2022 before Judge Morton Denlow (Ret.), a retired U.S. Magistrate Judge and an experienced mediator in assisting in the resolution of class litigation. The Parties were unable to reach an agreement as to settlement terms on that date. Ultimately, on October 4, 2022, Judge Denlow provided the Parties with a mediator's recommendation as to the monetary terms of the settlement. On October 10, 2022, after further negotiations among the Parties, counsel for the Parties reached a tentative agreement with regard to those terms. Thereafter, the Parties engaged in extensive negotiations relating to business practice commitments which are to be included as part of the settlement. All of these terms are incorporated into the Settlement Agreement executed by the Parties in August 2023.

On November 22, 2023, this Court granted preliminary approval of the proposed settlement and approved the issuance of notice to the Class. ECF No. 121. On January 29, 2024, Class Counsel

filed a Motion for Fees, Costs, and Service Awards. ECF No. 126. A hearing for final approval

was held on April 18, 2024.

## II.      SETTLEMENT TERMS

### A.      The Proposed Class

The Settlement Agreement contemplates certification of the following Settlement Classes

for settlement purposes only:

> **The Nationwide Class**: All persons residing in the United States or
> its territories whose PII and/or PHI, as defined herein, was
> compromised in the Data Breach that US Fertility or its subsidiaries
> or partners first announced in November 2020.

> **The CMIA Subclass**: All United States residents whose information
> was provided to a fertility clinic in California and whose PHI, as
> defined herein, was compromised in the Data Breach that US
> Fertility announced in November 2020.

S.A. ¶ 39.

### B.      Benefits to the Settlement Class

#### 1.      Monetary Benefits

The Settlement Agreement provides monetary benefits in the form of a common fund of

$5,750,000.00, from which shall be paid (1) all payments to Settlement Class members, (2) all

Administrative Costs, (3) any Fee and Expense Award approved by the Court, and (4) any Service

Awards to the Class Representatives approved by the Court. *See* S.A. ¶ 35. After payment of costs

of administration and notice and any attorneys' fees, expenses, and service awards authorized by

the Court, the Net Settlement Fund will be distributed to Settlement Class Members as described

below. *Id.* ¶ 15.

Members of the Nationwide Class and the CMIA Subclass have submitted claims for (a) a

payment of up to $50 without any documentation; (b) reimbursement of up to four hours of Time

Spent at $25 per hour, capped at $100.00, with a brief description of how and when the time was

spent and how the expenditure of time is related to the data breach and/or (c) reimbursement of Out-of-Pocket Losses of up to $15,000 with documentation. *Id.* ¶¶ 53, 50, 48. Members of the CMIA Subclass also submitted claims for a statutory payment of up to $200. Members of the Nationwide and CMIA subclass could claim more than one category of benefits but no one individual may receive in excess of the total sum of $15,000. S.A. ¶ 62. Defendants identified approximately 884,090 records for Settlement Class Members and have represented that they had what they believed to be the most recent mailing addresses as of the time of notice. *Id.* After analyzing the data provided by Defendants and removing duplicative records, the Settlement Administrator identified an overall combined total of 881,215 unique records. ECF No. 128-1 at ¶¶ 3-5.

After de-duplication, processing for fraud, reduction on a pro rata share, payment of expenses, attorneys' fees, and costs of notice and administration, each of the 61,563 Settlement Class Member who submitted a valid claim will receive the following benefits. Settlement Class Members who claimed the Cash Payment option will receive $26.95 for that portion of their claim. Settlement Class Members who qualified for the CMIA Cash Payment (residents of California) will receive $107.80 for that portion of their claim. Those Settlement Class Members who had documented lost money will receive on average $220.98 for that portion of their claim. Finally, those Settlement Class Members who made valid claims for lost time will receive on average $39.53 for that lost time portion of their claim. ECF No. 128-1 at ¶¶ 14-18. As provided in the Settlement Agreement, many Class Members will receive payments under more than one of the categories for which they were eligible.

If a settlement check is not cashed within 90 days after the date of issue, the Settlement Administrator shall undertake the following actions: (1) attempt to contact the Settlement Class

Member by email and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. S.A. ¶ 58. Any reissued Settlement Checks issued to Settlement Class Members shall remain valid and negotiable for 60 days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Settlement Class Members within that time. *Id.*

To the extent any funds remain in the Net Settlement Fund more than 150 days after the distribution of Settlement payments to the Settlement Class Members, or 30 days after all reissued settlement checks are no longer negotiable, whichever occurs later or as otherwise agreed to by the Parties, any remaining monies shall be divided pro rata and disbursed in a secondary distribution to the CMIA Subclass Members who submitted valid claims, except that if the remaining funds, after covering additional costs of administration, are insufficient to provide a secondary distribution of at least $5.00 per eligible recipient, then they shall be distributed as required by state law or to the Non-Profit Residual Recipient as approved by the Court. *Id.* ¶ 59. In no event shall any remaining funds be returned to Defendants. *Id.*

### 2.    Prospective Injunctive Relief

In addition to the monetary relief, the Settlement Agreement also includes important and valuable injunctive relief. As part of the Settlement, Defendants have already implemented or agreed to implement a number of contractual business practice commitments and remedial measures for at least three years following the Effective Date of the Settlement Agreement. *Id.* ¶ 65. These measures are designed to safeguard patients' PII and PHI, and are described in detail

in Exhibit A to the S.A., filed under seal. These commitments are substantial and their implementation is subject to verification by Defendants' counsel to Class Counsel throughout the commitment period.

### C.    The Settlement Here Compares Favorably to Settlements of Similar Cases

Data breach class action litigation is inherently risky and wades into uncharted territory as cases proceed to class certification and trial. While members of Class Counsel have certified both monetary and injunctive relief classes, successful motions for class certification are rare and no major data breach class action has ever proceeded to trial. Armed with extensive experience litigating data breach and privacy cases (and particularly class actions), Class Counsel state that the benefits available to Settlement Class Members compare favorably with the benefits in other data breach class action settlements. *See* ECF No. 112 at 3–4 (outlining the values that other recent class action data breach settlements have provided, ranging from under $3 per class member with an average of $5.74 per class member).

### D.    Settlement Administrator and Administration Costs

To date, the Settlement has been administered by Angeion Group ("Angeion"), a class action administration firm with extensive experience administering data breach class action settlements. ECF No. 128-2 at ¶ 45; ECF No. 104-2. All Administrative Costs shall be paid from the Settlement Fund. S.A. ¶ 42. As of February 2024, the Settlement Administrator estimates that it has incurred costs amounting to $614,166.10 and agreed from the outset that the costs will not exceed $779,500. ECF No. 104-2 at ¶ 26; ECF No. 128-1 at ¶ 22. The Settlement Administrator has overseen the provision of Class Notice to the Settlement Class Members and administration of the Common Fund. ECF No. 128-1 at ¶¶ 3–18.

### E.    Class Member Release

Upon the Effective Date, and in consideration for the Settlement Payment and for Defendants' other promises contained herein, each Settlement Class Member will be deemed to have released the Released Entities from all claims that were or could have been asserted by the Class Representatives or Settlement Class Members arising out of, or relating to, the Data Breach. S.A. ¶ 28. The release is appropriately tailored, in that it covers claims arising from the identical factual predicate to the claims asserted in the operative complaint.

## III.    NOTICE TO THE SETTLEMENT CLASS

After preliminary approval, the Parties provided Notice of the Settlement in accordance with the Parties' agreement and this Court's preliminary approval order. ECF No. 128-1 at ¶¶ 4–6. The Class Notice consisted of direct notice in the form of postcard notice, as well as a settlement website where Class Members could view and request to be sent the Long Form Notice. Postcard notice was sent to 875,416 Class Members for whom Defendants provided an address. ECF No. 128-1 ¶¶ 4–6. Of the 884,090 originally identified Settlement Class Members, approximately 875,416 postcard notices were sent, with only 18,408 undeliverable. Of these, approximately 11,791 were remailed on February 12, 2024, and then 2,649 were remailed on March 1, 2024. Altogether, the postcard notice program achieved over a 98% deliverable rate (*i.e.*, 18,408/880,490) for the Settlement Class, a figure that will only increase with the notices that were resent in February and March. ECF No. 128-1 ¶¶ 4–6.

The Class Notice adequately described the litigation and the Settlement Agreement and the procedures to opt out and object. The Notices further explained the amount of the Settlement, the plan of allocation, Class Counsel's intent to apply for an award of attorneys' fees and expenses and for Class Representative Service Awards, and the percentage and/or amounts that would be

requested. Notice was also provided to state and federal officers as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

## IV.    LEGAL STANDARD FOR FINAL APPROVAL

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e); *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991); *Whitaker v. Navy Fed. Credit Union,* No. 09CV2288, 2010 WL 3928616, at *2 (D. Md. Oct. 4, 2010); *McDaniels v. Westlake Servs., LLC,* No. CIV.A. ELH-11-1837, 2014 WL 556288, at *8 (D. Md. Feb. 7, 2014).

As of December 1, 2018, Fed. R. Civ. P.  23(e) provides specific guidance to federal courts in considering whether to grant final approval of a class action settlement. The Fed. R. Civ. P. 23(e)(2) final approval factors include whether: (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at an arm's length; (C) the relief provided is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[2] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Before 2018, to determine whether a settlement meets the requirements of Fed. R. Civ. P. 23 and warrants final approval, the Fourth Circuit adopted a bifurcated analysis involving inquiries into the fairness and adequacy of the settlement, still utilized today. *Scardelletti v. Debarr*, 43 F. App'x 525, 528 (4th Cir. 2002); *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158; *Donaldson v. Primary Residential Mortg., Inc.,* No. CV ELH-19-1175, 2021 WL 2187013, at *3-4 (D. Md. May 28, 2021) (citing Fed. R. Civ. P. 23(e)(2) factors and *Jiffy Lube* factors in assessing final approval).

---

[2] The Settlement Agreement is the only relevant agreement here.

In assessing the fairness of a proposed settlement, the Court looks to the following Fourth Circuit factors: (1) posture of the case at the time the settlement is proposed; (2) extent of discovery that has been conducted; (3) circumstances surrounding the negotiations; and (4) experience of counsel in the relevant area of class action litigation. *Scardelletti*, 43 F. App'x at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Robinson v. Nationstar Mortg. LLC,* No. 8:14-CV-03667-TJS, 2020 WL 8256177, at *2 (D. Md. Dec. 11, 2020), *aff'd sub nom. McAdams v. Robinson*, 26 F.4th 149 (4th Cir. 2022).

In determining the adequacy of the proposed settlement, the Fourth Circuit factors instruct the Court to consider: (1) the relative strength of plaintiff's case on the merits; (2) existence of any difficulties of proof or strong defenses plaintiff is likely to encounter if the case proceeds to trial; (3) anticipated duration and expense of additional litigation; (4) solvency of defendant and likelihood of recovery of a litigated judgment; and (5) degree of opposition to the settlement. *Scardelletti*, 43 F. App'x at 528; *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *Robinson*, 2020 WL 8256177, at *2. Many of these factors overlap with the Rule 23(e) factors cited above.[3]

## V.    FINDINGS

The Court finds that the Settlement Agreement is fair, reasonable, and adequate and warrants final approval under the applicable Fed. R. Civ. P. 23 and Fourth Circuit factors.

1.    With respect to the adequacy and experience of counsel, Class Counsel and Defendants' Counsel are experienced in class action litigation. Moreover, it appears to the Court that the Class Representatives and Class Counsel have adequately represented the proposed

---

[3] The Fourth Circuit has recognized that these "factors for assessing class-action settlements almost completely overlap with the new Rule 23(e)(2) factors." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020).

Settlement Class. Class Counsel are experienced and sophisticated, with years of experience in complex class action litigation and litigation involving data privacy and security. The Class Representatives have also supervised the litigation by reviewing pleadings, reviewing the Settlement, and communicating with Class Counsel regarding the litigation. Rule 23(e)(2)(A) and the fourth fairness factor are satisfied.

2.      "These adversarial encounters dispel any apprehension of collusion between the parties." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015). The Court finds that the Settlement was negotiated at arm's length before experienced mediators and between experienced and sophisticated counsel. The settling Parties vigorously contested Defendants' motion to dismiss, which included oral argument, and engaged in formal settlement mediation with two respected, experienced, and neutral mediators— Bennett G. Picker and subsequently Judge Morton Denlow (Ret.). The proposed settlement was reached after months of negotiation and after evaluating the merits of the case and defenses presented at dismissal. The Settlement satisfies Fed. R. Civ. P. 23(e)(2)(B), and the third *Jiffy Lube* fairness factor.

3.      As to the posture of the case, it appears that the Settlement was reached after significant work was performed. Class Counsel engaged in a thorough investigation of the legal theories and Defendants' practices prior to filing and throughout the litigation, and later reviewed and analyzed informal discovery from Defendants to understand and appreciate the facts and circumstances surrounding the data security incident. Class Counsel have litigated many similar data breach class actions and knew what information and data would be critical for resolving the Settlement Class's claims. Thus, Class Counsel obtained through informal discovery information and data similar to what they would have received through the formal discovery process, while

allowing the Parties to focus their efforts on the merits of the causes of action and potential defenses. ECF No. 128-2 at ¶¶ 20–21. Plaintiffs have conducted sufficient investigation and discovery to permit Class Counsel and the Court to intelligently and fairly evaluate the fairness and adequacy of the Settlement. The provision of informal discovery is sufficient to satisfy this fairness factor. *In re Jiffy Lube*, 927 F.2d at 159 (recognizing that informal discovery can provide satisfactory information prior to preliminary approval); *see also Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 480 (D. Md. 2014) (finding proposed settlement met fairness factors where "parties ha[d] engaged in informal discovery, assuring sufficient development of the facts to permit an accurate assessment of the merits of the case"). Thus, the first two fairness factors are met: the case was sufficiently advanced and sufficient discovery was completed.

4.　　With regard to the adequacy of the Settlement, Fed. R. Civ. P. 23(e)(2)(C)(i), and the first two *Jiffy Lube* adequacy factors focus on the relief provided, in light of (1) the strength of the plaintiffs' case on the merits, and (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159; Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring evaluation of the relief provided, taking into account the costs and risks of trial and appeal). These factors weigh "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult one." *In re The Mills Corp. Securities Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). The Settlement relief is fair, reasonable, and adequate when balanced against the probable outcome of further litigation, liability, and damages issues, and potential appeals of rulings. While litigation presents serious risks at many stages, not to mention substantial expense and delay without any guarantee of additional benefit to the Settlement Class, the Settlement provides immediate and substantial benefits to over 881,215 Settlement Class Members. And these

benefits are substantial: without expending any costs or expenses for attorneys' time and efforts, individuals who make claims are automatically entitled to cash payments, reimbursement of time spent, and reimbursement of out-of-pocket expenses. *See* S.A. Because the Class Notice Plan was so successful and the claims rate was higher than anticipated, the Settlement Administrator will apply *pro rata* adjustments to reduce the amounts paid to individual Class Members. *Id.* Presently, the claims rate is approximately 6.99% and will result in each Settlement Class Member receiving approximately 50% to 55% of the projected presumptive amounts originally forecast.[4] ECF No. 128-1 at ¶¶ 13–18. A pro rata reduction does not undercut Plaintiffs' Motion for Final Approval. *See, e.g.*, *Boger v. Citrix Systems, Inc.*, 2023 WL 3763974 (D. Md. June 1, 2023) (approving settlement where potential *pro rata* share of the net settlement fund was still found to be fair and reasonable); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) (same).

5.    The third *Jiffy Lube* adequacy factor (the anticipated duration and expense of additional litigation) also favors approval. This case is settling in its early stages; if the Settlement is not approved, the Parties will receive a ruling on Defendants' Motion to Dismiss, amend pleadings, and will likely need to litigate through multiple dispositive motions and a motion for class certification. ECF No. 128-2. The litigation would likely take years to resolve and involve expensive expert discovery and substantial time engaging in in protracted and expensive discovery disputes. *Id.* And of course, all Parties would need to spend significant resources preparing for trial. The drawn out and expensive process that further litigation would entail would lead to significant legal costs to both sides, but would not necessarily lead to a better result for the class. Thus, this factor favors approval. *See Edelen*, 2013 WL 3816986, at *9 (approving settlement

---

[4] The claim rate is precisely 6.9864%. (881,215 x .069862 = 61,563).

where absent approval, "litigation of this dispute could prove to be long and expensive" and "require substantial time by the parties' attorneys").

6.        There is nothing to indicate that Defendants are not solvent or could not satisfy any judgment, so the fourth *Jiffy Lube* adequacy factor is neutral.

7.        The fifth *Jiffy Lube* factor—the degree of opposition to the settlement—also weighs heavily in favor of final approval. Of the approximate 881,215 Settlement Class Members, only 39 requested to opt-out of the Settlement, ECF No. 128-1 at ¶ 39, and only one objected to the settlement. ECF No. 127. While the number in this case are miniscule, even "[a] small number of objections and a low opt-out rate suggest that the proposed settlement is adequate." *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg. Sales Pracs.*, 2018 WL 11203065, at *6 (E.D. Va. Oct. 9, 2018), *aff'd sub nom In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) ("Finally, only 94 of the 178,859 class members who responded to the class-action settlement notice opted out of the settlement (about 0.05%), and 12 class members objected thereto (about 0.006%). Those figures provide further support for the settlement's adequacy."); *see also Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 461 (D. Md. 2014) ("The fact that no class member objected supports final approval of the Settlement as fair, adequate, and reasonable."). This support is particularly notable given that there were 355,282 page views of the Settlement Website Settlement and the Administrator fielded 752 calls totaling 3,542 minutes via telephone. ECF No. 128-1 at ¶¶ 9–12.[5]

8.        This Court will overrule the single objection. ECF No. 128. The "objection" does not address any substantive component of the Settlement, such as the amount of monetary

---

[5] Class Counsel also received direct calls from numerous class members which were unanimously positive.

compensation to the Class Members, the requested attorneys' fees, litigation costs. Or Service Awards. *See generally id.* Instead, this one objector suggested that a forensic specialist *may* have accessed his information and demanded that his information be deleted from Defendants' systems. *Id.* at 1. Class Counsel has confirmed that the forensic vendor has not retained any data it reviewed in connection with this incident. In addition, Defendants have agreed to stronger safeguards through the business practice changes and remediation efforts that were filed under seal as part of the Settlement in this case. *See* ECF No. 104 (including sealed exhibit outlining Defendants' agreements to business practice changes and remediation efforts). Those exact changes cannot be disseminated to the public precisely because of this one objector's concerns: it would provide confidential and sensitive information that nefarious actors could use in an attempt to gain access to Defendants' systems. The Court reviewed these proposals at the preliminary approval stage and found them to be adequate (ECF No. 121) and nothing has since changed to disturb that analysis. This Court is also sensitive to the possibility that Defendants cannot simply delete the Settlement Class Members PII/PHI data until this matter is finally resolved, as they may be required to preserve the PII/PHI data imposed by local, state, and/or national laws.

9.      Finally, it appears to the Court that the Parties' proposed allocation of the Settlement, and plan for distribution is equitable and effective, as required by Rule 23(e)(2)(C)(ii). Under the settlement, Defendants will provide a $5,750,000.00 cash common fund. The cash common fund will provide cash payments to Settlement Class Members, as well as Administrative Costs for notice and to administer the settlement, and any Fee and Expense Award and Service Awards that the Court may approve. Settlement Class Members are eligible for cash payments, as well as reimbursement for time spent and out-of-pocket expenses. S.A. ¶¶ 48–50. The Settlement Administrator has performed an initial assessment of all of these claims and has preliminarily

determined that a pro rata reduction of Settlement Class benefits is likely, reducing the monetary benefits to 50% to 55% of their presumptive values. ECF No. 128-1 at ¶¶ 14-18.

Importantly, Settlement Class Members were informed that these *pro rata* reductions could occur. *See* ECF No. 104 (Notice exhibits to Settlement informing that monetary benefits "are subject to pro rata adjustment"). Not a single Settlement Class Member objected to this potential reduction.

This method is consistent with the distribution of common funds in other data breach cases. *See, e.g.*, *In re Hanna Andersson and SalesForce.com Data Breach Litig.*, No. 3:20-cv-812 (N.D. Cal.) (finally approved data breach settlement providing settlement benefits valued at $2 per class member with pro rata adjustments equally across all forms of monetary relief); *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, No. 8:16-md-02737 (M.D. Fla.) (same; value of $3.64 per class member); *Monegato v. Fertility Centers of Illinois, PLLC*, No. 2022 CH 00810 (Ill. Cir. Ct.) (same; value of $5.99 per class member); *Abubaker v. Dominion Dental USA Inc.*, No. 1:19-cv-1050 (E.D. Va.) (same; value of $0.53 per class member).

10.     These resulting monetary benefits that Settlement Class Members will receive are still well within norms. *See* ECF No. 112 at 3–4 (responding to the Court's inquiry about a potential *pro rata* reduction, and outlining the values that other recent class action data breach settlements have provided, ranging from under $3 per class member with an average of $5.74 per class member). Even still, where Class Counsel estimated that each Settlement Class Member might receive value of approximately $6.50 per claim, here, Settlement Class Members who have made claims stand to recover much higher amounts. *See* ECF No.128-1 at ¶¶ 14-18 (cash payments of approximately $26.95; CMIA payments of approximately $107.80; time spent reimbursement of approximately $39.53; and out-of-pocket expenses recovered at approximately $220.98). Taking

into account the risks of litigation (including no recovery should the case have an adverse result), these amounts are fair and reasonable.

The monetary benefits of the Settlement also are enhanced by Defendants agreeing to implement a number of contractual business practice commitments and remedial measures for at least three years following the Effective Date of the Settlement Agreement. S.A. ¶ 65. These measures are designed to safeguard patients' PII and PHI, and are described in detail in Exhibit A to the Settlement Agreement, filed under seal. These commitments are substantial and their implementation is subject to verification by Defendants' counsel to Class Counsel throughout that commitment period.

11.    The proposed method of distributing relief is also effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Parties have agreed upon an experienced Settlement Administrator to administer the settlement. *See generally* ECF No. 104. Settlement Class Members will have the option to choose to receive their payments digitally, and for those who do not so choose, the Settlement Administrator will mail checks to the Settlement Class Members, after running their addresses through the National Change of Address database.

12.    The Court finds that early resolution of this Action will conserve the resources of the Parties and the Court, while at the same time, the Parties have vigorously litigated the legal issues and Defendants provided sufficient informal discovery to permit Class Counsel and the Court to intelligently evaluate the Settlement offered against the risks and benefits of continued litigation.

13.    For all of the same reasons the Court preliminarily certified the Settlement Class, none of which have changed, the Court now grants final certification. Ascertainability is satisfied in this case, as the members of each class are identifiable (and have been identified) based on

objective criteria applied to records kept by Defendants. The Settlement Class is sufficiently numerous, including over 881,215 Settlement Class Members. There are common issues concerning Defendants' practices and policies that predominate over individual issues. The proposed Class Representatives are typical of the Class because their claims and the class claims against Defendants arise from the same course of conduct: the focus on a defendant's security measures in a data breach class action "is the precise type of question that makes class-wide adjudication worthwhile." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018). And the proposed CMIA Subclass Representatives are typical of the CMIA Subclass because, like with the nationwide class, their claims are identical with the added element that they all provided their information to a fertility clinic in California. The proposed Class Representatives and Subclass Representatives have no conflicts with the respective classes, have participated in this action, and are adequate. Class Counsel are experienced and adequate. Finally, class treatment is superior because class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are many class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Decohen*, 299 F.R.D. at 478 (finding superiority satisfied where "denial of the settlement will effectively foreclose relief for most class members as the harm each individual suffered will likely not justify the high costs of individual suits").

14.    The Court also grants Plaintiffs' motion for attorneys' fees, reimbursement of litigation expenses, and Service Awards. Class Counsel have explained in their Motion for Attorneys' Fees, Expenses, and Service Awards why the proposed fees, costs, and service awards are reasonable and justified, including providing the Court with a detailed breakdown of each firm's attorneys' fees and costs with a supporting declaration detailing the tasks that Class Counsel

have undertaken to support the interests of the Settlement Class and the benefits secured—all on a contingency basis without any promise or guarantee of recovery. ECF No. 125. Since that filing, Class Counsel have incurred additional hours responding to inquiries from and assisting Settlement Class Members, preparing this Final Approval motion, working with the Settlement Administrator to review, analyze, and process requests from Settlement Class Members, responding to the single objection, and preparing for the Final Approval hearing. Class Counsel will incur additional attorneys' fees and costs supervising and seeing the administration of benefits to conclusion, addressing any appeals, and other matters to bring this Settlement and litigation to finality. ECF No. 128-2 ¶ 5.

The 33% request is well within the range of reasonableness for class action settlements in this District and Circuit. *See, e.g., Singleton*, 976 F. Supp. 2d at 685 (recognizing that fee awards in percentage-of-recovery class actions range as a high as 40%); *Dickman v. Banner Life Ins. Co.*, 2020 WL 13094954, at *5 (D. Md. May 20, 2020) (39.5% of settlement fund) *aff'd* 28 F.4th 513 (4th Cir. 2022); *Wegner v. Carahsoft Tech. Corp.*, 2022 WL 316653, at *5 (D. Md. Feb. 1, 2022) ("A request for one-third of a settlement fund is common in this circuit and generally considered reasonable"); *Kelly*, 2020 WL 434479, at *3 (noting that "[c]ontingent fees of up to one-third are common in this circuit") (collecting cases).

15.    The requested costs are also reasonable. "It is well-established that plaintiffs who are entitled to recover attorneys' fees are also entitled to recover reasonable litigation-related expenses as part of their overall award." *Kabore v. Anchor Staffing, Inc.*, No. L–10–3204, 2012 WL 5077636, at *10 (D. Md. Oct. 17, 2012). The Fourth Circuit has stated that such costs may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852

F.2d 762, 771 (4th Cir. 1988) (internal quotations omitted). The Settlement Agreement provided for recovery of up to $75,000, and Class Counsel are only requesting $39,280.83. These include filing fees, mediation costs, and other costs necessary to pursue this litigation and secure the excellent settlement benefits available to Settlement Class Members. ECF No. 128-2 ¶ 6. The court therefore finds that these submissions support an award of $39,280.83 in costs.

16.     Service Awards are routinely made to class representatives in Fed. R. Civ. P. 23 class actions. *See, e.g.*, *In re Tyson Foods, Inc.*, No. RDB–08–1982, 2010 WL 1924012, at *4 (D. Md. May 11, 2010). "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). To determine whether an incentive payment is warranted, a court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*  Here, the Plaintiffs came forward to represent the interests of thousands of others, with very little personally to gain, as their individual alleged damages were very small. Before and during litigation, Plaintiffs had their highly sensitive financial information regarding their highly sensitive information surrounding fertility exposed. Plaintiffs participated in the litigation by reviewing the complaint and other filings and making themselves available to assist with discovery. And Plaintiffs all worked with counsel to initiate separate cases, assisted Class Counsel with the investigation of their claims and providing private information and documentation about themselves. Thus, this Court approves a $2,500 award each for named Plaintiff.  Similar to the requests for attorneys' fees and costs, no objections have been made to the Service Awards, which indeed fall below amounts that are routinely upheld in this District. *See, e.g.*, *Yost v. Elon Prop. Mgmt. Co-Lexford Pools 1/3, LLC*,

2023 WL 185178, at *10 (D. Md. Jan. 13, 2023) (approving $5,000 service award and collecting cases approving $3,500, 5,000, $6,000, and $7,000); *Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 469 (D. Md. 2014) (same); *Alexander v. Carrington Mortg. Servs., LLC*, No. 1:20-cv-2369-RDB (D. Md. Nov. 10, 2022), ECF No. 67 (approving $5,000 for each plaintiff).

## VI.    ORDER

Accordingly, the Court having considered the Motion for Final Approval of Class Action Settlement, it is hereby ORDERED that:

1.    The Motion for Final Approval of Class Action Settlement, ECF No. 128, is GRANTED;

2.    The proposed Settlement is approved as being fair, reasonable, and adequate pursuant to Rule 23(e);

3.    Alec Vinsant, Marla Vinsant, Jane Doe 1, Lisa Cox, Nikitia Hollingsworth Forest, Doris Matthew, Jane Doe, Paul Porta, Kelly Jacobs, Heidi Schneider, Laura Peterson, Riley Fadness, Tiffany Hitaffer, Karen Logan, Raynard Stuckey, Samantha Stuckey, Britt Decker, Anne Strickland, Cristielly Santana, and Patrisia Vela are appointed as Class Representatives;

4.    Lisa Cox, Heidi Schneider, Laura Peterson, and Patrisia Vela are appointed as Subclass Representatives;

5.    John A. Yanchunis of Morgan & Morgan Complex Litigation Group, Gayle M. Blatt of Casey Gerry Schenk Francavilla Blatt & Penfield, LLP, Hassan A. Zavareei of Tycko & Zavareei LLP, David M. Berger of Gibbs Law Group LLP, and Nikoletta S. Mendrinos of Murphy, Falcon & Murphy are appointed as Class Counsel;

6.    The Court awards $1,914,750.00 in attorneys' fees and $39,280.83 in reimbursed costs to Class Counsel;

7.      The Court approves Service Awards of $2,500 to each of the Class Representatives; and

8.      Without affecting the finality of the Court's judgment in any way, the Court retains jurisdiction over this matter for purposes of resolving issues related to interpretation, administration, implementation, effectuation, and enforcement of the Settlement.

This Action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: 4/18/2024 _____

_____
Hon. Peter J. Messitte
United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of April, 2024, a copy of the foregoing Proposed Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement was filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send email notification of such filing to the registered attorneys of record.

_____ */s/* _____
Nikoletta S. Mendrinos